KIRKLAND & ELLIS LLP
Mark Holscher, P.C. (SBN 139582)
Stefan Atkinson, P.C. (pro hac vice)
Emerson Bursis (pro hac vice)
555 S. Flower St., Ste. 3700
Los Angeles, CA 90071
Telephone:  (213) 680 8400
mark.holscher@kirkland.com
stefan.atkinson@kirkland.com
emerson.bursis@kirkland.com

*Attorneys for Defendants Stable Road Acquisition Corp., SRC-NI Holdings, LLC, Brian Kabot, James Hofmockel, James Norris, and Juan Manuel Quiroga*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

IN RE STABLE ROAD ACQUISITION CORP. SECURITIES LITIGATION

)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:21-CV-05744-JFW-SHK

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE STABLE ROAD DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

<u>CLASS ACTION</u>

Defendants Stable Road Acquisition Corp. ("SRAC"), SRC-NI Holdings, LLC ("Sponsor"), James Hofmockel, Brian Kabot, James Norris, and Juan Manuel Quiroga (collectively, the "Stable Road Defendants"), by and through their undersigned counsel, respectfully submit this Memorandum of Points and Authorities in support of the Stable Road Defendants' Motion to Dismiss the First Amended Complaint ("Amended Complaint")[1]. Pursuant to the Private Securities Litigation Reform Act ("PSLRA") and Rule 12(b)(6), the Court should dismiss the Amended Complaint with prejudice.

## **INTRODUCTION**

In addition to the reasons for dismissal outlined in the Momentus Defendants' Brief ("Momentus Brief"),[2] Plaintiff's claims against the Stable Road Defendants suffer from a separate but fatal flaw. That flaw is the absence of well-pled allegations of scienter. Under the PSLRA, Plaintiff is required to plead allegations supporting a "strong inference" that the Stable Road Defendants made material misstatements either intentionally or with deliberate recklessness. 15 U.S.C. § 78u–4(b)(2). Here, Plaintiff concedes that the information he claims should have been disclosed was "never shared" with the Stable Road Defendants. (*See* FAC ¶ 320; Pls. Ex. 1 ¶ 55.) To the contrary, Plaintiff alleges that Defendants Mikhail Kokorich and Momentus, Inc. ("Momentus") affirmatively misrepresented and concealed that information from the Stable Road Defendants during their diligence of Momentus prior to the merger. (FAC ¶¶ 66-71, 320.) Likewise, the primary exhibit on which Plaintiff relies—a cease-and-desist order filed by the SEC (the "SEC Order")—concluded that the Stable Road Defendants did

---

[1]  For citation purposes only, "FAC" will be used to refer to the First Amended Complaint, rather than "Amended Complaint."

[2]  The Stable Road Defendants join Defendants Momentus Inc., Dawn Harms, and Fred Kennedy (collectively, the "Momentus Defendants") in their brief, in its entirety, and incorporate all arguments made therein here as well.

1

not act with fraudulent intent and the SEC declined to bring the very same claims that Plaintiff asserts here.  (Pls. Ex. 1 ¶ 1.)

Nevertheless, relying on a scattershot of conclusory and circumstantial allegations, Plaintiff claims that the Stable Road Defendants made alleged misstatements with scienter.  (FAC ¶¶ 308-316.)  That ill-conceived attempt fails for three reasons.  *First*, unable to plead particularized facts with respect to each Stable Road Defendant, Plaintiff resorts to impermissible group pleading.  The Amended Complaint lumps Hofmockel, Kabot, Norris, and Quiroga together as "the SRAC Individual Defendants" and relies on their purported collective state of mind to allege scienter against each of them, individually, and SRAC and the Sponsor as entities.  (*See, e.g.*, FAC ¶¶ 308-09, 311-15.)  Because the PSLRA requires individualized allegations of scienter against each Defendant, the Court should dismiss Plaintiff's claims against the Stable Road Defendants for failing to make such allegations here.  *See In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1153-54 (C.D. Cal. 2007).

*Second*, Plaintiff relies on a series of circumstantial pleading theories, each of which is legally inadequate.  *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 988 (9th Cir. 2009), *as amended* (Feb. 10, 2009).  Those theories—which claim that scienter can be inferred from (1) the Stable Road Defendants' positions as officers and/or directors of SRAC (FAC ¶ 308), (2) the "core operations" of SRAC (*id.* ¶ 312), (3) supposed "personal financial motives" (*id.* ¶ 313), and (4) Hofmockel, Kabot, and Quiroga's attendance at certain diligence meetings (*id.* ¶ 310)—have been repeatedly rejected by this Court.  *See* supra, Section III.B.  Further, Plaintiff's own allegations that Kokorich and Momentus misrepresented and concealed information from SRAC during the diligence period undercut any claim that the Stable Road Defendants acted with scienter.  (*See, e.g.*, FAC ¶¶ 308-09, 311-15.)  As such, Plaintiff's pleading theories fail as a matter of both law and logic.

2

*Third*, even if Plaintiff's scienter allegations are viewed holistically, the most compelling inference that can rationally be drawn from the Amended Complaint is that the Stable Road Defendants spoke without fraudulent intent. As noted above, Plaintiff concedes that the Stable Road Defendants lacked actual knowledge of the purported falsity of the disclosures regarding Momentus. Plaintiff also fails to plead a strong inference that the Stable Road Defendants acted with deliberate recklessness. Indeed, numerous allegations in the Amended Complaint strongly negate any such inference. Those allegations include the Stable Road Defendants' retention of third-party advisors to assist their diligence efforts and the Stable Road Defendants' multiple disclosures warning investors about the limitations of their diligence. *See* supra Section III.C. Thus, the Amended Complaint cannot support a strong inference of scienter, and, consequently, Plaintiff's claims against the Stable Road Defendants fail as a matter of law.

Beyond failing to plead adequate allegations of scienter, Plaintiff also inappropriately seeks to hold the Stable Road Defendants liable for statements that they did not make. Under Section 10(b) and Rule 10b-5, only the "maker" of an alleged misstatement may be held liable. *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135, 142 (2011); *Children's Hosp. & Med. Ctr. Found. of Omaha v. Countrywide Fin. Corp.*, 2011 WL 13220509, at *6 (C.D. Cal. Aug. 22, 2011). The Supreme Court has made clear that "in the ordinary case, attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed." *Janus*, 564 U.S. at 142-43. Yet, here, Plaintiff's claims against the Stable Road Defendants rely on an array of statements that Plaintiff attributes exclusively to others. (*See, e.g.*, FAC ¶ 183 (alleging misstatements in a "blog post on the Momentus website"); *id.* ¶ 185 (alleging misstatements in an article "quoting Defendant Kokorich"); *id.* ¶ 187 (alleging misstatements in an investor presentation "prepared by Momentus")). For these reasons, and others set forth in the Momentus

3

Brief, the Court should dismiss Plaintiff's claims against the Stable Road Defendants with prejudice.

## BACKGROUND

### A.   SRAC Warns Investors of "High Degree of Risk."

SRAC was incorporated in Delaware on May 28, 2019.  (FAC ¶ 35.)  As a special purpose acquisition company ("SPAC"), SRAC was formed for the sole purpose of "effecting a merger, capital stock exchange, asset acquisition, stock purchase, reorganization or similar business combination with one or more businesses."[3]  (*Id.*)  It was led by an experienced management team with over 60 years of combined professional investment experience across numerous industries, and more than $1 billion in aggregate capital under management.  (*See* Dfs. Ex. 1, Prospectus, at 27.)[4] That team included Defendants Brian Kabot (Chairman and Chief Executive Officer), James Norris (Director and Chief Financial Officer), and Juan Manuel Quiroga (Secretary and Chief Investment Officer).  Defendant James Hofmockel served on SRAC's Board of Directors.

In advance of its initial public offering ("IPO"), SRAC filed a prospectus with the Securities and Exchange Commission ("SEC") on November 8, 2019 (the "Prospectus"), warning investors that investing in the Company involved a "high degree

---

[3]  SPACs are an SEC-authorized investment vehicle through which a "private company can become a publicly traded company with more certainty as to pricing and control over deal terms as compared to traditional initial public offerings." *What You Need to Know About SPACs*, U.S. Sec. & Exch. Comm'n, *available at* <https://www.sec.gov/oiea/investor-alerts-and-bulletins/what-you-need-know-about-spacs-investor-bulletin>.

[4]  Because the Amended Complaint relies extensively on SRAC's various public filings with the SEC, the Court "may treat such . . . document[s] as part of the complaint" for purposes of ruling on a motion under Rule 12(b)(6). *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  The Court may also take judicial notice of such public records.  *Id.*

4

of risk." (*See* Dfs. Ex. 1, Prospectus, at 27.)  These risks included the possibility that the narrow 18-month timeframe in which SRAC was required to complete a transaction could leave management with "limited time to conduct due diligence" into the target company (*id.* at 29), and that SRAC could be forced to consummate a transaction on "the basis of limited information, which may result in a [transaction] with a company that is not as profitable as [SRAC's management] suspected, if at all" (*id.* at 47).  The Prospectus also warned investors that, although SRAC hoped to pursue a transaction with a target in the cannabis industry, the Company may nevertheless decide to "consummate a business combination with a company in *any* industry," including industries "outside of [its] management's area of expertise."  (*Id.* at 40 (emphasis added).)  After disclosing these and other risks, which are exhaustively detailed in the Prospectus (*see id.* at 27-66), SRAC completed its IPO on November 13, 2019.  (FAC ¶ 36.)

> **B.    SRAC Begins Discussions and Completes Diligence with Momentus.**

Between the IPO in November 2019 and June 2020, SRAC evaluated more than 50 targets for a potential business combination, including targets both within and outside of the cannabis industry.  (FAC ¶ 59.)  SRAC entered into nondisclosure agreements and began initial discussions with more than half of those targets.  (*Id.* ¶ 59.)  Those discussions then led to extensive negotiations with two targets, with whom SRAC completed preliminary diligence.  (Dfs. Ex. 2, Preliminary Registration Statement, at 111.)  Ultimately, however, SRAC's board and management team concluded that pursuing a transaction with either target was not in the stockholders' best interests and declined to continue negotiations.  (*Id.*)

SRAC began discussions with Momentus on June 26, 2020.  (FAC ¶ 59.)  After executing a nondisclosure agreement on July 1, 2021, SRAC began conducting diligence and negotiating the terms of a possible business combination with Momentus.  These diligence efforts included more than a dozen virtual and in-person meetings in

July, August, and September of 2020, in which representatives of SRAC probed representatives of Momentus for information regarding Momentus's business, regulatory history, technology, and other matters, including Kokorich's immigration status and prior dealings with the Committee for Foreign Investment in the United States ("CFIUS").  (FAC ¶ 310; Dfs. Ex. 2, Preliminary Registration Statement, at 112-115.)  Additionally, on September 1, 2020, SRAC retained Stellar Solutions, a leading space technology consulting firm, to conduct a technical assessment of Momentus's technology and systems.  (FAC ¶ 108.)

**C.    SRAC and Momentus Announce the Merger and Issue Preliminary Disclosures.**

On October 7, 2020, SRAC and Momentus executed the Merger Agreement and issued a joint press release announcing the transaction.  (Dfs. Ex. 3, Press Release, at 1.)  While describing Momentus's "developing capabilities" and "strong momentum" in the in-space transportation and infrastructure sector, the press release also emphasized that Momentus's future business prospects "involve[d] a number of known and unknown risks, uncertainties, and assumptions," including "the risk that any required regulatory approvals are not obtained, are delayed or are subject to unanticipated conditions" and "risks relating to the uncertainty of the projected financial information with respect to Momentus."  (*Id.*)  The press release also encouraged the public to review the parties' forthcoming filings with the SEC for additional information related to the transaction.  (*Id.*)

On November 2, 2020, SRAC filed a Preliminary Registration Statement on Form S-4 with the SEC.  (Dfs. Ex. 2, Preliminary Registration Statement.)  Like the October press release, the Preliminary Registration Statement cautioned investors about the risks associated with the transaction.  (*Id.* at 39-74.)  For example, the Preliminary Registration Statement again emphasized the limits of SRAC's diligence:  "We cannot assure you that the due diligence conducted . . . has identified all material issues or risks associated with Momentus, its business or the industry in which it competes."  (*Id.* at

63.)  The Preliminary Registration Statement also pointed to an array of other risks facing Momentus, including risks involving (i) the development of Momentus's technology (*id.* at 6-7 (describing risk of "launch failures" and "delays . . . in the development, manufacture and deployment" of technology)), (ii) Momentus's ability to obtain an export license (*id.* at  46-47 ("[W]e have not yet been able to obtain such a license, and there is no assurance we will ever be able to obtain such a license in the future.")), and (iii) possible national security concerns related to Kokorich's status as a foreign national (*id.* ("[I]t is possible that Mr. Kokorich's controlling interests in the Company . . . could make it more difficult to obtain CFIUIS approval . . . .")). Furthermore, the Preliminary Registration Statement warned investors—in red text atop the first page—that SRAC's disclosures concerning the contemplated deal were "not complete and may be changed" until declared effective by the SEC.  (*Id.*)

> **D.    An SEC Inquiry Reveals New Information and SRAC Amends Its Disclosures.**

On January 13, 2021, the Office of Foreign Investment Review at the U.S. Department of Defense ("DOD") sent a letter to the SEC (the "DOD Letter").  (FAC ¶¶ 80-82; Pls. Ex. 7.)  The DOD Letter informed the SEC that the DOD had concluded that Momentus posed national security risks due to Kokorich's alleged ties to the Russian government, and requested that the SEC delay approval of the transaction with SRAC until the DOD and other agencies could complete their national security review. (FAC ¶ 81.)  In response to the DOD Letter, the SEC began a formal inquiry into the adequacy of Momentus and SRAC's disclosures on January 24, 2021.  (FAC ¶ 83.)

It is undisputed that Momentus never informed SRAC of the national security risks identified by the DOD.  (Pls. Ex. 1 ¶ 55 ("Momentus and Kokorich did not share the extent of Kokorich's national security issues with SRAC and Kabot.").)  To the contrary, Plaintiff alleges that Momentus affirmatively misrepresented and concealed these risks from SRAC during the diligence process.  (FAC ¶¶ 66-71, 320 ("Defendant Kokorich assured Defendant Kabot that . . . the issues CFIUS raised in the prior matter

had to do with other investors, not specifically him.").)  After learning of the DOD Letter, on January 25, 2021, SRAC asked Kokorich to resign as Momentus's CEO and begin the process of placing his shares into a voting trust.  (Pls. Ex. 1 ¶ 52.)  SRAC announced Kokorich's resignation and the appointment of Dawn Harms as the interim CEO of Momentus that same day, via the filing of a Form 8-K.  (Dfs. Ex. 4, Jan. 25, 2021, 8-K.)

As SRAC learned new information from the SEC during its inquiry, the Company issued new and amended disclosures.  For example, on March 8, 2021, SRAC amended its Preliminary Registration Statement to disclose, among other things, (i) the contents of the DOD Letter, (ii) that Momentus had been unable to obtain regulatory approval for a launch scheduled earlier that year due in part to the national security concerns raised in the DOD Letter, and (iii) that SRAC and Momentus had proposed a mitigation plan to CFIUS to alleviate any national security concerns and obtain the necessary approvals. (FAC ¶¶ 141-149.)  On June 29, 2021, SRAC again amended its Preliminary Registration Statement to disclose that Momentus's in-space test of its water plasma technology during the El Camino Real mission in 2019 (which had been described as "successful" in prior public statements) had not achieved all of its pre-launch objectives due to a failure of the host satellite prior to completion of the test.  (FAC ¶¶ 159-60.) Like the national security concerns surrounding Kokorich, prior to the DOD Letter, Momentus had "never shared with SRAC . . . internal analyses about the El Camino Real mission's failure." (FAC ¶ 320.)

Following its investigation, the SEC filed a cease-and-desist order against Momentus, SRAC, the Sponsor, and Kabot on July 13, 2021 (the "SEC Order").  (Pls. Ex. 1.)  The SEC Order alleged that Momentus had violated the anti-fraud provisions of the securities laws by knowingly concealing information from and making false statements to SRAC concerning Kokorich's national security risks and the test results from the El Camino Real mission.  (Pls. Ex. 1 ¶¶ 4-5.)  In contrast, the SEC Order

8

alleged that SRAC, the Sponsor, and Kabot had acted only with *non-fraudulent intent* "by repeating and disseminating Momentus's misrepresentations." (Pls. Ex. 1 ¶ 1.)  For that reason, the SEC Order did not accuse SRAC, the Sponsor, or Kabot of violating Section 10(b) or 20(a) of the Exchange Act—the claims advanced by Plaintiff here— but rather Sections 13(a), 14(a), and 17(a)(2) and (3),  none of which require scienter. (*Id.* ¶¶ 62-63.)  As part of a settlement with the SEC, Momentus, SRAC, the Sponsor, and Kabot consented to the entry of the SEC Order, without admitting its allegations.[5] (*Id.*)

### E.    Stockholders Approve the Transaction.

The SEC declared SRAC's Registration Statement, as amended, effective on July 22, 2021.  (Dfs. Ex. 5, July 22, 2021 SEC Notice of Effectiveness.)  Thereafter, in accordance with the corporate charter, SRAC's stockholders were given the opportunity to redeem their shares from the Company's trust account at the IPO price of $10 per share.  The stockholders then approved the transaction on August 11, 2021.  (Dfs. Ex. 6, Aug. 11, 2021, 8-K.)  Over 96% of the votes were cast in favor of the business combination.  (*Id.*)

### F.    Plaintiff Commences This Action.

Plaintiff Keith Jensen commenced this federal securities action on July 15, 2021. Following his appointment as Lead Plaintiff on October 20, 2021 (ECF No. 75), Lead Plaintiff Hartmut Haenisch filed the Amended Complaint on November 12, 2021, asserting claims against the Stable Road Defendants under Sections 10(b) and 20(a) of the Exchange Act, in connection with certain public statements related to the merger.[6]

---

[5]  Separately, the SEC filed a complaint against Kokorich that same day, on July 13, 2021.  (Pls. Ex. 2.)  The complaint alleged that Kokorich had "deceived both Stable Road and investors" in order to complete the transaction.  (*Id.*)  Kokorich has denied those allegations and the litigation remains ongoing.

[6]  Except where otherwise noted, all references to "Plaintiff" herein refer to Lead Plaintiff Hartmut Haenisch.

Relevant here, the Amended Complaint alleges that those public statements were materially misleading because of four alleged facts that Plaintiff claims were misrepresented or omitted: (1) that the federal government had determined Kokorich to pose a national security risk; (2) that Momentus had not successfully tested its technology in space; (3) that Momentus's revenue projections were overstated due to Kokorich's national security issues and the lack of a successful test of Momentus's technology; and (4) that SRAC's due diligence had been inadequate in uncovering those issues. (*See, e.g.*, FAC ¶ 116.)

## ARGUMENT

### I. Plaintiff Failed to Plead Adequate Allegations of Scienter Against the Stable Road Defendants.

The Court should dismiss Plaintiff's claims against the Stable Road Defendants because Plaintiff did not adequately plead that the Stable Road Defendants acted with scienter in making any alleged misstatement or omission.[7]  Scienter is the "critical element" of a Section 10(b) claim and is defined as a mental state "embracing intent to deceive, manipulate, or defraud." *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020).  That mental state requires the defendants to have acted either intentionally or, at a minimum, with "*deliberate* recklessness." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 991 (9th Cir. 2009), *as amended* (Feb. 10, 2009) (emphasis added).  Deliberate recklessness is more than "*mere* recklessness or a motive to commit fraud;" rather, it consists of "an *extreme* departure from the standards of ordinary care" creating a danger of misleading investors that was "either known to the defendant or . .

---

[7]  The Stable Road Defendants join, in full, the Momentus Brief, which sets forth additional reasons for the Court to dismiss Plaintiff's claims, including (among other reasons) Plaintiff's failure to adequately plead the elements of falsity, materiality, and loss causation.

*. so obvious* that the actor must have been aware of it." *Nguyen*, 962 F.3d at 414 (quoting *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016)).

To adequately plead scienter and survive a motion to dismiss, Plaintiff must also satisfy the heightened pleading standards of the PSLRA. Those standards require Plaintiff to plead with particularity "facts giving rise to a *strong inference*" that the defendants acted with scienter. 15 U.S.C. § 78u–4(b)(2) (emphasis added). Pleading a "strong inference" of scienter is no formality. *See id.* It is an onerous pleading standard that demands particularized allegations of "'contemporaneous statements or conditions' that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Ronconi v. Larkin,* 253 F.3d 423, 432 (9th Cir. 2001). In assessing whether that showing has been made, courts must undertake a "comparative evaluation" of the inferences that can rationally be drawn from the complaint. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). It is insufficient for an inference of scienter to be "plausible or reasonable." *Webb v. Solarcity Corp.*, 884 F.3d 844, 850 (9th Cir. 2018). Instead, an inference of scienter is only "strong" if it is "at least as compelling as any opposing inference one could draw from the facts alleged." *Id.*

Here, the Amended Complaint fails to plead a strong inference of scienter against the Stable Road Defendants for three reasons. *First*, Plaintiff engaged in impermissible group pleading by failing to plead particularized allegations of scienter with respect to each of the Stable Road Defendants. *See Or. Pub. Emps. Ret. Fund v. Apollo Grp. Inc.*, 774 F.3d 598, 607 (9th Cir. 2014) ("[W]e require that the Plaintiffs allege scienter with respect to each of the individual defendants . . . ."). *Second*, Plaintiff's allegations fall well short of the high bar for pleading deliberately reckless or intentionally fraudulent conduct. *See Zucco*, 552 F.3d at 1005. *Third*, the most compelling inference rationally drawn from Plaintiff's own allegations is that any misstatement or omission made by the Stable Road Defendants lacked fraudulent intent. *See id.* Accordingly, the Court

11

should dismiss Plaintiff's claims against the Stable Road Defendants because the Amended Complaint fails to plead a strong inference that they made any alleged misstatement with scienter.

### A.      Plaintiff Failed to Plead Particularized Allegations of Scienter with Respect to Each Stable Road Defendant.

As a threshold matter, Plaintiff engaged in impermissible group pleading with respect to the Stable Road Defendants. *May v. KushCo Holdings, Inc.*, 2020 U.S. Dist. LEXIS 213905, at *22 (C.D. Cal. Sept. 25, 2020) (dismissing complaint where plaintiff "impermissibly group[ed] all of the Individual Defendants together"). The PSLRA requires an individualized scienter theory for each defendant. *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1154 (C.D. Cal. 2007) ("[T]he group pleading doctrine can no longer be used in pleading cases under the PSLRA[.]"); *see also Apollo Grp. Inc.*, 774 F.3d at 607. Accordingly, to survive a motion to dismiss, Plaintiff needed to plead particularized allegations supporting a strong inference of scienter against each of Hofmockel, Kabot, Norris, Quiroga, SRAC, and the Sponsor. *Id.*

Ignoring these pleading obligations, Plaintiff repeatedly tried to allege scienter against the Stable Road Defendants as a group. (*See, e.g.*, FAC ¶ 306 ("*Defendants* acted with scienter since *Defendants* knew that the public documents and statements issued or disseminated in the names of SRAC and Momentus were materially false and/or misleading."); *id.* ¶ 309 ("Defendants repeatedly held *themselves* out as knowledgeable . . . which gives rise to a strong inference of *their* scienter."); *id.* ¶ 311 ("[T]he *SRAC Individual Defendants* [had] in-depth knowledge of all aspects of SRAC's operations."); *id.* ¶ 313 ("The *SRAC Individual Defendants* possessed strong personal financial motives . . . to cover up problems with SRAC's due diligence and problems at Momentus.").) Indeed, Norris is mentioned only twice in the scienter section of the Amended Complaint, both times in reference simply to his position with the Company. (*See* FAC ¶ 308 ("Defendant Norris was SRAC's CFO."); *id.* ¶ 311 ("SRAC had three officers (Defendants Kabot, Norris, and Quiroga) and no full-time

employees.”).)  Similarly, the scienter allegations contain only cursory references to Hofmockel, Kabot, and Quiroga's positions and their attendance at certain meetings, with no particularized allegations of each individual's specific knowledge or state of mind.  (FAC ¶¶ 308, 310.)

Plaintiff's reliance on group pleading is particularly problematic in this case given that Kokorich and Momentus are alleged to have concealed and misrepresented the relevant information.  *In re ChinaCast Educ. Corp. Sec. Litig.*, 2012 WL 6136746, at *6 (C.D. Cal. Dec. 7, 2012) ("Plaintiffs' failure to allege specific facts with respect to the Individual Defendants' alleged knowledge is particularly problematic in this case because the misrepresentations and omissions relied on by Plaintiffs relate to an illegal scheme that Chan and his coconspirators successfully concealed from them.").  In such cases, it is crucial that Plaintiff's allegations demonstrate "what, if anything, the Individual Defendants knew or when they may have acquired that knowledge."  *Id.* Here, after conceding that the relevant information was "never shared" with the Stable Road Defendants (*see* FAC ¶ 320), the Amended Complaint unsurprisingly fails to make that showing.  Accordingly, the Court should dismiss Plaintiff's claims against the Stable Road Defendants for failure to plead individual and particularized allegations of scienter.

### B.     Plaintiff's Circumstantial Allegations Fall Short of Fraudulent Intent and Deliberate Recklessness.

Even ignoring Plaintiff's impermissible group pleading, the Court should dismiss Plaintiff's claims against the Stable Road Defendants because the Amended Complaint falls well short of creating a strong inference that they acted with fraudulent intent.  To meet that high bar, the Amended Complaint offers only conclusory and circumstantial allegations from which Plaintiff purports to establish scienter.  (FAC ¶¶ 308-316.)  But each of these allegations is insufficient as a matter of law.

### 1. Corporate Positions

*First*, Plaintiff gestures at the corporate positions held by Hofmockel, Kabot, Norris, and Quiroga. (*See* FAC ¶ 308 ("The positions of the SRAC Individual Defendants give rise to a strong inference of their scienter . . . .").) But "the positions of various Individual Defendants within [a corporation] is insufficient, without more, to create a strong inference of scienter." *ChinaCast*, 2012 WL 6136746, at *7. Plaintiff "must do more than allege that . . . key officers had the requisite knowledge by virtue of their 'hands on' positions." *In re Autodesk, Inc. Sec. Litig.*, 132 F. Supp. 2d 833, 844 (N.D. Cal. 2000). Instead, regardless of a defendant's job title, Plaintiff must allege particularized facts that would tend to establish his or her specific knowledge. *Id*. Those facts are absent here and, indeed, Plaintiff has affirmatively alleged that the Stable Road Defendants lacked any such knowledge given Momentus and Kokorich's alleged concealment and misrepresentation of the relevant information. (FAC ¶¶ 66-71, 320.) Once again, therefore, Plaintiff's own allegations undercut his reliance on this theory.

### 2. Core Operations

*Second*, Plaintiff attempts to rely on what is known as the "core operations" theory to establish scienter against the Stable Road Defendants. (FAC ¶ 312 ("[T]he business combination with Momentus was SRAC's core, and indeed only, operation, which gives rise to a strong inference of the SRAC Individual Defendants' scienter . . . .").) This pleading theory—which has been recognized only in an "exceedingly rare category of cases"—asks the Court to infer that "facts critical to a business's 'core operations' or an important transaction are known to a company's key officers." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 783 (9th Cir. 2008). Again, however, the mere assertion that the alleged misstatements relate to the core operations of a company is insufficient to plead a strong inference of scienter under the PSLRA. *Id*. Absent "additional detailed allegations about the defendants' actual exposure to information,"

such allegations "fall short of the PSLRA standard."  *Id.* at 784; *Nozak v. N. Dynasty Mins. Ltd.*, 804 F. App'x 732, 734 (9th Cir. 2020) ("The core operations theory cannot support a strong inference of scienter because Plaintiffs have not provided detailed and specific allegations about management's exposure to factual information within the company." (internal citations and quotations omitted)); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063 (9th Cir. 2014) ("'[A]bsent some additional allegation of specific information conveyed to management and related to the fraud' or other allegations supporting scienter, the core operations inference will generally fall short of a strong inference of scienter.").

Here, the Amended Complaint is devoid of any allegations about the Stable Road Defendants' actual exposure to specific information—let alone the information Plaintiff claims should have been disclosed.  (FAC ¶¶ 311-312.)  Indeed, Plaintiff's own allegations that Kokorich and Momentus affirmatively misrepresented and concealed the relevant information undercut any notion that the Stable Road Defendants were aware of such information by virtue of the Company's core operations.  (FAC ¶¶ 66-71, 320.)  And even if Plaintiff had adequately pled facts supporting a "core operations" inference, that inference would extend only to information related to the operations of SRAC—not Momentus.  *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1111 (9th Cir. 2021) (noting that the core operations theory presumes that "corporate officers have knowledge of the critical core operation of *their* companies" (emphasis added)).  Here, the allegedly omitted information in this case relates almost entirely to Momentus's operations.[8]  (*See, e.g.*, FAC ¶ 116 (alleging that certain

---

[8]   The only alleged omissions in the Amended Complaint that arguably relate to SRAC's operations concern the purported inadequacy of SRAC's diligence.  (*See, e.g.*, FAC ¶ 116.)  Here, too, however, Plaintiff's reliance on this theory fails because, rather than detailing the "specific information conveyed to management" during the diligence process, *see In re NVIDIA Corp. Sec. Litig.*, 768 F.3d at 1063, the Amended Complaint alleges that Kokorich and Momentus affirmatively

statements were misleading because they "failed to disclose material adverse facts about [sic] *Momentus's* business, operations, and prospects" (emphasis added)).)  Plaintiff's reliance on the core operations theory, therefore, is both legally insufficient and factually misplaced.  (*Id.*)

### 3. Motive

Plaintiff next asserts that an inference of scienter exists because the Stable Road Defendants "possessed strong personal financial motives to complete the merger between SRAC and Momentus." (FAC ¶ 313.)  However, a purported "motive to commit fraud . . . [is] not sufficient to establish a *strong* inference" of scienter.  *Zucco*, 552 F.3d at 991; *see also Glazer Capital Mgmt., LP v. Magistri*, 549 F.3d 736, 748 (9th Cir. 2008) ("[E]vidence of a personal profit motive on the part of officers and directors . . . is insufficient to raise a strong inference of scienter."); *Prodanova v. H.C. Wainwright & Co., LLC*, 2019 U.S. Dist. LEXIS 167101, at *16 (C.D. Cal. July 2, 2019) ("[A]n alleged motive to commit fraud is not alone sufficient to establish a strong inference of scienter." (internal citations and quotations omitted)).  Instead, Plaintiff has alleged only a generalized business objective that is incapable of supporting an inference of scienter.  *See Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1038 (9th Cir. 2002) ("[R]outine business objectives, without more, cannot normally be alleged to be motivations for fraud.").  Indeed, if Plaintiff's theory were successful, it would expose virtually every SPAC transaction in the United States to liability for securities fraud. *See Zucco Partners*, 552 F.3d at 1005.

Moreover, Plaintiff has not adequately alleged that the Stable Road Defendants in fact had any motive to commit fraud.  To the contrary, Plaintiff concedes that Hofmockel, Kabot, Norris, and Quiroga did not sell SRAC securities during the class period and are still prohibited from doing so due to a lock-up agreement entered into as concealed and misrepresented the allegedly omitted information.  (FAC ¶¶ 66-71, 320.)

part of the transaction. (FAC ¶ 314.) Courts routinely hold that such a lack of sales of securities by defendants weighs *against* any inference of scienter because of the absence of a motive for the alleged fraud. *See, e.g.*, *In re Immersion Corp. Sec. Litig.*, No. C-09 4073 MMC, 2011 WL 871650, at fn. 6 (N.D. Cal. Mar. 11, 2011). Plaintiff's attempt to rely on a motive theory here, therefore, fails as a matter of both law and fact.

### 4.   Diligence Participation

Finally, Plaintiff attempts to plead scienter by pointing to Hofmockel, Kabot, and Quiroga's attendance at certain diligence meetings. (FAC ¶ 310.) This effort, however, ignores both the high bar for establishing scienter and the heightened pleading standards of the PSLRA. Allegations of mere participation in diligence activities, without more, are insufficient to plead a strong inference of fraudulent intent. *See Allstate Life Ins. Co. v. Robert W. Baird & Co.*, 756 F. Supp. 2d 1113, 1145 (D. Ariz. 2010) ("At base, these allegations claim that if [the underwriters] had properly done their jobs as underwriters and performed due diligence adequately, they would have uncovered the truth . . . . These allegations constitute negligence at best, and these types of allegations . . . have always been insufficient to establish scienter under the federal securities laws."); *see also Glazer Cap. Mgmt. v. Magistri*, 549 F.3d 736, 746 (9th Cir. 2008) ("attendance at meetings" is insufficient to plead a strong inference of scienter). Instead, to plead a strong inference of scienter, Plaintiff must put forth "detailed allegations about the defendants' actual exposure to information." *S. Ferry LP*, 542 F.3d at 784.

Plaintiff failed to provide any such detail here. To the contrary, the Amended Complaint offers only vague and high-level descriptions of each meeting. (*See, e.g.*, FAC ¶ 310(b) (alleging that an August 14, 2020 telephone conference was held "to discuss Momentus' intellectual property and other related topics").) And, again, Plaintiff's allegations that Kokorich and Momentus affirmatively misrepresented and concealed information from the Stable Road Defendants during these meetings

undermines any inference that could possibly be drawn in support of Plaintiff's theory. (FAC ¶¶ 66-71, 320.)   Accordingly, Plaintiff's cursory allegations that Hofmockel, Kabot, and Quiroga attended certain diligence meetings are insufficient to plead a strong inference of scienter.

### C.   The Most Compelling Inference Is Non-Fraudulent.

Even if Plaintiff's scienter allegations are viewed holistically, the Amended Complaint fails to plead a strong inference of scienter against the Stable Road Defendants.   *See Zucco Partners*, 552 F.3d at 1005.   Such an inference exists only if, after "tak[ing] into account plausible opposing inferences," an inference of fraudulent intent is "at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 323.   Here, the most compelling inference that can rationally be drawn from the Amended Complaint is that—to the extent the Stable Road Defendants made any materially false or misleading statements—they did so without fraudulent intent.   *See id.*

At the outset, Plaintiff concedes that the Stable Road Defendants did not make any of the alleged misstatements with actual knowledge of their falsity.   (FAC ¶¶ 66-71, 320.)   As noted above, Plaintiff alleges that Kokorich and Momentus not only "never shared" the relevant information with the Stable Road Defendants, but also that Kokorich and Momentus affirmatively misrepresented and concealed that information during the diligence period.   (FAC ¶¶ 66-71, 320.)   This concession is further supported by the SEC Order, attached as an exhibit to the Amended Complaint, which concludes that SRAC and Kabot did not act with fraudulent intent in making any alleged misstatement.   (Pls. Ex. 1.)   Thus, the only inference that can be drawn from the Amended Complaint is that the Stable Road Defendants lacked actual knowledge of the purported falsity of any alleged misstatement.

That leaves deliberate recklessness.   As emphasized above, deliberate recklessness is an extraordinarily high bar.   It has been described by this Court as a

"level of reckless disregard that *strongly suggests* actual intent." *Dean v. China Agritech, Inc.*, 2001 WL 5148598, at *4 (C.D. Cal. Oct. 27, 2011) (emphasis added). Pleading deliberate recklessness requires particularized allegations showing an "extreme departure from the standards of ordinary care" and a danger of misleading investors that was "so obvious that the actor must have been aware of it." *Nguyen*, 962 F.3d at 414. Plaintiff's allegations fall well short of that bar here.

The Amended Complaint details the extensive diligence efforts made by the Stable Road Defendants in the months leading up to the execution of the Merger Agreement. (*See, e.g.*, FAC ¶¶ 108, 310.) These efforts included not only numerous meetings and phone calls, but also the retention of sophisticated third-party advisors to conduct regulatory, legal, technical, and engineering diligence. (*Id.*) Such efforts strongly negate any purported inference that the Stable Road Defendants acted with deliberate recklessness. *In re ChinaCast*, 2012 WL 6136746, at *6 ("Plaintiff's reckless disregard argument is also unpersuasive because the Complaint itself acknowledges that [the Company] . . . voluntarily retained FTI to perform an independent analysis."). Moreover, the Stable Road Defendants repeatedly warned investors about the limitations of their diligence. (*See* Dfs. Ex. 1, Prospectus, at 29, 47; Dfs. Ex. 2, Preliminary Registration Statement, at 63 ("We cannot assure you that the due diligence conducted . . . has identified all material issues or risks associated with Momentus, its business or the industry in which it competes.").) These disclosures further undercut any inference of deliberate recklessness. *See SEC v. Gane*, 2005 WL 90154, at *17 (S.D. Fla. Jan. 4, 2005) ("[T]he fact that the Defendants *did* disclose a significant portion of their compensation from Dicom negates any conclusion that there was a fraudulent intent . . . ."). And, again, the SEC Order on which Plaintiff relies reached that same conclusion, further supporting an inference of non-fraudulent intent. (Pls. Ex. 1.) Accordingly, even when Plaintiff's allegations are viewed holistically, the only

19

rational inference that can be drawn from the Amended Complaint is that the Stable Road Defendants lacked scienter in making any alleged misstatement.

## II. Many of Plaintiff's Alleged Misstatements Are Not Attributable to the Stable Road Defendants.

In addition to failing to plead scienter, Plaintiff also inappropriately asserts claims against the Stable Road Defendants based on statements that they did not make. Only the "maker" of an alleged misstatement may be held liable under Section 10(b) and Rule 10b-5. *Janus*, 564 U.S. at 142-43; 17 C.F.R. § 240.10b-5 (declaring it unlawful "[t]o *make* any untrue statement of material fact . . . ." (emphasis added)). To be considered a statement's "maker" within the meaning of those provisions, the defendant must have had "ultimate authority" over both the statement's content and its communication. *Janus*, 564 U.S. at 142-43; *Abdo v. Fitzsimmons*, 2021 WL 616324, at *8 (N.D. Cal. Feb. 17, 2021) ("*Janus* requires that to be the maker of a statement, a person or entity must have ultimate authority not just over whether a statement is made, but also over the content of a statement and how to communicate it."). Importantly, at the pleading stage, a statement's attribution plays a critical role in this inquiry: "attribution within a statement or implicit from surrounding circumstances is strong evidence that a statement was made by—and only by—the party to whom it is attributed." *Janus*, 564 U.S. at 142-43.

Here, Plaintiff's claims against the Stable Road Defendants rely on dozens of alleged misstatements that Plaintiff exclusively attributes to others. For example, the Amended Complaint alleges that numerous misstatements were made (i) "in a blog post on the Momentus website" and Momentus's regulatory filings prior to the announcement of the merger (FAC ¶¶ 180-86); (ii) in an investor presentation that Plaintiff concedes was "prepared by Momentus" (*id.* ¶¶ 187, 194, 201-02, 207, 209, 212-13, 219, 291, 294-96, 299, 301); (iii) by Kokorich and Momentus's President, Defendant Fred Kennedy, in various television and media interviews (FAC ¶¶ 191, 203-04, 214, 261-65, 270-71); (iv) in a portion of a joint press release that "quote[s]

20

Defendant Kokorich" (FAC ¶ 192); and (v) in a press release issued by Momentus that SRAC merely attached as an exhibit to a SEC filing (FAC ¶¶ 259-60, 268-69, 274-75).

Plaintiff does not—and cannot—allege that the Stable Road Defendants had "ultimate authority" over both the content and communication of these alleged misstatements. *Janus*, 564 U.S. at 142-43. Accordingly, Plaintiff's claims against the Stable Road Defendants with respect to these and any other alleged misstatements made by others must be dismissed. *Goldberg v. Rome McGuigan, P.C.*, 2021 WL 1570858, at *8-9 (C.D. Cal. Mar. 4, 2021) (dismissing claims where "the allegations in the Complaint d[id] not support a plausible inference" that defendants had "'made' a material misrepresentation" under *Janus*); *Oaktree Prinicipal Fund V, LP v. Warburg Pincus LLC*, 2016 WL 6782768, at *10 (C.D. Cal. Aug. 9, 2016) (dismissing claims where plaintiff's "generalized, conclusory allegations [were] insufficient to show that Warburg controlled the statements or omissions attributed to [other defendants]").

## **CONCLUSION**

For the foregoing reasons, as well as those outlined in the Momentus Brief, the Stable Road Defendants respectfully request that the Court dismiss the claims against them in their entirety and with prejudice.

DATED:  February 14, 2022

Respectfully submitted,
KIRKLAND & ELLIS LLP

*/s/ Mark Holscher, P.C.*

Mark Holscher, P.C. (SBN 139582)
Stefan Atkinson, P.C. (pro hac vice)
Emerson Bursis (pro hac vice)
555 S. Flower St., Ste. 3700
Los Angeles, CA 90071
Telephone:  (213) 680 8400
mark.holscher@kirkland.com
stefan.atkinson@kirkland.com
emerson.bursis@kirkland.com

*Attorneys for Defendants Stable Road Acquisition Corp., SRC-NI Holdings, LLC, Brian Kabot, James Hofmockel, James Norris, and Juan Manuel Quiroga*

22

## **CERTIFICATE OF SERVICE**

I hereby certify that on or about the 14th day of February, 2022, a true and correct copy of the above and foregoing pleading was electronically filed with the Clerk of the Court by using the CM/ECF service, which will provide copies to all counsel of record registered to receive CM/ECF notifications.

*/s/ Mark Holscher, P.C.*
Mark Holscher, P.C.