Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Casey E. Sadler (SBN 274241)
  *csadler@glancylaw.com*
Charles Linehan (SBN 307439)
  *clinehan@glancylaw.com*
Garth Spencer (SBN 335424)
  *gspencer@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Hartmut Haenisch*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE STABLE ROAD ACQUISITION CORP. SECURITIES LITIGATION | Case No. 2:21-CV-5744-JFW(SHKx) |
| | Honorable John F. Walter |
| | **PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS FILED BY STABLE ROAD DEFENDANTS** |
| | Hearing Date: July 11, 2022<br>Time:          1:30 p.m.<br>Courtroom:    7A |

PLAINTIFF'S OPPOSITION TO STABLE ROAD DEFENDANTS' MOTION TO DISMISS

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...............................................................................................1

II.   FACTUAL BACKGROUND ...........................................................................3

    A.   Background Regarding Stable Road......................................................3

    B.   Background Regarding Momentus........................................................4

    C.   Defendants Misled Investors To Gain Support For The Merger..........4

    D.   The Stable Road Defendants' Failure To Conduct Adequate Due Diligence.................................................................................................5

    E.   SRAC's Stock Price Crashed As The Truth Was Revealed.................6

III.  ARGUMENT .....................................................................................................7

    A.   Applicable Legal Standards Disfavor Defendants' Motion .................7

    B.   The Stable Road Defendants Concealed Material Facts That Made Their Statements Misleading To Reasonable Investors .......................8

    C.   The Stable Road Defendants Acted With Scienter............................10

        1.   Defendant Kabot Acted With Scienter....................................11

        2.   Defendants Quiroga and Hofmockel Were Also Actively Involved In SRAC's Due Diligence.........................................15

        3.   The Core Operations Inference Further Supports Scienter ......15

        4.   The Stable Road Individual Defendants Had A Strong Financial Motive To Ensure The Transaction Was Consummated...........................................................................17

        5.   Viewed Holistically, The Inference Of Scienter Is Overwhelming...........................................................................19

        6.   Plaintiff Has Sufficiently Alleged Scienter As To SRAC And The Sponsor...................................................................21

    D.   The Stable Road Defendants "Made" Misleading Statements...........21

IV.   CONCLUSION................................................................................................23

# TABLE OF AUTHORITIES

## CASES

*Abdo v. Fitzsimmons*,
2018 WL 11220494 (N.D. Cal. May 22, 2018) .................................................... 22

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................ 7

*Batwin v. Occam Networks, Inc.*,
2008 WL 2676364 (C.D. Cal. July 1, 2008) ........................................................ 17

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) ........................................................................... 10, 16

*Bond v. Clover Health Invs., Corp.*,
2022 WL 602432 (M.D. Tenn. Feb. 28, 2022) .................................................... 12

*Derr v. Ra Medical Sys., Inc.*,
2021 WL 1117309 (S.D. Cal. Mar. 24, 2021) ...................................................... 16

*Ferris v. Wynn Resorts Ltd.*,
2021 WL 3216462 (D. Nev. July 28, 2021) .......................................................... 13

*Halliburton Co. v. Erica P. John Fund, Inc.*,
134 S. Ct. 2398 (2014) ............................................................................................ 8

*Howard v. Everex Sys., Inc.*,
228 F.3d 1057 (9th Cir. 2000) ............................................................................... 19

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021) .................................................................................... 19

*In re Amylin Pharm. Inc. Sec. Litig.*,
2002 WL 31520051 (S.D. Cal. Oct. 10, 2002) ..................................................... 16

*In re Cabletron Sys. Inc.*,
311 F.3d 11 (1st Cir. 2002) ................................................................................... 19

*In re Cadence Design Sys., Inc. Sec. Litig.*,
692 F. Supp. 2d 1181 (N.D. Cal. 2010) ................................................................. 16

*In re ChinaCast Educ. Corp. Sec. Litig.*,
2012 WL 6136746 (C.D. Cal. Dec. 7, 2012) ....................................................... 20

*In re Daou Sys., Inc. Sec. Litig.*,
411 F.3d 1006 (9th Cir. 2005) ................................................................................ 7

*In re Gen. Elec. Co. Sec. Litig.*,
857 F. Supp. 2d 367 (S.D.N.Y. 2012) ................................................................... 14

*In re St. Jude Med., Inc. Sec. Litig.*,
836 F. Supp. 2d 878 (D. Minn. 2011) ................................................................... 14

*In re Tesla, Inc. Sec. Litig.*,
477 F. Supp. 3d 903 (N.D. Cal. 2020) .................................................................. 22

*In re Turbodyne Tech., Inc. Sec. Litig.*,
2000 WL 33961193 (C.D. Cal. Mar. 15, 2000) .................................................... 21

*In re VeriFone Holdings, Inc. Sec. Litig.*,
704 F.3d 694 (9th Cir. 2012) ............................................................... 10, 12, 15, 21

*In re XL Fleet Corp. Sec. Litig.*,
2022 WL 493629 (S.D.N.Y. Feb. 17, 2022) ........................................................ 12

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011) .............................................................................................. 21

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .............................................................................. 7, 8

*Makor Issues & Rights, Ltd. v. Tellabs, Inc.*,
437 F.3d 588 (7th Cir. 2006) ................................................................................ 14

*N.M. State Inv. Council v. Ernst & Young LLP*,
641 F.3d 1089 (9th Cir. 2011) ......................................................................... 10, 12

*Nathenson v. Zonagen Inc.*,
267 F.3d 400 (5th Cir. 2001) ................................................................................ 19

*Novak v. Kasaks*,
216 F.3d 300 (2d Cir. 2000)..................................................................................11

*Osher v. JNI Corp.*,
183 Fed. Appx. 604 (9th Cir. 2006) ....................................................................23

*Patel v. Axesstel, Inc.*,
2015 WL 631525 (S.D. Cal. Feb. 13, 2015) ..................................................14, 17

*Reese v. Malone*,
747 F.3d 557 (9th Cir. 2014)..............................................................10, 15, 16, 17

*S. Ferry LP, No. 2 v. Killinger*,
542 F.3d 776 (9th Cir. 2008)..................................................................................7

*S.E.C. v. e-Smart Techs., Inc.*,
31 F.Supp.3d 69 (D.D.C. 2014) ...........................................................................22

*Schueneman v. Arena Pharm., Inc.*,
840 F.3d 698 (9th Cir. 2016)................................................................................10

*Special Situations Fund III QP, L.P. v. Brar*,
2015 WL 1393539 (N.D. Cal. Mar. 26, 2015)......................................................22

*Strasburger v. Blackburne & Sons Realty Cap. Corp.*,
2020 WL 6128223 (C.D. Cal. June 25, 2020) ......................................................12

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
551 U.S. 308 (2007) ................................................................................10, 11, 19

## **RULES**

Fed. R. Civ. P. 15(a)(2) ........................................................................................23

---

Plaintiff respectfully submits this memorandum of law in opposition to the motion to dismiss filed by Defendants Stable Road Acquisition Corp. ("SRAC"), SRC-NI Holdings, LLC ("Sponsor"), James Hofmockel, Brian Kabot, James Norris, and Juan Manuel Quiroga (collectively, the "Stable Road Defendants").[1]

## I.    INTRODUCTION

There is no real dispute that Momentus and its executives engaged in securities fraud by failing to disclose that Momentus's Russian CEO, Mikhail Kokorich had been deemed a national security risk and was being removed from the United States by the federal government.  Moreover, there is no dispute that Momentus's only in-space test of its technology failed to meet its stated goals, experienced severe technical problems, and failed to demonstrate commercial viability. Nor can it be genuinely disputed that Momentus's excessive revenue projections ignored these national security and technological problems.  In fact, the SEC itself has already found that Defendants "misled the investing public."

In spite of this, the Stable Road Defendants claim that they are not liable for their fraudulent omissions and misleading statements because the Momentus Defendants "never shared" with them the information about the government actions against Kokorich or the problems with Momentus's sole in-space test.  *See* Stable Road MTD at 1.  Based on this, the Stable Road Defendants claim they lacked the scienter necessary to hold them liable for securities fraud.  This is absurd.  Scienter can be demonstrated through recklessness and the Stable Road Defendants' willful blindness to material problems at Momentus, and their baseless repetition of the Momentus Defendants' misleadingly incomplete statements, is the very definition of recklessness.

---

[1] Dkt Nos. 131 and 131-1 ("Stable Road MTD"). All emphasis in this brief has been added, all internal citations, quotation marks, and alterations have been removed, and citations to "¶__" refer to the amended complaint (Dkt No. 94) ("Complaint"). Capitalized terms have the same meanings as in the Complaint.

Specifically, the Stable Road Defendants, who were purported experts in marijuana businesses and had no experience in aerospace technologies or national security issues, only engaged in what they knew to be superficial due diligence of Momentus. They have even admitted that they had failed to follow up on known red flags regarding Defendant Kokorich's national security issues and failed to investigate the results of Momentus's only test of its technology in space. For example, Stable Road has admitted that its technical advisor's review of Momentus's technology did not evaluate Momentus's key claims to have successfully tested that technology in space and that this technical due diligence was rushed to completion in only four weeks. And SRAC and Defendant Kabot knew that the U.S. Treasury Department's Committee on Foreign Investment in the United States ("CFIUS") had required Kokorich to divest from another U.S. space technology company in 2018 and that Momentus failed to respond to repeated requests for documents that would describe the reasons for the CFIUS order. Despite this, the Stable Road Defendants nonetheless tried to push through a hasty merger between SRAC and Momentus, failing to disclose to investors Momentus's non-responsiveness to such basic inquiries, or that SRAC lacked any understanding of why Kokorich was forced to divest from another U.S. based space-industry company.

The SEC has already found that the Stable Road Defendants failed to conduct adequate due diligence, and instead baselessly repeated Momentus's assertions. The SEC Order explained that Momentus, SRAC, and Kabot agreed to pay the SEC fines totaling over $8 million, SRAC's Sponsor agreed to give up SRAC stock potentially worth millions of dollars, and Defendants agreed to allow certain investors to cancel agreements to purchase SRAC securities. In fact, SEC Chair Gary Gensler specifically rejected the same argument that the Stable Road Defendants make here—that burying their heads in the sand absolves them of responsibility:

> This case illustrates risks inherent to SPAC transactions, as those who stand to earn significant profits from a SPAC merger may conduct

inadequate due diligence and mislead investors . . . **Stable Road**, a SPAC, and its merger target, Momentus, both **misled the investing public. The fact that Momentus lied to Stable Road does not absolve Stable Road of its failure to undertake adequate due diligence to protect shareholders.**

¶5 (emphasis added).  The Court should likewise hold the Stable Road Defendants liable for their deliberately reckless failure to disclose to investors the severe limitations of SRAC's "due diligence," and Momentus's failure to provide Stable Road with key information. The Court should deny Defendants' motion.

## II.    FACTUAL BACKGROUND[2]

### A.    Background Regarding Stable Road

During the Class Period, SRAC was a SPAC. ¶35. SPACs are publicly traded companies with no business activities, but formed specifically to acquire an existing operating company. ¶27. The structure of SPACs, in which SPAC insiders can reap enormous financial windfalls if a merger is completed but will lose their investment if a merger is not completed, give rise to well-documented, inherent conflicts of interest between a SPAC's insiders and its public market investors. ¶¶28-33.

SRAC raised $172.5 million via an IPO in November 2019 and told investors that it would seek a merger with a company in the cannabis industry, based on the extensive cannabis industry knowledge and connections of SRAC's management. ¶¶35-48. Under the terms of SRAC's organizing documents, SRAC had a deadline of May 13, 2021 to complete a business combination, or else it would have to wind up its affairs and return investors' funds, in which case SRAC's management would lose their interests in the company. ¶¶49-60. As of December 11, 2020, those interests were worth approximately $81 million. ¶56.

---

[2] Plaintiff refers to and incorporates herein the factual background in his concurrently filed opposition to the motion to dismiss of Defendant Kennedy.

### B.   Background Regarding Momentus

At the beginning of the Class Period, Momentus was a small, privately-owned space-industry startup with no revenue. ¶2. Momentus had been founded in California in 2017 by Russian nationals Defendant Mikhail Kokorich and Lev Khasis. ¶62. At the beginning of the Class Period, Kokorich was Momentus's CEO, and Kokorich and Khasis (via his spouse) were among Momentus's largest beneficial owners. *Id.* From its inception through the beginning of the Class Period, Momentus earned no revenue and experienced substantial and worsening net losses. ¶66. Leading up to the Class Period, Momentus was entirely dependent on raising additional investor funds to survive, was rejected as a potential acquisition target by two other SPACs, and was in a state of constant fundraising attempts. ¶¶67-71.

### C.   Defendants Misled Investors To Gain Support For The Merger

On October 7, 2020, with time running out to complete a business combination before SRAC's May 13, 2021 deadline, SRAC and Momentus announced that they had entered into a merger agreement, pursuant to which the two companies would merge, SRAC stockholders would gain a proportionate interest in Momentus, Momentus would gain access to the $172.5 million in SRAC's trust account (plus additional funds from a concurrent private placement), and Momentus would become a publicly traded company. ¶114. Defendants stated that completion of the proposed transaction was subject to approval by Momentus and SRAC shareholders, and was expected to be completed in early 2021. *Id.*

Repeatedly throughout the Class Period, Defendants made materially false and misleading statements in an effort to convince investors to approve the merger. ¶¶115-130. Defendants aggressively touted Momentus's technology, planned launch schedule, and revenue projections, and also touted SRAC's due diligence of Momentus. *Id.*; *see also* ¶¶187-305. However, Defendants withheld material information from investors, including that: (a) the federal government had determined Momentus's CEO, Defendant Kokorich, to be a threat to national security and was

removing him from the country, (b) Momentus's sole test of its technology in space suffered from serious technical problems and failed to demonstrate the technology's commercial viability, (c) as a result, Defendants' projections of Momentus's future revenue were wildly overstated, and (d) SRAC's due diligence of Momentus was superficial, ignored red flags that demanded further investigation, and did not provide a reasonable basis for SRAC's statements about Momentus. ¶116; *see also* ¶¶72-113.

### D. The Stable Road Defendants' Failure To Conduct Adequate Due Diligence

The Stable Road Defendants' due diligence of Momentus was woefully inadequate and did not provide support for the misleading statements the Stable Road Defendants made about Momentus.  ¶¶104-113. In fact, the Stable Road Defendants merely repeated the Momentus Defendants' unfounded assertions.

Under pressure from the SEC to correct their prior misstatements, Defendants admitted facts showing that SRAC failed to reasonably investigate Momentus's claims regarding its technology. ¶106.  Specifically, they admitted that "none of the directors or officers of SRAC are engineers or physicists, and therefore their views as to the technical and commercial viability of Momentus' technology relied on the review and conclusions of experts that SRAC engaged as part of its due diligence review, as well as the representations of Momentus' senior management." ¶107. Yet, even though Stable Road's experience was in marijuana companies and they admittedly did not have sufficient aerospace experience, they failed to have their technical advisors, Stellar Solutions, even evaluate Momentus's claims to have successfully tested its technology in space and forced these advisors to rush their purported investigation. ¶108 ("Stellar Solutions did not conduct a review of the results of the 2019 demonstration mission called El Camino").[3]

---

[3] Likewise, the law firm retained by SRAC to assist with due diligence included investors in the Sponsor and its affiliate, who were thus financially incentivized (just (footnote continued)

The SEC Order also found that SRAC's due diligence was deficient. For example, the SEC found that SRAC did not specifically ask Stellar Solutions to review Momentus's sole in-space test mission and that Stellar Solution's report to SRAC made no mention of that mission. ¶111. Additionally, the SEC Order found that SRAC and Defendant Kabot conducted inadequate due diligence relating to national security concerns surrounding Defendant Kokorich because SRAC and Defendant Kabot knew that CFIUS had required Kokorich to divest from another space technology company in 2018. SRAC received a copy of that divestment order and repeatedly asked Momentus for documents that would describe the reasons for the order, which Momentus failed to provide. ¶112. Nonetheless, SRAC still went through with the transaction, failing to conduct any additional due diligence into the issue and blindly accepting the illogical response that Momentus had no idea why CFIUS ordered its CEO to divest from another U.S.-based space industry company. ¶112.

As such, SRAC and the Stable Road Individual Defendants knew that they had failed to verify key information relating to Momentus's technology and Kokorich's national security risks, and that they were simply repeating to public investors unsupported assertions made to them by Momentus and the Momentus Individual Defendants. ¶113.

**E.    SRAC's Stock Price Crashed As The Truth Was Revealed**

Beginning on January 4, 2021, the truth regarding SRAC and Momentus was revealed to investors in a series of partial corrective disclosures and materializations of previously concealed risks. ¶131. Momentus and SRAC made several piecemeal partial disclosures of regulators' national security concerns relating to Momentus, resulting in the repeated postponement of its planned space missions, the resignation

---

like the Stable Road Defendants) to complete the merger. ¶109. Hiring conflicted attorneys further demonstrates SRAC's deficient due diligence.

of Defendant Kokorich, and customers and suppliers abandoning Momentus. *Id*.; *see also* ¶¶133-179. These partial disclosures culminated in the SEC's cease and desist order and its complaint against Defendant Kokorich on July 13, 2021. ¶¶174-179. The SEC Order explained that Momentus, SRAC, and Kabot agreed to pay the SEC fines totaling over $8 million, the Sponsor agreed to give up SRAC stock potentially worth millions of dollars, and Defendants agreed to allow certain investors to cancel agreements to purchase SRAC securities. *See, e.g.*, ¶4. Moreover, the SEC confirmed that that Stable Road had "fail[ed] to undertake adequate due diligence to protect shareholders" and that it had "misled the investing public." ¶5.  As the SEC Chairman explained, "[t]he fact that Momentus lied to Stable Road does not absolve Stable Road of its failure to undertake adequate due diligence to protect shareholders." ¶5.

In response to this information entering the market, SRAC's publicly traded stock price declined dramatically. ¶¶136, 140, 149, 152, 157, 179. While SRAC stock reached a Class Period intra-day high of $29.18 per share on February 10, 2021, on July 15, 2021 it closed at only $10.38 per share. ¶132.

## III.   ARGUMENT

### A.    Applicable Legal Standards Disfavor Defendants' Motion

On a motion to dismiss, a complaint need only "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Even under the Private Securities Litigation Reform Act ("PSLRA"), when considering a motion to dismiss a §10(b) claim, a court must still "accept the plaintiffs' allegations as true and construe them in the light most favorable to plaintiffs." *In re Daou Sys., Inc. Sec. Litig.*, 411 F.3d 1006, 1013 (9th Cir. 2005); *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 782 (9th Cir. 2008); *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1014 (9th Cir. 2018) ("[C]ourts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading

stage.").

To state a claim for securities fraud under SEC Rule 10b-5(b), a complaint must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2407 (2014) (internal quotation omitted). Defendants' Motion only contests Plaintiffs' allegations of scienter.[4]

**B.    The Stable Road Defendants Concealed Material Facts That Made Their Statements Misleading To Reasonable Investors**

Remarkably, the Stable Road Defendants' motion does not dispute that their public statements omitted material information or that these statements were misleading as a result.[5] For good reason. The Stable Road Defendants' statements clearly omitted material facts and misled reasonable investors.

For example, in an October 7, 2020 CNBC interview, Defendant Kabot stated

---

[4] In a footnote, the Stable Road Defendants state that the six documents submitted with their motion should be considered since the complaint relies on SRAC public filings with the SEC and these documents are judicially noticeable. *See* Stable Road MTD at 4 n.4. Plaintiff does not oppose Defendants' request for judicial notice and incorporation by reference to the extent the Court takes notice of the fact the documents exist and what the documents say, but Plaintiff opposes Defendants' request to the extent they seek to have the Court consider the documents for the truth of the matters stated therein or to use these exhibits to factually dispute Plaintiff's allegations. The Ninth Circuit has rejected such practices. *Khoja*, 899 F.3d at 998, 1003 (recognizing a "concerning pattern in securities cases" where defendants attempt to exploit judicial notice "improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage[,]" and noting that "it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint.").

[5] Despite the Stable Road Defendants' failure to dispute falsity, Plaintiff summarizes herein certain key misleading statements made by the Stable Road Defendants, as these statements provide important context to the scienter analysis.

---

PLAINTIFF'S OPPOSITION TO STABLE ROAD DEFENDANTS' MOTION TO DISMISS

8

"we had a very successful test launch, the vehicle is still flying around in space, which is great." ¶199. SRAC's November 2, 2020 Registration Statement similarly stated that "Momentus has developed . . . its cornerstone water plasma propulsion technology, which it successfully tested in space in 2019." ¶231. But Momentus's sole in-space test experienced numerous severe technical problems, and failed to produce "any useful mission results." ¶¶87-98. While the satellite remains in space, it is no longer functional. ¶96. The November 2, 2020 Registration Statement claimed that "SRAC and its advisors conducted extensive due diligence with respect to Momentus' . . . technology solutions" (¶243) and that "SRAC engaged Stellar Solutions to assist with technical due diligence, including with respect to Momentus' . . . vehicle development to date, [and] testing progress" (¶245). But SRAC did not request, and Stellar Solutions did not perform, any due diligence on Momentus's sole in-space test mission. ¶108.

As another example, SRAC's November 2, 2020 Registration Statement stated that "a number of stockholders of a U.S. company, including Mr. Kokorich, divested their interests in such company pursuant to an order by CFIUS," without discussing the reasons for the order or whether similar risks existed for Momentus. ¶225. But that divestment order was due to CFIUS's determination that Kokorich was a threat to national security, and since CFIUS issued that order, Kokorich had been detained by the FBI. ¶¶78, 84. SRAC's December 14, 2020 Amended Registration Statement claimed that "Mr. Kokorich is pursuing several paths to U.S. Person status, and we believe that he meets all of the legal requirements to be granted such status in the United States." ¶255. But the U.S. government had rejected Kokorich's asylum application and was in the process of removing him from the country. ¶84. The November 2, 2020 Registration Statement further stated that in deciding to approve the merger, SRAC's board of directors "considered the scope of the due diligence investigation" including "review of materials related to . . . export control and security matters." ¶246. But SRAC's security-related due diligence simply overlooked glaring

red flags like Momentus's improbable claim to lack information about Kokorich's 2018 CFIUS divestment order. ¶112.

These and the Stable Road Defendants' other challenged statements misled investors by failing to disclose that they had not performed meaningful due diligence into Momentus's sole in-space test or Kokorich's national security problems, and that they lacked sufficient information to assess their own statements' truth or falsity and were simply repeating Momentus's unsubstantiated assertions.

## C. The Stable Road Defendants Acted With Scienter

To adequately plead scienter, Plaintiff need only "state with particularity facts giving rise to a strong inference that defendants acted with the intent to deceive or with deliberate recklessness as to the possibility of misleading investors." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008); *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016) (scienter is "a mental state that not only covers intent to deceive, manipulate, or defraud, but also deliberate recklessness."); *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 708 (9th Cir. 2012) ("Recklessly turning a 'blind eye' to impropriety is equally culpable."). A defendant is deliberately reckless if "he had reasonable grounds to believe material facts existed that were misstated or omitted, but nonetheless failed to obtain and disclose such facts although he could have done so without extraordinary effort." *Reese v. Malone*, 747 F.3d 557, 569 (9th Cir. 2014) *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017). Scienter may be established by alleging facts indicating that the defendants "knew, or should have known" of the falsity of their statements. *See N.M. State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1098 (9th Cir. 2011).

The scienter standard requires courts to take into account "plausible opposing inferences." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323 (2007). A plaintiff adequately pleads scienter "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one

could draw from the facts alleged." *Id.* at 324. In making this determination, the court must review "all the allegations holistically." *Id.* at 326.

A "strong inference" "need not be irrefutable … or even the most plausible," and no "smoking-gun" is required. *Id.* at 324–326. The test is simply an inquiry into "whether *all* of the facts alleged, taken collectively, give rise to a strong inference of scienter," and is satisfied so long as a reasonable person would "deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 322–323 (emphasis in original). Defendants ignore this mandate from the Supreme Court and analyze each allegation of scienter in isolation. This is improper and when viewed holistically, as is required, the Complaint more than easily demonstrates scienter.

### 1.    Defendant Kabot Acted With Scienter

Defendant Kabot was actively and directly involved in SRAC's due diligence of Momentus. *E.g.*, ¶310(a)-(d), (g)-(h). According to the SEC, Defendant Kabot conducted inadequate due diligence relating to the national security concerns surrounding Defendant Kokorich. ¶112. This is because during the due diligence into Momentus, SRAC and Kabot knew that CFIUS had required Kokorich to divest from another U.S.-based space technology in 2018. Specifically, SRAC received a copy of CFIUS's final order and repeatedly asked Momentus for correspondence and other documents that would describe the basis of the order. ¶112. In spite of these repeated requests, when Momentus responded that it did not possess those documents, Kabot simply accepted this unbelievable story and went through with the transaction. *Id.* Without such documents, which were clearly available and in Momentus's control (through its CEO Kokorich), SRAC and Kabot failed to obtain a full and complete understanding of the basis for the CFIUS order. *Id.* This failure to verify key information amount Kokorich's national security risks is classic recklessness. *See Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000) ("[a]n egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of

. . . recklessness"); *N.M. State Inv. Council*, 641 F.3d at 1102 (finding a strong inference of scienter where the "Complaint is loaded with specific allegations of how and why EY should have investigated deficient or missing documentation.").

SPACs and their executives routinely perform substantial due diligence into key legal and other issues affecting their merger target companies. *See Bond v. Clover Health Invs., Corp.*, 2022 WL 602432, at *25 (M.D. Tenn. Feb. 28, 2022) ("Any suggestion that SPAC investors going into a deal like this would not make substantial inquiries into AKS compliance would be implausible, to say the least."); *In re XL Fleet Corp. Sec. Litig.*, 2022 WL 493629, at *6 (S.D.N.Y. Feb. 17, 2022) ("allegations that [SPAC] directors . . . were substantially involved in conducting due diligence into [target company] . . . supports a finding of conscious misbehavior or recklessness"). Defendant Kabot's dramatic departure from industry standards in failing to perform any meaningful investigation regarding Kokorich's known CFIUS divestment order constitutes deliberate recklessness. *See Strasburger v. Blackburne & Sons Realty Cap. Corp.*, 2020 WL 6128223, at *5 (C.D. Cal. June 25, 2020) ("by failing to conduct any meaningful due diligence regarding the borrowers—[defendant]'s actions departed extremely from the standard of ordinary care that a reasonably diligent broker in its position should have observed.").

This failure to verify is particularly egregious in light of how easy it would have been to uncover the truth about Kokorich's national security problems. *See VeriFone*, 704 F.3d at 710 (executive was deliberately reckless who was "on notice" of potential problems yet "reassured investors" with "baseless" explanations). After Kokorich's work visa had been revoked and his permanent residency application had been denied (¶¶77, 84) and his asylum application had been rejected (¶84), the FBI, Department of Homeland Security, and Department of Commerce arrived unannounced at Momentus headquarters, questioned employees, detained Kokorich, and transported him to an immigration detention center (*id.*). Kabot (and Quiroga) actually visited Momentus' headquarters in-person to interview members of management about their

roles and the company, toured Momentus's facility, and performed additional due diligence. ¶310(a).  Knowing about the CFIUS order and that Momentus was claiming they had zero documents about the issue, Kabot could have easily asked any of the employees at the facility about the issue and these employees clearly would have known or heard about the FBI, Department of Homeland Security and Department of Commerce coming to the office, questioning employees and detaining and transporting their CEO out of the building. *See Ferris v. Wynn Resorts Ltd.*, 2021 WL 3216462, at *14–15 (D. Nev. July 28, 2021) (finding scienter for CFO that failed to investigate and disclose allegations even though other executives provided an explanation).

Likewise, the due diligence into Momentus's technology was clearly inadequate. While SRAC did hire third-party advisor Stellar Solutions to investigate Momentus's technological claims, SRAC specifically did not have Stellar Solutions evaluate Momentus's claims to have successfully tested its technology in space. ¶108 ("Stellar Solutions did not conduct a review of the results of the 2019 demonstration mission called El Camino").  Moreover, SRAC only allowed Steller Solutions four weeks to rush its analysis. *Id.* Additionally, the law firm retained to perform due diligence included members who were also investors in the Sponsor and its affiliate, making them not independent and objective. ¶109.  As such, they shared the SRAC Individual Defendants' conflicts of interest based on their financial interests in the Sponsor, and financial interest in seeing a deal completed.

On October 7, 2020, Defendant Kabot went on television, and said, in response to a question regarding whether there were to many SPAC transactions:

> [W]hat I think is great for the investor is we did four months of due diligence. We spent a lot of money with some of the top service providers out there from Stellar Solutions to Kirkland and Ellis, from Orrick to Evercore to cantor completing our underwriting, right, we did four months of due diligence, which in a traditional IPO you would never have the opportunity to do.

¶217. This statement was clearly made with scienter since it recklessly failed to

---

PLAINTIFF'S OPPOSITION TO STABLE ROAD DEFENDANTS' MOTION TO DISMISS

13

disclose that Kirkland & Ellis was conflicted and the Stellar Solutions review did not look into Momentus's only purported successful in-space test, in a response about the thoroughness of the due diligence. *See Patel v. Axesstel, Inc.*, 2015 WL 631525, at *10 (S.D. Cal. Feb. 13, 2015) (statements from individuals regarding their involvement and dealings with the facts at issue support scienter); *In re St. Jude Med., Inc. Sec. Litig.*, 836 F. Supp. 2d 878, 888 (D. Minn. 2011) (actionable misrepresentations found where "[m]any of the statements at issue were provided in direct response to questions from financial analysts"); *Makor Issues & Rights, Ltd. v. Tellabs, Inc.*, 437 F.3d 588, 597-98 (7th Cir. 2006) (specific statements to analyst "went well beyond puffery: it was a direct response to an analyst's inquiry about a possible decline" in sales), *vacated in part on other grounds*, 551 U.S. 308 (2007); *In re Gen. Elec. Co. Sec. Litig.*, 857 F. Supp. 2d 367, 397-98 (S.D.N.Y. 2012) (CEO's detailed responses to questions from investors at presentation bolstered inference of scienter).

Moreover, Kabot's failure to disclose these facts is even more egregious in light of the fact that he (and the other SRAC Individual Defendants) are not "engineers or physicists, and therefore their views as to the technical and commercial viability of Momentus' technology relied on the review and conclusions of experts that SRAC engaged as part of its due diligence review, as well as the representations of Momentus' senior management." ¶107. As SRAC repeated *ad nauseum* in its IPO Prospectus, Kabot was very experienced in cannabis businesses, but he had no relevant experience with a company like Momentus—the Prospectus mentions "cannabis" 281 times, but contains no references to satellites, the space industry, engineering, national security regulations, or any related matters. ¶46. His admitted inexperience should have made Kabot even more cautious of blindly accepting Momentus's assertions—it did not, and he chose to baselessly repeat those assertions to investors without verification, while touting the strength of SRAC's due diligence.

### 2.    Defendants Quiroga and Hofmockel Were Also Actively Involved In SRAC's Due Diligence

Defendants Quiroga and Hofmockel also directly participated in the due diligence of Momentus with Defendant Kabot. ¶310(a)-(h). Quiroga visited Momentus' headquarters, met with employees, and conducted additional due diligence with Kabot there. ¶310(a). He and Hofmockel also participated in numerous due diligence teleconferences, often along with Kabot, Kokorich and other executives of Momentus, and others. ¶¶310(a)-(h). Two such calls even included the participation of Stellar Solutions, showing their knowledge that SRAC did not investigate Momentus's sole in-space test. ¶¶310(3)-(f). Since SRAC had been informed of CFIUS's final order, Quiroga and Hofmockel (as well as Norris) would have known that SRAC had repeatedly asked Momentus for documents that would describe the reasons for the order, and that Momentus had claimed no such documents existed. The fact that each of these individual defendants still agreed to go forward with the transaction and sign SRAC's SEC filings that baselessly repeated Momentus's un-investigated claims, without receiving the information requested in the due diligence process they were personally involved in, was deliberately reckless and demonstrates their scienter. *See VeriFone*, 704 F.3d at 704 (deliberate recklessness pled where executives knew of "unusual[]" accounting adjustments but "failed to question or demand supporting documentation" for them).

### 3.    The Core Operations Inference Further Supports Scienter

Courts may impute scienter to individual defendants "based on the inference that key officers have knowledge of the 'core operations' of the company." *Reese*, 747 F.3d at 575. The core operations inference may be *sufficient* to show scienter when the particular allegations "suggest that defendants had actual access to the disputed information." *Id.* at 575-76.[6]  Here, the Stable Road Individual Defendants

---

[6] Allegations regarding management's role in the core operations of a company may also independently satisfy the PSLRA's scienter requirement when "the nature of the (footnote continued)

were the CEO, CFO, Chief Investment Officer, and directors of SRAC (*i.e.* essentially all of SRAC's personnel, as SRAC had only these three officers and no employees). ¶¶16-19, 311. There is no real dispute that the violations in this case concerned a core operation of SRAC's business—because SRAC was a SPAC, identifying a suitable merger target and performing due diligence on it was SRAC's one and only activity. *See Derr v. Ra Medical Sys., Inc.*, 2021 WL 1117309, at *7 (S.D. Cal. Mar. 24, 2021) ("absurd to suggest that any of those officers was ignorant of the situation").

Defendants claim that the core operations inference does not apply since they did not have access to the information at issue, which was withheld from them by Momentus. *See* Stable Road MTD at 14-15). This argument is a red herring. Plaintiff does not allege that the Stable Road Defendants knew Momentus concealed facts. Rather, Plaintiff alleges that they knowingly failed to investigate in the face of red flags, yet chose to tout the purported strength of their due diligence while baselessly repeating Momentus's unsubstantiated claims. The individual Stable Road Defendants certainly would have known the limitations of their due diligence as direct participants in, and indeed the *only* SRAC officers and directors participating in, said due diligence.  This is especially the case since SRAC had only three officers, all of whom are named defendants here, and no employees. *See, e.g.*, *In re Cadence Design Sys., Inc. Sec. Litig*., 692 F. Supp. 2d 1181, 1192-93 (N.D. Cal. 2010) (defendant was one of only five executives and the deals at issue were large for their respective quarters); *In re Amylin Pharm. Inc. Sec. Litig*., 2002 WL 31520051, at *8 (S.D. Cal. Oct. 10, 2002) (the fact that the corporation was "a small biotech company" added to the strong inference of scienter alleged).

relevant fact is of such prominence that it would be 'absurd' to suggest that management was without knowledge of the matter." *Reese*, 747 F.3d at 576; *Berson*, 527 F.3d at 989.

When the allegations demonstrating that the individual Stable Road Defendants had actual access to the due diligence process and its deficiencies are viewed in combination with allegations regarding the importance of the transaction to SRAC, and Defendants' positions in SRAC, they give rise to a strong inference of scienter. *See Patel*, 2015 WL 631525, at *11 (finding scienter since it would be absurd for the CEO and CFO of small company to not know the details of large transactions); *Batwin v. Occam Networks, Inc.*, 2008 WL 2676364, at *12 (C.D. Cal. July 1, 2008) ("Occam at all relevant times, was a relatively small company, with 80 to 100 employees. Given Occam's relatively small size and plaintiff's allegations regarding the officer defendants' considerable involvement with the company's generation and reporting of revenues, plaintiff's allegations of scienter are persuasive.").

Even if this Court finds that the core operations inference is not sufficient by itself to plead scienter, it is sufficient when combined with all other allegations in the complaint. *See Reese*, 747 F.3d at 575 (allegations regarding managements' role in the core operations of a company "may be viewed holistically, along with other allegations in the complaint, to raise a strong inference of scienter under the *Tellabs* standard.").[7]

### 4. The Stable Road Individual Defendants Had A Strong Financial Motive To Ensure The Transaction Was Consummated

Due to their ownership interests in SRAC and the financial structure of SRAC, Hofmockel, Kabot, Norris, and Quiroga possessed strong financial incentives to push through a merger by the May 13, 2021 deadline, which was 18 months after SRAC closed its $172.5 million IPO. ¶¶49-50. Through a complex set of arrangements, the individual Stable Road Defendants had a significant financial interest in the SPAC through their interests in and control over the Sponsor. ¶¶52-56. For example, as of

[7] Defendants' brief ignores that the core operations inference can also give rise to a strong inference of scienter when considered among other allegations demonstrating scienter.

PLAINTIFF'S OPPOSITION TO STABLE ROAD DEFENDANTS' MOTION TO DISMISS

17

December 11, 2020, the Sponsor and its affiliate, that were beneficially owned by Quiroga and Kabot, owned SRAC stock and warrants with an aggregate market value of approximately $80.9 million, which would be rendered worthless if the merger with Momentus was not approved. ¶¶56-57.

The directors and officers of SRAC held themselves out to investors as highly experienced in the cannabis industry, which they repeatedly stated would be SRAC's focus for completing an acquisition. ¶37. In fact, SRAC touted that both Kabot and Quiroga had extensive cannabis acquisition experience, executing over 20 transactions, and investing more than $150 million in cannabis businesses. ¶45. Following SRAC's IPO in November 2019, it evaluated more than 50 potential businesses for acquisition but failed to find a deal. ¶59. As such, by the time Kabot was introduced to Kokorich in late June 2020, SRAC was running out of suitable target companies and running out of time within which to complete an acquisition by its May 2021 deadline—a failure that would require them to return to investors the $172.5 million in SRAC's trust account and forfeit their own financial interests. ¶60.

The fact that the Stable Road Defendants stood to lose everything if a business combination did not occur [including their $80.9 million in stock and warrants (¶¶56-57)] created a very real incentive for Hofmockel, Kabot, Norris and Quiroga to push through the Momentus transaction without conducting adequate due diligence, to accept Momentus's representations without appropriately questioning their veracity, and failing to investigate clear red flags.[8] Accordingly, Plaintiff's motive allegations are much stronger than the generic "desire to raise capital" which can be attributed to

---

[8] The fact that the Complaint alleges that each of the individual Stable Road Defendants (Hofmockel, Kabot, Norris and Quiroga) shared a financial motive is not improper group pleading. *See* Stable Road MTD at 12-13. If that was the case as Defendants allege, then all situations where more than one executive had overlapping financial motivations, which is standard when executives work at the same company, would always constitute improper group pleading and would eviscerate the concept of officers and directors having financial motives.

every company.  *See, e.g.*, *Nathenson v. Zonagen Inc.*, 267 F.3d 400, 424-25 (5th Cir. 2001) (scienter inferred with regard to misstatements about a patent when the company's future depended on the patent); *In re Cabletron Sys. Inc.*, 311 F.3d 11, 39 (1st Cir. 2002) ("the complaint identifies concealment of the serious and worsening deterioration of Cabletron's financial health as a significant motive for the alleged fraud. . . . This is more than the usual concern by executives to improve financial results; the executives' careers and the very survival of the company were on the line.").  The Stable Road Defendants' strong financial motives to rush through the merger with Momentus, combined with the glaring "red flags" uncovered (and then ignored) in their due diligence process, raise a strong inference of their scienter. *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000) ("[individual defendant]'s possible motive, combined with the red flags of [company]'s financial condition, are sufficient to withstand a motion for JMOL").

Defendants try to claim that these motive allegations are negated by the fact these individuals did not sell any stock during the Class Period.  Stable Road MTD at 16-17.  But "[a]llegations of suspicious stock sales . . . are not needed where, as here, other allegations in the complaint raise a strong inference of scienter." *In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 707 (9th Cir. 2021).  Regardless, as Defendants admit, they were precluded from selling stock due to a lockup so they were contractually required not to sell. As such, the lack of sales says nothing about their state of mind in deciding whether to sell the stock or not.

### 5. Viewed Holistically, The Inference Of Scienter Is Overwhelming

The Stable Road Defendants' MTD attempts to look at each allegation of scienter individually. This is improper and conflicts with the Supreme Court's holding in *Tellabs*. *See* 551 U.S. at 326.  When viewed holistically, as is required, the allegations that the individual defendants acted with deliberate recklessness are overwhelming.

---

The Stable Road Defendants claim that they were not reckless since they contracted with a third party to assist their due diligence. *See* Stable Road MTD at 19-20.  But as discussed above, their retention of Stellar Solutions actually supports a finding of scienter because they did not have it review Momentus's sole in-space test, which was a centerpiece of Momentus's (and therefore SRAC's) efforts to sell itself to investors. Moreover, the Stable Road Defendants forced Stellar Solutions to give them an incomplete report in an extremely truncated four-week timeframe. As such, Defendants' citation to *In re ChinaCast* is inapposite, since there a third party was allowed to perform a complete and independent analysis, unlike here. *In re ChinaCast Educ. Corp. Sec. Litig.*, 2012 WL 6136746, at \*6 n.5 (C.D. Cal. Dec. 7, 2012), *rev'd*, 809 F.3d 471 (9th Cir. 2015). Moreover, as discussed above, SRAC retained a law firm with financial incentives to have the transaction be completed. Again, this fact actually weighs against them since adequate due diligence requires unconflicted counsel that are not incentivized to push through a deal.

These Defendants also illogically claim that the fact that they had made boilerplate risk disclosures regarding potential limitations in their due diligence supports a lack of scienter.  *See* Stable Road MTD at 19.  This makes no sense. Certain of the risk warnings they cite were even made *before* the due diligence on Momentus commenced, and the other is a completely generic risk warning that is not tailored to the due diligence that occurred. *See id.* If Defendants were accurately disclosing the risks of their due diligence of Momentus, they would have disclosed that Stellar Solutions had not verified the claim that Momentus successfully tested its technology in space and that Momentus had failed to provide a response when repeatedly questioned on why CFIUS had ordered Kokorich to divest from another U.S.-based space industry company. That Defendants chose not to disclose these facts strongly supports Plaintiff's deliberate recklessness claim.

Finally, the Stable Road Defendants also claim that the SEC Order also supports a lack of scienter since it only alleged non-fraud causes of action against

them. This argument has been rejected by the Ninth Circuit. *VeriFone*, 704 F.3d at 707 n.5 ("We draw no inference from the SEC's decision not to plead scienter or charge defendants with fraud. The district court erred in concluding that 'the SEC's decision not to plead scienter hurts plaintiffs' ability to plead a strong inference of scienter'."). Regardless, the fact that Kabot and SRAC agreed to settle with the SEC—paying large fines, giving up significant amounts of stock, and allowing individuals to terminate investment agreements with them—in fact supports that the Stable Road Defendants were deliberately reckless in their due diligence. Otherwise, the SEC would not have required them to enter such a settlement or accused them violating the securities laws as it indisputably did. *See* Stable Road MTD at 9 (SEC accused SRAC, the Sponsor and Kabot of violating Sections 13(a), 14(a) and 17(a)(2) and (3) of the Exchange Act). Additionally, their deliberate recklessness is further confirmed the SEC Chair's public statement that "[t]he fact that Momentus lied to Stable Road does not absolve Stable Road of its failure to undertake adequate due diligence to protect shareholders." ¶5.

### 6. Plaintiff Has Sufficiently Alleged Scienter As To SRAC And The Sponsor

Plaintiff has also sufficiently alleged scienter as to SRAC and the Sponsor. *See In re Turbodyne Tech., Inc. Sec. Litig.*, 2000 WL 33961193, at \*16 n.115 (C.D. Cal. Mar. 15, 2000) (for purposes of determining scienter in the securities litigation context, "it is a well settled principle that knowledge of officers and key employees of a corporation, obtained while acting in the course of their employment and within the scope of their authority, is imputed to the corporation itself").

### D. The Stable Road Defendants "Made" Misleading Statements

The Stable Road Defendants argue that they did not "make" certain statements at issue, within the meaning of Ruble 10b-5(b) as interpreted by *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011), and so cannot be held liable for them. The argument is a red herring, as there is no dispute that the primary statements

of the Stable Road Defendants that Plaintiff alleges to be false were "made" by them.

For example, SRAC "made" the October 7, 2020 allegedly false statements, including the Form 8-K that it filed with the SEC (signed by Defendant Kabot) and the accompanying joint press release. *See, e.g.*, ¶¶187, 192-193. Likewise, Defendant Kabot's statements made on television to cheerlead the proposed merger were certainly "made" by him as well (¶190, 195, 210, 217) and so too was the November 2, 2020 Registration Statement that was filed by SRAC and signed by Kabot, Norris and Hofmockel. ¶¶222-27, 231-34, 237-40, 243-46. Such statements that were either spoken on television or conference calls by a Stable Road defendant, or contained in SRAC's SEC filings signed by the Stable Road Defendants, were certainly "made" by them. *Abdo v. Fitzsimmons*, 2018 WL 11220494, at *10 (N.D. Cal. May 22, 2018) (signing document that contains the statement constitutes "making" a statement); *Special Situations Fund III QP, L.P. v. Brar*, 2015 WL 1393539, at *3 (N.D. Cal. Mar. 26, 2015) (finding that the corporate employee who signed the contract was the "maker" of the allegedly false or misleading statements within the contract).[9]

While the Stable Road Defendants try to claim that certain statements were exclusively made by Momentus Defendants not under their control (*see* Stable Road MTD at 20-21), they ignore that these statements were contained in documents that SRAC filed with the SEC and that these filings were signed by SRAC Individual Defendants. As such, even when repeating statements initially made by the Momentus Defendants, under *Janus* such statements were also made by the Stable Road Defendants. *See S.E.C. v. e-Smart Techs., Inc.*, 31 F.Supp.3d 69, 80 (D.D.C. 2014) ("Courts have consistently held that the signer of a corporate filing is its 'maker,'

---

[9] SRAC and the Sponsor are also considered to have made each of the statements made by Kabot because he was an executive officer of both entities acting within the scope of his duties. *See In re Tesla, Inc. Sec. Litig.*, 477 F. Supp. 3d 903, 926-27 (N.D. Cal. 2020) ("It is beyond dispute that a corporation can be liable for the fraud committed by its officers, so long as the officer commits it within the scope of his or her employment. *Janus* did not change that.").

because signing a filing implies 'ultimate control' over its contents.").

## IV.  CONCLUSION

For the foregoing reasons, Defendants' motion should be denied. If the Court grants any part of Defendants' motion, Plaintiff requests leave to amend. *See* Fed. R. Civ. P. 15(a)(2); *Osher v. JNI Corp.*, 183 Fed. Appx. 604, 605 (9th Cir. 2006) ("Leave to amend is to be granted with extreme liberality in securities fraud cases, because the heightened pleading requirements imposed by the PSLRA are so difficult to meet.").

Dated: May 26, 2022

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Garth A. Spencer*
Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Casey E. Sadler (SBN 274241)
  *csadler@glancylaw.com*
Charles Linehan (SBN 307439)
  *clinehan@glancylaw.com*
Garth A. Spencer (SBN 335424)
  *gspencer@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Hartmut Haenisch*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007
Email: fcruz@frankcruzlaw.com

*Additional Counsel*

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old. On May 26, 2022, I served true and correct copies of the foregoing document by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 26, 2022, at Jacksonville, Florida.

*s/ Garth A. Spencer*
Garth A. Spencer
