Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Casey E. Sadler (SBN 274241)
  *csadler@glancylaw.com*
Charles Linehan (SBN 307439)
  *clinehan@glancylaw.com*
Garth A. Spencer (SBN 335424)
  *gspencer@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Hartmut Haenisch*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE STABLE ROAD ACQUISITION CORP. SECURITIES LITIGATION | Case No. 2:21-CV-5744-JFW(SHKx) |
| | Honorable John F. Walter |
| | **PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS FILED BY DEFENDANTS MOMENTUS INC. AND DAWN HARMS** |
| | Hearing Date:  July 11, 2022 |
| | Time:  1:30 p.m. |
| | Courtroom:  7A |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..................................................................................1

II.     ARGUMENT..........................................................................................1

    A.      Applicable Legal Standards Disfavor Defendants' Motion .................1

    B.      The Momentus Defendants Admit To Intentionally Misleading The Stable Road Defendants ..................................................................2

    C.      The Momentus Defendants Concealed Material Facts That Made Their Statements Misleading To Reasonable Investors ......................2

        1.      The Government Determined That Kokorich Was A Security Risk, And Was Removing Him From The Country..................................................................................3

        2.      Momentus's Only In-Space Test Suffered Material Technical Problems And Failed To Achieve Its Stated Objectives................................................................................5

        3.      Momentus's Excessive Revenue Projections Ignored Its National Security Risks And Unproven Technology.................7

    D.      Defendants Fail To Negate Falsity And Materiality ...........................8

        1.      The PSLRA Safe Harbor Does Not Apply...............................8

        2.      "Cautionary" Disclosures Were Generic And Misleading.........9

        3.      Defendants' Statements Were Material, Not Puffery...............11

        4.      "Opinion" Statements Were Misleading .................................12

    E.      The Momentus Defendants Knew The Material Facts That They Concealed From Investors .................................................................12

        1.      Defendant Kokorich Acted With Scienter ..............................13

        2.      Defendant Harms Acted With Scienter....................................14

        3.      The Scienter Of The Momentus Individual Defendants Is Imputed To Momentus.........................................................15

4.   The Momentus Defendants Had A Strong Financial Motive To Hide The Truth From Investors ................................ 15

F.   Defendants Fail To Negate Scienter ...................................................... 16

1.   Momentus's July 2019 Test Mission Does Not Disprove Knowledge Of National Security Risks ................................. 16

2.   Defendants' Other Arguments Also Fail To Defeat Scienter ................................................................................ 17

G.   The Momentus Defendants Engaged In A Scheme To Defraud Investors In Violation Of SEC Rule 10b-5(a) & (c) ........................... 18

H.   The Momentus Defendants "Made" Misleading Statements ............. 20

I.   The Momentus Defendants' Fraud Caused Investors' Losses ........... 21

J.   Investors Are Entitled To A Class-Wide Presumption Of Reliance ...................................................................................... 23

K.   The Complaint States A Claim For Control Person Liability ............ 25

III.   CONCLUSION ............................................................................. 25

# TABLE OF AUTHORITIES

## CASES

*Abdo v. Fitzsimmons*,
2018 WL 11220494 (N.D. Cal. May 22, 2018) ....................................................20

*Abdo v. Fitzsimmons*,
2021 WL 616324 (N.D. Cal. Feb. 17, 2021)................................................... 16, 20

*Affiliated Ute Citizens of Utah v. United States*,
406 U.S. 128 (1972) ............................................................................................23

*Arthur Young & Co. v. U. S. Dist. Ct.*,
549 F.2d 686 (9th Cir. 1977)...............................................................................25

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .............................................................................................. 1

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988) ............................................................................................24

*Berson v. Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008).......................................................................2, 9, 18

*Billhofer v. Flamel Techs., SA*,
663 F. Supp. 2d 288 (S.D.N.Y. 2009) .................................................................11

*Bond v. Clover Health Invs., Corp.*,
2022 WL 602432 (M.D. Tenn. Feb. 28, 2022) ..................................................... 3

*Cutler v. Kirchner*,
696 F. App'x 809 (9th Cir. 2017) ........................................................................11

*Eminence Cap., LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003)..............................................................................25

*Exch. Comm'n v. Solv-Ex Corp.*,
2000 WL 36740052 (D.N.M. Mar. 31, 2000) ....................................................... 7

*In re Allaire Corp. Sec. Litig.*,
224 F. Supp. 2d 319 (D. Mass. 2002) ...................................................................... 11

*In re Alphabet, Inc. Sec. Litig.*,
1 F.4th 687 (9th Cir. 2021)............................................................................*passim*

*In re Atossa Genetics Inc Sec. Litig.*,
868 F.3d 784 (9th Cir. 2017)..................................................................................... 12

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020)................................................................................21, 22

*In re ChinaCast Educ. Corp. Sec. Litig.*,
809 F.3d 471 (9th Cir. 2015)..................................................................................... 15

*In re MannKind Sec. Actions*,
835 F. Supp. 2d 797 (C.D. Cal. 2011)....................................................................... 16

*In re Quality Sys., Inc. Sec. Litig.*,
865 F.3d 1130 (9th Cir. 2017).................................................................................9, 11

*In re QuantumScape Sec. Class Action Litig.*,
2022 WL 137729 (N.D. Cal. Jan. 14, 2022) ....................................................... 10, 16

*In re Tesla, Inc. Sec. Litig.*,
477 F. Supp. 3d 903 (N.D. Cal. 2020) ...................................................................... 21

*In re WageWorks, Inc., Sec. Litig.*,
2020 WL 2896547 (N.D. Cal. June 1, 2020) ....................................................... 14

*In re XL Fleet Corp. Sec. Litig.*,
2022 WL 493629 (S.D.N.Y. Feb. 17, 2022) ....................................................... 19

*Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*,
998 F.3d 397 (9th Cir. 2021)................................................................................22

*Janus Cap. Grp., Inc. v. First Derivative Traders*,
564 U.S. 135 (2011) ................................................................................................20

*Kaplan v. Rose*,
49 F.3d 1363 (9th Cir. 1994)................................................................................11

PLAINTIFF'S OPPOSITION TO MOMENTUS'S MOTION TO DISMISS

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018)........................................................................ 1, 2, 7, 17

*Lloyd v. CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016)................................................................................ 23

*Lorenzo v. Sec. & Exch. Comm'n*,
   139 S. Ct. 1094 (2019) ..................................................................................... 18, 19

*Matrixx Initiatives, Inc. v. Siracusano*,
   563 U.S. 27 (2011) ......................................................................................2, 12, 13

*Mauss v. NuVasive, Inc.*,
   2016 WL 3681831 (S.D. Cal. July 12, 2016)................................................... 22, 23

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
   575 U.S. 175 (2015) ................................................................................................ 12

*Patel v. Axesstel, Inc.*,
   2015 WL 631525 (S.D. Cal. Feb. 13, 2015) ......................................................... 14

*Petrie v. Elec. Game Card, Inc.*,
   308 F.R.D. 336 (C.D. Cal. 2015) .......................................................................... 24

*Plumbers Loc. #£200 Pension Fund v. Washington Post Co.*,
   930 F. Supp. 2d 222 (D.D.C. 2013) ...................................................................... 18

*S. Ferry LP, No. 2 v. Killinger*,
   542 F.3d 776 (9th Cir. 2008)................................................................................. 18

*S.E.C. v. Daifotis*,
   874 F. Supp. 2d 870 (N.D. Cal. 2012) .................................................................. 20

*S.E.C. v. Mozilo*,
   2009 WL 3807124 (C.D. Cal. Nov. 3, 2009) ........................................................... 2

*S.E.C. v. Todd*,
   642 F.3d 1207 (9th Cir. 2011)......................................................................... 3, 8, 13

*Schueneman v. Arena Pharms., Inc.*,
   840 F.3d 698 (9th Cir. 2016)................................................................................. 16

*Todd v. STAAR Surgical Co.*,
2017 WL 821662 (C.D. Cal. Jan. 5, 2017) ............................................................ 24

*Weiss v. Amkor Tech., Inc.*,
527 F. Supp. 2d 938 (D. Ariz. 2007) ..................................................................... 22

*WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*,
655 F.3d 1039 (9th Cir. 2011) ............................................................................... 19

*Yanek v. Staar Surgical Co.*,
388 F. Supp. 2d 1110 (C.D. Cal. 2005) ............................................................... 5, 9

*Zelman v. JDS Uniphase Corp.*,
376 F. Supp. 2d 956 (N.D. Cal. 2005) .................................................................. 25

**STATUTES**

15 U.S.C. § 78u–5(a) ................................................................................................. 8

15 U.S.C. § 78u–5(b) ................................................................................................. 8

15 U.S.C. § 78u–5(i)(4) ............................................................................................. 9

**RULES**

Fed. R. Civ. P. 15(a)(2) ............................................................................................ 25

**REGULATIONS**

17 C.F.R. § 240.10b-5(a) ......................................................................................... 18

17 C.F.R. § 240.10b-5(c) ......................................................................................... 18

**OTHER AUTHORITIES**

141 Cong. Rec. S19062, 1995 WL 755363 ............................................................... 8

Plaintiff respectfully submits this memorandum of law in opposition to the motion to dismiss filed by Defendants Momentus Inc. and Dawn Harms.[1]

## I.   INTRODUCTION

This securities fraud class action centers on a space industry startup called Momentus and its proposed merger with a special purpose acquisition company ("SPAC"), Stable Road Acquisition Corp. ("SRAC" or "Stable Road"). To obtain hundreds of millions of dollars from investors, the Momentus Defendants concealed from Stable Road and public investors that (i) the federal government determined Momentus's Russian CEO was a national security risk and was removing him from the United States, (ii) Momentus's only in-space test of its technology failed to meet its stated goals, experienced severe technical problems, and failed to demonstrate commercial viability, and (iii) Momentus's excessive revenue projections were based on ignoring these national security and technological problems. Investors have suffered massive damages as a result. The Russian CEO has fled to Switzerland,  Momentus has settled the SEC's claims that it committed securities fraud, and the other Defendants in this action unequivocally state that Momentus and Kokorich misled them and the public.

## II.   ARGUMENT[2]

### A.   Applicable Legal Standards Disfavor Defendants' Motion

To avoid dismissal, a complaint need only "contain sufficient factual matter . . . to state a claim that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[C]ourts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988,

---

[1] Dkt Nos. 122 and 122-1 ("Momentus MTD"). All emphasis in this brief has been added, all internal citations, quotation marks, and alterations have been removed, and citations to "¶__" refer to the amended complaint (Dkt No. 94) ("Complaint"). Capitalized terms have the same meanings as in the Complaint.

[2] Plaintiff incorporates herein the factual background in his oppositions to the motions to dismiss filed by Defendant Kennedy and the Stable Road Defendants.

---

1014 (9th Cir. 2018). To state a claim under SEC Rule 10b-5(b), a plaintiff must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37-38 (2011).

### B. The Momentus Defendants Admit To Intentionally Misleading The Stable Road Defendants

In their motion, Momentus and Harms implicitly admit that Momentus purposefully misled the Stable Road Defendants during the due diligence process. The Momentus Defendants join in and incorporate all the arguments of the Stable Road Defendants. Momentus MTD at 1 n.1. The Stable Road Defendants' main argument (repeated 10 times) is that "Kokorich and Momentus misrepresented and concealed information from SRAC during the diligence period." *See* Dkt No. 131-1 at 2; *see also id.* at 1, 7, 13, 14, 15, 15 n.8, 17, 18. This argument is amply supported. *E.g.*, ¶5 (quoting SEC Chair Gary Gensler stating "Momentus lied to Stable Road"). The Momentus Defendants therefore concede falsity and scienter.

### C. The Momentus Defendants Concealed Material Facts That Made Their Statements Misleading To Reasonable Investors

"[O]nce defendants choose to tout positive information to the market, they are bound to do so in a manner that wouldn't mislead investors, including disclosing adverse information that cuts against the positive information." *Khoja*, 899 F.3d at 1009 (cleaned up); *e.g.*, *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008) ("once defendants chose to tout the company's backlog, they were bound to do so in a manner that wouldn't mislead investors as to what that backlog consisted of"). Even a statement that is literally true "may be misleading if it omits material information." *Khoja*, 899 F.3d at 1009.

"[T]he materiality and misleading nature of a misstatement or omission is usually a question for the trier of fact, and such an argument is rarely successful on a motion for summary judgment, and even more rarely successful on a motion to dismiss." *S.E.C. v. Mozilo*, 2009 WL 3807124, at *9 (C.D. Cal. Nov. 3, 2009)

(Walter, J.). "Accordingly, resolving an issue as a matter of law is only appropriate when the adequacy of the disclosure is so obvious that reasonable minds could not differ." *S.E.C. v. Todd*, 642 F.3d 1207, 1220 (9th Cir. 2011).

The Momentus Defendants concealed from Stable Road and public investors material facts regarding (i) the U.S. government's actions against Kokorich, (ii) the severe limitations and technical problems of Momentus's only in-space test, and (iii) related risks to Momentus's unfounded revenue forecasts.[3] The omission of these material facts rendered Defendants' public statements highly misleading.

### 1. The Government Determined That Kokorich Was A Security Risk, And Was Removing Him From The Country

The Momentus Defendants concealed from investors that the U.S. government determined Kokorich to be a national security risk, and was in the process of removing him from the country. This was materially misleading. *See Bond v. Clover Health Invs., Corp.*, 2022 WL 602432, at *21 (M.D. Tenn. Feb. 28, 2022) (withholding material details about and downplaying significance of governmental investigation into company was materially misleading).

From the very first announcement of Momentus and SRAC's proposed merger, Defendants repeatedly emphasized Kokorich's central role in the company while providing materially misleading descriptions of his interactions with U.S. government agencies. For example, SRAC's November 2, 2020 registration statement stated (in sections provided by and attributed to Momentus) that Kokorich "divested [his] interests in [a U.S.] company pursuant to an order by CFIUS," and that "Momentus believes Mr. Kokorich's [asylum] application will be granted," without providing the critical context of the government's national security findings and the rejection of his asylum application. ¶¶225, 227; *see also* ¶255.

---

[3] The other category of misleading omissions discussed in the Complaint (those relating to Stable Road's inadequate due diligence of Momentus) are addressed in Plaintiff's opposition to the Stable Road Defendants' motion to dismiss.

Defendants concealed highly material information regarding Kokorich. On March 22, 2018, the Department of Commerce rejected Momentus's application to provide its technology to Kokorich because he "is not an acceptable recipient . . . for national security reasons." ¶77. In June 2018, U.S. Customs and Immigration Services ("USCIS") revoked Kokorich's work visa and denied his application for permanent residency. ¶84. On June 24, 2018, Kokorich's lawyer wrote to the Department of Treasury's Committee on Foreign Investment in the United States ("CFIUS") regarding its conclusion that "the Kokoriches present a threat to the national security of the United States." ¶78.[4] On August 28, 2019, USCIS rejected Kokorich's asylum application and initiated proceedings to remove him from the U.S., based on "inconsistencies" in his testimony "with regard to [his] political affiliations and activities in Russia." ¶84. Shortly thereafter, the FBI, Department of Homeland Security, and Department of Commerce arrived unannounced at Momentus headquarters, questioned employees, detained Kokorich, and transported him to an immigration detention center. *Id.*

In April 2020, Momentus learned that Commerce placed its renewed application to give Kokorich its technology on indefinite hold. ¶85. In October 2020, Momentus learned that the Departments of Defense, State, Energy, and Commerce decided to reject that application. *Id.* On November 12, 2020, Commerce rejected the application citing the technology's "military potential" and the "detriment[] to the national security of the United States" if provided to Kokorich.

---

[4] Defendants claim that all adverse information about Kokorich contained in his lawyer's June 24, 2018 letter to CFIUS was disclosed in the November 2, 2020 registration statement. Momentus MTD at 11. Not so. It failed to disclose that CFIUS concluded "the Kokoriches present a threat to the national security of the United States," or that this was the basis for CFIUS's divestment order. ¶78. Defendants' argument that they disclosed certain additional information pertaining to Kokorich's national security issues on *March 8, 2021* also fails. By then, the government had already halted Momentus's flight plans, Kokorich had been forced to resign and fled the country, and SRAC's stock nosedive was well underway.

¶79. In January 2021, Kokorich was still contesting his removal proceedings. ¶84.

Even after the Federal Aviation Administration ("FAA") forced Momentus to cancel its January 2021 mission pending a multi-agency investigation of Kokorich, Momentus sought to provide misleading reassurances to investors via an interview with Defendant Kennedy. In that interview, Kennedy stated "[w]e are quite familiar with interagency review processes, and we have cleared similar reviews for our other licenses . . . these reviews are a standard part of various license application processes," while omitting the government's highly *non*-"standard" history with Kokorich, which was the reason for the investigation. ¶262. And Kennedy claimed "[w]e believe that Mr. Kokorich meets all legal requirements to be granted [U.S. Person] status," while failing to disclose the ongoing removal proceedings. ¶263.

These and Defendants' other statements regarding Kokorich, his central role in Momentus, and the actions of the U.S. government were highly misleading to reasonable investors for their failure to disclose the government's repeated, material actions against Kokorich. *See Khoja*, 899 at 1012 (materially misleading to disclose only that the government took an action with respect to the company without disclosing *why* it did so); *Yanek v. Staar Surgical Co.*, 388 F. Supp. 2d 1110, 1131 (C.D. Cal. 2005) (defendants' statements downplaying regulatory risks and omitting negative feedback from the government were materially misleading).

### 2. Momentus's Only In-Space Test Suffered Material Technical Problems And Failed To Achieve Its Stated Objectives

Defendants also concealed from investors that Momentus's only in-space test of its technology suffered material technical problems, failed to achieve its publicly stated objectives, and failed to demonstrate the commercial viability of Momentus's technology. Momentus told investors that its water plasma thruster was the key to its plans to provide in-space satellite transportation services. Momentus only attempted one in-space test of the thruster: in a mission launched in July 2019 and prematurely ended in November 2019 due to the failure of the host satellite. ¶¶89-90.

Prior to the mission, Momentus publicly stated that it would be a "commercial demonstration" that would "demonstrate the reliability, longevity, performance, and utility" of the thruster. ¶181. Momentus publicly stated that its objectives were to show that the thruster "provide[s] cost-effective high delta V capability to SmallSats via orbital maneuvering." ¶182.[5] Momentus's website even claimed that the mission's purpose "will be to flight demonstrate our core propulsion technology so customers, investors, and stakeholders can have absolute confidence that when they sign up for a Momentus Space service, it will be on time, safe and reliable," and that "we will be able to run the thruster long enough to fully characterize its performance in space with dozens of stop start cycles and then safely de-orbit the vehicle." ¶183.

In fact, the mission tested a tiny, 30-Watt version of the thruster (not the 550 Watts necessary for "commercial" plans). ¶95. A former Momentus officer admitted that the test thruster did not have "commercial potential" because it was "too small, too inefficient, too low in [specific impulse], too low in total impulse." ¶96. Kokorich admitted that the mission was not designed to show that the thruster could provide a measurable change in velocity from thrust, to measure specific impulse, or to show the thruster's reliability. ¶97. Whereas Momentus had planned 100 firings of the thruster, only 23 were performed, only 12 of these were "hot" firings with the power turned on, and 9 of those suffered a pump issue preventing water flow and plasma generation. ¶¶89, 92. Even for the remaining 3 hot firings, Defendants admitted that "pressure and temperature data did not provide sufficient information to either confirm or contradict plasma presence," but claimed to *infer* the presence of plasma by other means. ¶93. The host satellite is not operational after its mission-ending malfunction. ¶96. Kokorich, Harms, and other Momentus personnel

---

[5] Contrary to Defendants' assertion, these pre-Class Period statements are highly relevant to Plaintiff's claims because they provided critical context for the market's understanding of Defendants' Class Period statements, which misleadingly omitted the mission's severe limitations and failures while touting its supposed "success."

discussed a "failure review board" to analyze the mission immediately after its premature ending in November 2019. ¶91. A Momentus engineer admitted that the mission did not yield sufficient data to demonstrate the propulsion system's reliability or longevity. ¶96. And in a February 2020 document sent to Kokorich, a Momentus engineer admitted that the company did not obtain "any useful mission results" from the launch. ¶97. Defendants concealed all of this from investors.

Instead, Defendants repeatedly touted the supposed "success" of the mission. For example, in an October 7, 2020 investor presentation Momentus stated that it "[s]uccessfully tested water based propulsion technology on a demo flight launched mid-2019 – is still operational today," further stating that Momentus has "[g]roundbreaking water propulsion technology that significantly reduces costs and is reusable." ¶198; *see* ¶¶200, 204. The same investor presentation even made highly specific claims about the thruster's technical capabilities, stating, "[h]igh ISP[6] . . . 2 to 5 times any chemical propulsion system" and "[h]igh thrust . . . 10 times higher than most electric propulsion." ¶202; *see also* ¶232.

These and Defendants' similar statements regarding Momentus's thruster technology and its sole in-space test were highly misleading to investors due to the omission of the test's limited objectives and numerous, material shortcomings. *See Sec. & Exch. Comm'n v. Solv-Ex Corp.*, 2000 WL 36740052, at \*15 (D.N.M. Mar. 31, 2000) ("Misrepresentations and omissions concerning the status and success of the development of commercially feasible core technologies for a development stage company having no revenue and no products are facially material."); *see also Khoja*, 899 F.3d at 1010 (defendant misleadingly touted positive preliminary test results while omitting facts that made those results unreliable).

### 3. Momentus's Excessive Revenue Projections Ignored Its National Security Risks And Unproven Technology

The Momentus Defendants concealed from investors that their revenue

---

[6] ISP or $I_{sp}$ means "specific impulse," *i.e.* how efficiently an engine creates thrust.

projections were based on the highly implausible assumptions that (i) Momentus's technology would function perfectly as hoped in space despite the severe shortcomings of its only in-space test, and (ii) the government's national security concerns regarding Kokorich and efforts to remove him from the country would not meaningfully affect Momentus's planned operations.  For example, in the October 7, 2020 investor presentation, Momentus made revenue projections of $2 million for 2020, $19 million for 2021, ballooning to billions of dollars per year by 2024. ¶212. On the conference call that day, Kokorich stated "we believe that our financial projections assume a conservative market capture." ¶214; *see also* ¶240. Even after the FAA forced Momentus to cancel its January 2021 space mission pending a multi-agency governmental investigation of Momentus and Kokorich, Momentus and Kennedy "reaffirm[ed]" $19 million in projected 2021 revenue. ¶¶268-70.

Defendants' failure to disclose the material known risks to their excessive revenue projections, and the unreasonable assumptions underlying those projections, was highly misleading to investors. *See Todd*, 642 F.3d at 1221 ("how officers and directors of a public corporation describe revenue growth to investors is important").

### D. Defendants Fail To Negate Falsity And Materiality

### 1. The PSLRA Safe Harbor Does Not Apply

The PSLRA safe harbor by its clear terms does not apply to any statements made by the Momentus Defendants. The safe harbor only applies to statements made by four narrow categories of persons, which do not include the Momentus Defendants. *See* 15 U.S.C. § 78u–5(a).[7] At no relevant time was Momentus an "issuer" subject to the specified SEC reporting requirements—SRAC was. *Id.* No Momentus Defendant was a "person acting on behalf of an issuer" because that

---

[7] Congress intentionally limited the safe harbor so that it only "applies to seasoned issuers" and "companies with an established track record." 141 Cong. Rec. S19062, 1995 WL 755363, (Dec. 21, 1995) (statement of Sen. Feinstein); *see also* 15 U.S.C. § 78u–5(b) (excluding IPOs, penny stocks, blank check companies, *etc.*).

means only "any officer, director, or employee of such issuer." 15 U.S.C. § 78u–5(i)(4). No Momentus Defendant was an "outside reviewer" or an "underwriter."

Even if the safe harbor potentially could apply to the Momentus Defendants (it cannot), their statements still would not be protected. The safe harbor applies only to "forward-looking" statements, and most statements here relate to past or current facts. *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1142 (9th Cir. 2017) ("where defendants make mixed statements containing non-forward-looking statements as well as forward-looking statements, the non-forward-looking statements are not protected."). Defendants' omissions regarding Kokorich's *past* run-ins with the federal government and *ongoing* removal proceedings, or Momentus's *2019* failed in-space test, are simply not "forward-looking" as to the Class Period, which begins in 2020. The safe harbor is also inapplicable because Defendants' statements were made with actual knowledge of their misleading nature (*see infra* Part II.E), and lacked "meaningful" cautionary language. *See Yanek,* 388 F. Supp. 2d at 1123 (boilerplate warnings did not qualify for safe harbor).

### 2.   "Cautionary" Disclosures Were Generic And Misleading

Defendants wrongly claim to have made "cautionary disclosures" that sufficiently apprised investors of all relevant risks. But the "warnings" Defendants point to were either too generic to inform investors, or were themselves misleading for discussing hypothetical future risks while omitting the known, material adverse facts. *See In re Alphabet, Inc. Sec. Litig.*, 1 F.4th 687, 703 (9th Cir. 2021) ("Risk disclosures that speak entirely of as-yet-unrealized risks and contingencies and do not alert the reader that some of these risks may already have come to fruition can mislead reasonable investors") (cleaned up) (collecting cases), *cert. denied*, 142 S. Ct. 1227 (2022); *e.g., Berson*, 527 F.3d at 987 ("learning that stop-work orders *might* be issued is quite different from knowing they were *in fact* issued").

For example, the risk that "required regulatory approvals are not obtained" applies to almost every business in the world, and says nothing about the particular

---

regulatory risks facing Momentus. Stating that there was "no assurance" that Momentus would succeed in obtaining a Commerce Department license to provide its technology to Kokorich was materially misleading for failing to disclose that Commerce had *already rejected* Momentus's first such application "for national security reasons" and had informed Momentus that it would reject the pending second application. ¶¶77, 85. Defendants' claim to have disclosed that Momentus's technology "is still in the development stage and has not been fully validated through actual deployment and testing" also fails. That statement was expressly limited to addressing potential *future* services that are distinct from and require more advanced technology than Momentus's supposedly *imminent* lower earth orbit services, and stands in stark contrast to Defendants' claims to have successfully tested in space the technology that would support their near-term services.[8]

While Defendants claim to have warned that a launch delay could negatively impact financial results, this disclosure says nothing about the specific, relevant risks that materially increased the likelihood of a delayed launch schedule (*i.e.*, Kokorich's national security problems and Momentus's un-proven technology). Rather, the disclosure was limited to possible difficulties in obtaining berths on third-party launch vehicles. *See* Dkt No. 123-5, at p. 42 ("a shortage of space available on launch vehicles may cause prices to increase or cause delays in our ability to meet our customers' needs"). None of Defendant's purported cautionary disclosures sufficiently informed investors of the relevant risks. *See In re QuantumScape Sec. Class Action Litig.*, 2022 WL 137729, at \*14 (N.D. Cal. Jan.

---

[8] Defendants selectively quote and omit the full context of the statement, "[a] key component of our business model is the delivery of satellites using our vehicles *from lower earth orbit to other orbits.* The technology for *this maneuver* is still in the development stage . . ." *See* Dkt No. 123-5, at p. 41; *id.* ("While we plan to *initially* deliver satellites *within* lower earth orbit . . . the success of our business is in large part dependent on our ability to *develop more powerful and efficient propulsion* to deliver satellites and other payloads to *other orbits*").

14, 2022) ("the caution must discredit the allegedly misleading statements so obviously that the risk of real deception drops to nil.") (cleaned up).

### 3.   Defendants' Statements Were Material, Not Puffery

Defendants wrongly claim that some of their statements were mere "puffery" that could not be material to a reasonable investor. But, "even general statements of optimism, when taken in context, may form a basis for a securities fraud claim when those statements address specific aspects of a company's operation that the speaker knows to be performing poorly." *Quality Sys.*, 865 F.3d at 1143.

Defendants focus on statements regarding the purported "successful" testing of Momentus's thruster. These statements, however, conveyed to investors the highly material (but false) impression that Momentus had verified that the thruster required for its planned commercial services reliably worked *in space*. Moreover, Defendants made these statements in the context of Momentus's prior public claims about the mission (*e.g.*, that it would be a "commercial demonstration," and show that the thruster can "provide cost-effective high delta V capability to SmallSats via orbital maneuvering," ¶¶181-83), and concurrent factual statements about the thruster's technical capabilities (*e.g.*, "[h]igh ISP . . . 2 to 5 times any chemical propulsion system," ¶202). As such, claims about the test's "success" conveyed highly material factual information to reasonable investors. *See Cutler v. Kirchner, 696 F. App'x 809, 814 (9th Cir. 2017)* (statements that company's product "is working" are not puffery because "these statements represented that [the product] was doing the particular things [defendant] had told investors it was going to do").[9]

---

[9] *See also Kaplan v. Rose*, 49 F.3d 1363, 1372 (9th Cir. 1994) (fact issue existed as to materially misleading nature of statement that medical product was "used successfully" when its undisclosed success rate was only 18.5%), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017); *Billhofer v. Flamel Techs., SA*, 663 F. Supp. 2d 288, 299 (S.D.N.Y. 2009) (claim that product was a "success" was not puffery); *In* (footnote continued)

### 4.  "Opinion" Statements Were Misleading

Defendants incorrectly argue that their statements regarding Momentus's technology merely expressed opinions. *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175 (2015). The technology statements are phrased as objective facts, not subjective opinions. *E.g.*, ¶198 ("Successfully tested water based propulsion technology on a demo flight launched mid-2019 – is still operational today"); *id.* ("Groundbreaking water propulsion technology that significantly reduces costs and is reusable").

Defendants argue that statements regarding Kokorich's interactions with the government cannot be misleading if phrased as opinions. But opinions are nevertheless actionable if they are rendered misleading by omission. *In re Atossa Genetics Inc Sec. Litig.*, 868 F.3d 784, 801-02 (9th Cir. 2017). "[A] reasonable investor expects not just that the issuer believes the opinion (however irrationally), but that it fairly aligns with the information in the issuer's possession at the time." *Id.* at 802. The statements regarding Kokorich, even if framed as opinions, were materially misleading because they did not "fairly align" with the information Defendants had (but concealed from investors). That the federal government had repeatedly determined Kokorich to present a national security threat, had rejected his asylum application, and was in the process of removing him from the country, simply cannot be reconciled with Defendants' statements about these topics. *E.g.*, ¶227 ("Momentus believes Mr. Kokorich's [asylum] application will be granted").

### E.  The Momentus Defendants Knew The Material Facts That They Concealed From Investors

Scienter is pled "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Matrixx*, 563 U.S. at 48. "[T]he court must review all the

*re Allaire Corp. Sec. Litig.*, 224 F. Supp. 2d 319, 328 (D. Mass. 2002) (statement that product "has completed successful beta testing" was materially misleading).

allegations holistically." *Id.* "[A] reckless omission of material facts satisfies the element of scienter," if it constitutes "deliberate recklessness." *Alphabet*, 1 F.4th at 701. Here, the Complaint raises a strong inference of the Momentus Defendants' scienter through mutually reinforcing allegations, including that Kokorich and Harms[10] knew material facts that they withheld from public investors and from Stable Road (which the Momentus Defendants have implicitly admitted, *see supra* Part II.B). *See Todd*, 642 F.3d at 1217–18 (individual defendants' scienter established where they withheld material information from company's auditor).

### 1. Defendant Kokorich Acted With Scienter

Kokorich had direct knowledge of the government's security determinations and immigration actions pertaining to him. It strains credulity to suggest otherwise, especially where he had been detained and his lawyer contested the determinations on his behalf. ¶¶77-79, 84-85. In 2018, Kokorich's lawyer wrote to CFIUS regarding its conclusion that "the Kokoriches present a threat to the national security of the United States," copying Kokorich. ¶78. In 2019, USCIS rejected Kokorich's asylum application and initiated proceedings to remove him from the U.S., and the FBI detained Kokorich and took him to immigration detention. ¶84. As of January 2021, Kokorich was still contesting the removal proceedings. *Id.*

Kokorich deliberately misled investors and Stable Road about this. During Stable Road's due diligence, Kokorich stated that he had a strong case for asylum, but failed to disclose the rejection of his asylum application or the removal proceedings. ¶320(b). Kokorich similarly misled Stable Road regarding CFIUS's order requiring him to divest from another U.S. space industry company, claiming that it was a different situation from his ownership of Momentus and that it had to do with other investors and not him. ¶320(c). And Kokorich personally reviewed

---

[10] The scienter of Momentus's President, Defendant Kennedy, is addressed in Plaintiff's opposition to his separately filed motion to dismiss.

and approved the misleading "Information about Momentus" and "Risk Factors" sections of SRAC's registration statements. ¶320(d).

Kokorich also had direct knowledge of the failures and limitations of Momentus's only in-space test. Kokorich admitted he understood that the test mission was not designed to show that the thruster could provide a measurable change in velocity from thrust, to measure specific impulse, or to show the thruster's reliability. ¶97. Kokorich received November 2019 emails in which Momentus executives discussed the need for a "failure review board" regarding the mission. ¶91. He received a document in February 2020 in which a Momentus engineer admitted the company did not obtain "any useful mission results" from the launch. ¶97. Despite all this, during Stable Road's due diligence, Kokorich told Defendant Kabot that the mission was a success, omitting its shortcomings or Momentus's internal analyses about its failure. ¶320(a).

These facts on their own are more than sufficient to plead a strong inference Kokorich's scienter. That inference is bolstered by his positions as Momentus's hands-on CEO, founder, and all-purpose leader and major shareholder with a significant financial motive to mislead investors in order to obtain badly needed funding for the company. ¶324; *see Patel v. Axesstel, Inc.*, 2015 WL 631525, at *11 (S.D. Cal. Feb. 13, 2015) (the fact that executives of a small company were actively involved in corporate operations further demonstrated scienter). Kokorich's scienter is further shown by his abrupt resignation from the Company in January 2021 amid multiple governmental investigations into his actions and his decision to flee from the U.S. ¶326; *see In re WageWorks, Inc., Sec. Litig.*, 2020 WL 2896547, at *7 (N.D. Cal. June 1, 2020) (resignation following restatements supported scienter).

### 2.     Defendant Harms Acted With Scienter

Harms also had direct knowledge of the adverse facts regarding Momentus's only in-space test, and received the November 2019 emails in which Momentus executives discussed the need for a "failure review board" regarding the mission.

¶91. As Chief Revenue Officer, Harms had a direct role in matters relating to Momentus's financial projections, including a September 25, 2020 due diligence call with Stable Road "to discuss certain areas of business due diligence, including customer contracts, backlog and deal pipeline." ¶310(h).

Furthermore, as a C-suite executive, it is highly implausible that Harms did not know that the federal government had repeatedly communicated to Momentus that it was rejecting Momentus's export license applications because Kokorich posed a national security risk. *See* ¶¶77, 79, 85; *Alphabet*, 1 F.4th at 706 (courts "may consider a senior executive's role in a company to determine whether there is a cogent and compelling inference that the senior executive knew of the information at issue."). And it would be absurd to suggest that nobody at Momentus had ever informed Harms that in August 2019 the FBI arrived unannounced at Momentus's headquarters, questioned multiple employees, detained Kokorich and removed him from the premises. ¶84. Harms never disclosed these material facts to investors, neither during Stable Road's due diligence in which she actively participated, nor even after becoming CEO of Momentus upon Kokorich's abrupt departure.

### 3. The Scienter Of The Momentus Individual Defendants Is Imputed To Momentus

"[T]he scienter of the senior controlling officers of a corporation may be attributed to the corporation itself to establish liability as a primary violator of § 10(b) and Rule 10b-5 when those senior officials were acting within the scope of their apparent authority." *Alphabet*, 1 F.4th at 705 (9th Cir. 2021); *accord In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015). Defendants Kokorich, Harms and Kennedy were Momentus's senior executive officers who acted within the scope of their apparent authority in connection with the matters alleged in this action. Their scienter is attributed to Momentus.

### 4. The Momentus Defendants Had A Strong Financial Motive To Hide The Truth From Investors

Momentus was in a precarious and deteriorating financial position, and

desperately needed SRAC's cash in order to continue operations, adding to the already strong inference of the Momentus Defendants' scienter. *See Abdo v. Fitzsimmons*, 2021 WL 616324, at \*13 (N.D. Cal. Feb. 17, 2021) (defendants "knew that the Company was in a desperate financial situation and was in need of a sudden infusion of cash, which could easily be seen as a motive"). By late 2019 Momentus was in constant fundraising mode, but two other SPACs rejected Momentus. ¶71. Momentus had never earned any revenue, was losing money at an accelerating rate ($15.4 million in the first half of 2020), had liabilities exceeding its assets, and had only $10.7 million of cash on hand at June 30, 2020. ¶¶66-69. The Momentus Defendants had powerful financial motives to conceal information from investors that could derail or devalue a merger with SRAC. *See QuantumScape*, 2022 WL 137729, at \*18 (that defendant company "raised hundreds of millions of dollars" during the class period "helps support the inference of scienter"); *see also In re MannKind Sec. Actions*, 835 F. Supp. 2d 797, 813 (C.D. Cal. 2011).

### F.    Defendants Fail To Negate Scienter

#### 1.    Momentus's July 2019 Test Mission Does Not Disprove Knowledge Of National Security Risks

Defendants claim that they thought Kokorich's national security risks were immaterial because the government did not prevent Momentus's 2019 test mission.[11] However, the mere fact that the government had not *yet* prevented Momentus from operating in space does not immunize Defendants' intentional concealment of *past* significant government actions against Kokorich that created material risks to Momentus's business. *See Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 709 (9th Cir. 2016) (FDA's decision to allow defendants to continue drug study did not

---

[11] Defendants again admit that they knew of the government's national security determinations regarding Kokorich prior to making the misleading statements at issue. *See* Momentus MTD at 19 ("since those national security concerns had not proven to be an obstacle in 2019, each Defendant reasonably believed those exact same concerns would not be an insurmountable obstacle for future missions").

negate their scienter for withholding negative test results).

The very licenses Defendants now rely on reveal their argument's infirmity.[12] The first license, dated January 11, 2019, granted Astro Digital US, Inc. approval to provide Momentus's test satellite to ECM Space Technologies GmbH (an unrelated third-party). *See* Dkt No. 135-1. The license does *not* authorize the provision of any technology to Kokorich. The second license, dated February 11, 2019, granted Astro Digital US, Inc. permission to use certain radio frequencies to communicate with Momentus's test satellite. *See* Dkt No. 135-2 at 37. Both licenses were issued, and the July 2019 test mission launched, *before* the rejection of Kokorich's asylum application, the initiation of his removal proceedings, the FBI arriving unannounced at Momentus headquarters to question and detain him, and Momentus learning that its renewed application to provide technology to him would be rejected.

Regardless, Defendants' argument fails to explain away their concealment of such material information. What inference besides purposeful deceit can be drawn from Kokorich's statements, made in response to Stable Road's direct due diligence questions, that omitted the government's rejection of his asylum application, his ongoing removal proceedings, or his visit from the FBI? *See* ¶320(b).

### 2. Defendants' Other Arguments Also Fail To Defeat Scienter

Defendants attempt to deflect attention from their actual knowledge by raising various peripheral scienter arguments, all of which fail. First, Defendants' claim that the Complaint lacks particularized scienter allegations regarding what each Individual Defendant knew and when they knew it is patently false. *See supra* Parts

---

[12] Plaintiff does not oppose Defendants' request for judicial notice and incorporation by reference (Dkt. No. 123-13) to the extent the Court takes notice of the fact the documents exist and what the documents say, but Plaintiff opposes Defendants' request to the extent they seek to have the Court consider the documents for the truth of the matters stated therein, or otherwise to create fact disputes. *See Khoja*, 899 F.3d 988 ("it is improper to assume the truth of an incorporated document if such assumptions only serve to dispute facts stated in a well-pleaded complaint.").

II.E.1-2.[13] Second, Defendants wrongly claim that a lack of insider stock sales is somehow "fatal" to Plaintiff's claims. But "[a]llegations of suspicious stock sales . . . are not needed where, as here, other allegations in the complaint raise a strong inference of scienter." *Alphabet*, 1 F.4th at 707.

Third, Defendants argue that "core operations" allegations add nothing to scienter here. But it is well established that "[a]llegations regarding management's role in a corporate structure and the importance of the corporate information," can add to a strong inference of scienter. *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008). And it would be absurd to suggest that Momentus's senior executives did not know the results of its only in-space test, or that the FBI had removed Kokorich from Momentus's headquarters after questioning multiple employees. *See Berson*, 527 F.3d at 989 ("These facts were prominent enough that it would be absurd to suggest that top management was unaware of them").

### G. The Momentus Defendants Engaged In A Scheme To Defraud Investors In Violation Of SEC Rule 10b-5(a) & (c)

Subsections (a) and (c) of Rule 10b-5 are generally referred to as imposing "scheme liability," and "capture a wide range of conduct." *Lorenzo v. Sec. & Exch. Comm'n*, 139 S. Ct. 1094, 1101 (2019); *see* 17 C.F.R. § 240.10b-5(a) (unlawful to "employ any device, scheme, or artifice to defraud"); 17 C.F.R. § 240.10b-5(c) (unlawful to "engage in any act, practice, or course of business which operates or would operate as a fraud or deceit"). For example, "dissemination of false or misleading statements with intent to defraud can fall within the scope of subsections (a) and (c) of Rule 10b–5 . . . even if the disseminator did not 'make' the

---

[13] Defendants contort the text and reasoning of *Plumbers Loc. #£200 Pension Fund v. Washington Post Co.*, 930 F. Supp. 2d 222, 232 (D.D.C. 2013). There, the court found that whistleblower lawsuits against a company's subsidiary did not give the defendants knowledge of fraud. Here, Plaintiff claims that the SEC Order and the SEC Complaint (which were not published until the end of the Class Period) *revealed* the fraud, not that they provided Defendants with knowledge of fraud.

statements." *Lorenzo*, 139 S. Ct. at 1100–01.[14]

The scheme liability of each Momentus Defendant arises because they concealed material information from Stable Road during due diligence, and knew that the incomplete information they provided to Stable Road would be relayed to public investors. This concealment of material information was a purposefully deceptive act, and was a scheme to defraud public investors. *See In re XL Fleet Corp. Sec. Litig.*, 2022 WL 493629, at *7 (S.D.N.Y. Feb. 17, 2022) (employee of company acquired by SPAC engaged in fraudulent scheme where he "must have been aware that his false reports about projected sales would be passed on to investors and materially impact their view of the company").

Defendants argue that Plaintiff fails to state a scheme liability claim against Harms, ignoring (and therefore waiving any argument regarding) the scheme liability claims against Momentus and Kokorich. Harms was directly aware of Momentus's failed in-space test. ¶91. As a senior executive it would be absurd to suggest she did not know the government had told Momentus that Kokorich was a national security risk, or that the FBI had arrived unannounced at Momentus headquarters and removed him from the premises (*see* ¶84). Harms was Chief Revenue Officer (and later CEO), and so was necessarily involved with Momentus's financial projections. *See* ¶22. Harms participated in a September 25, 2020 due diligence call with Stable Road to discuss "customer contracts, backlog and deal

---

[14] Defendants argue that a "scheme liability claim cannot be based solely on false or misleading statements [or omissions], but must instead involve deceptive conduct beyond those misrepresentations or omissions." Momentus MTD at 20. But this position has been rejected by both the Supreme Court and the Ninth Circuit. *Alphabet*, 1 F.4th at 709 (the argument "that Rule 10b-5(a) and (c) claims cannot overlap with Rule 10b-5(b) statement liability claims is foreclosed by *Lorenzo*"). Defendants' cited authorities on this point are themselves based on *WPP Luxembourg Gamma Three Sarl v. Spot Runner, Inc.*, 655 F.3d 1039 (9th Cir. 2011), and the Ninth Circuit has recognized that "*Lorenzo* abrogated our contrary holding in *WPP*." *Alphabet*, 1 F.4th at 709 n.10.

pipeline." ¶310(h). And yet, Harms withheld from Stable Road the key assumptions underlying Momentus's projections, and the material risks created by the failed test mission and Kokorich's national security problems. The scheme liability of Harms, and the other Momentus Defendants, is more than sufficiently pled.

### H. The Momentus Defendants "Made" Misleading Statements

The Momentus Defendants argue that they did not "make" certain statements at issue, within the meaning of Ruble 10b-5(b) as interpreted by *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011), and so cannot be held liable for them. The argument has no bearing on Plaintiff's scheme liability claims under Rule 10b-5(a) and (c), and simply ignores that Momentus, Kokorich, and Kennedy clearly "made" numerous misleading statements under Rule 10b-5(b) and *Janus*.

"For purposes of Rule 10b–5, the maker of a statement is the person or entity with ultimate authority over the statement, including its content and whether and how to communicate it." *Janus*, 564 U.S. at 142. After *Janus*, there are many ways to "make" a statement. *See, e.g.*, *Abdo v. Fitzsimmons*, 2018 WL 11220494, at *10 (N.D. Cal. May 22, 2018) (signing document that contains the statement); *Abdo*, 2021 WL 616324, at *6 (attribution to the defendant within the statement); *S.E.C. v. Daifotis*, 874 F. Supp. 2d 870, 881 (N.D. Cal. 2012) (making private statement "with the intent and reasonable expectation that such statement would be relayed to the investing public"). Here, Momentus, Kokorich and Kennedy had ultimate authority over, and therefore "made", numerous challenged statements.

For example, Momentus made the statements in the October 7, 2020 investor presentation. *E.g.* ¶¶198, 202, 212. Every page of the presentation bears Momentus's logo and a statement that the presentation is the copyrighted, proprietary and confidential information of Momentus. *See* Dkt No. 123-7, at pp. 175-207. Defendant Kokorich directly made misleading statements on the October 7, 2020 conference call. *E.g.* ¶214. Defendant Kennedy directly made misleading

statements in the January 4, 2021 IPO Edge article. *E.g.*, ¶¶262-63, 270.[15] SRAC's registration statements relay information that Momentus and Kokorich supplied with the understanding that SRAC would publish it to investors. ¶¶221, 320(d). And these registration statements attribute such information to Momentus. *E.g.*, ¶227 ("Momentus believes . . ."); ¶240 ("in the view of Momentus's management . . .").

## I. The Momentus Defendants' Fraud Caused Investors' Losses

To plead loss causation, "[t]he plaintiff must plausibly allege a causal connection between the defendant's misstatements and the plaintiff's economic loss." *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020), *cert. denied*, 142 S. Ct. 71 (2021). "That effort should not prove burdensome, for even under Rule 9(b) the plaintiff's allegations will suffice so long as they give the defendant notice of plaintiffs' loss causation theory and provide the court some assurance that the theory has a basis in fact." *Id.*

Plaintiff's allegations easily meet these standards. During the period from January 4 through July 13, 2021, as the risks Defendants had previously concealed materialized and investors learned the truth, the artificial inflation was removed from SRAC's stock, causing it to plummet in price. SRAC's stock price fell dramatically in the days following revelations of the government's national security concerns about Kokorich, repeated launch delays and Kokorich's resignation (both due to national security concerns), Momentus's resulting loss of customers and customer orders, and the SEC's Order and Complaint against Momentus and Kokorich that further revealed Defendants' fraud. ¶¶136, 140, 149, 152, 157, 179.

Defendants claim that Plaintiff's loss causation theory requires an "inferential

---

[15] Momentus is also considered to have made each of the statements made by Kokorich and Kennedy, because they were senior Momentus executives acting within the scope of their duties. *See In re Tesla, Inc. Sec. Litig.*, 477 F. Supp. 3d 903, 926-27 (N.D. Cal. 2020) ("It is beyond dispute that a corporation can be liable for the fraud committed by its officers, so long as the officer commits it within the scope of his or her employment. *Janus* did not change that").

leap" between the repeated revelations and the immediate, large price declines in SRAC stock. Contrary to Defendants' hyperbole, this is precisely how loss causation is routinely pleaded. *See BofI*, 977 F.3d at 790 ("a disclosure followed by an immediate drop in stock price is more likely to have caused the decline"); *e.g.*, *Mauss v. NuVasive, Inc.*, 2016 WL 3681831, at \*10 (S.D. Cal. July 12, 2016) (revelations were followed by stock price declines of 12% and 5.4%). Defendants do not even offer any alternative explanations for the price declines to attempt to sever the clear link between investors' losses and Defendants' fraud.[16]

Defendants' protest that SRAC's stock price increased after one of the corrective disclosures at issue. But the reason for this increase, and why it is consistent with Plaintiff's loss causation theory, is clearly explained in the Complaint.[17] Simultaneously with the June 29, 2021 registration statement in which Defendants belatedly admitted to the failure of Momentus's test mission and provided other negative news, Defendants released news that was highly positive for SRAC's stock: revised deal terms under which "SRAC's public investors now stood to obtain a 19.4% interest in Momentus following the proposed merger, whereas previously they would only have obtained a 12.5% interest." ¶173. "This 55.2% increase in the interest to be received by SRAC's public stockholders should have, all else being equal, resulted in a commensurate increase in SRAC's publicly traded stock price." *Id.* "That SRAC's stock price increased by only 4.7% shows the market's severe negative reaction to the June 29 revelations." *Id.* Therefore, the modest increase in SRAC's stock price following the June 29, 2021 disclosures in

---

[16] Even if they had, such an argument should be adjudicated at summary judgment.

[17] Defendants rely on easily distinguished cases. In *Weiss v. Amkor Tech., Inc.*, 527 F. Supp. 2d 938, 947 (D. Ariz. 2007) the plaintiffs had no plausible explanation for why the stock price increased following a corrective disclosure. In *Irving Firemen's Relief & Ret. Fund v. Uber Techs., Inc.*, 998 F.3d 397, 408 (9th Cir. 2021) the relevant securities were not even publicly traded, and investors' sporadic valuations of them did not react to the alleged corrective disclosures.

fact *supports* Plaintiff's loss causation theory. Defendants' brief simply ignores the Complaint's clear explanation, because they have no rebuttal.

Finally, Defendants argue that announcement of a government investigation cannot give rise to loss causation.  The Ninth Circuit has specifically rejected this argument. *Lloyd v. CVB Fin. Corp.*, 811 F.3d 1200, 1210 (9th Cir. 2016) ("[T]he announcement of an investigation can form the basis for a viable loss causation theory if the complaint also alleges a subsequent corrective disclosure"). Regardless, Plaintiff does not rely on the mere announcement of an investigation. He pleads repeated launch delays, Kokorich's resignation, Momentus's loss of customers and orders, an SEC settlement revealing the fraud, and Defendants' own belated admissions. On these facts, loss causation is easily satisfied. *See Mauss*, 2016 WL 3681831, at \*11 (loss causation pled based on partial disclosures including governmental investigation, CEO's resignation, and DOJ settlement).

### J.    Investors Are Entitled To A Class-Wide Presumption Of Reliance

Plaintiff alleges his direct reliance on Defendants' material omissions and misleading statements. *E.g.*, ¶354. This is sufficient at the pleading stage. Defendants' arguments regarding the applicability of class-wide reliance presumptions go to class certification issues, and so are premature here. Regardless, the investor class is entitled to a presumption of reliance, for at least three reasons.

First, reliance is presumed because this case primarily concerns Defendants' material omissions. *See Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128, 153–54 (1972) ("Under the circumstances of this case, involving primarily a failure to disclose, positive proof of reliance is not a prerequisite to recovery."). As such, "[a]ll that is necessary is that the facts withheld be material." *Id.* at 154.[18]

---

[18] While Plaintiff also alleges that these omissions rendered various statements misleading, that is simply a requirement in any case bringing claims under Rule 10b-5(b), and does not detract from the Complaint's overwhelming focus on the material facts *omitted* by Defendants. *See Affiliated Ute*, 406 U.S. at 152 (presuming (footnote continued)

Here, the Momentus Defendants withheld the highly material facts discussed above (*see* Part II.C) regarding the government's actions against Kokorich, the actual results of Momentus's only in-space test, and the unreasonable assumptions underlying their financial projections.

Second, Plaintiff "may invoke a rebuttable presumption that, in trading, he relied on the integrity of the price set by the market." *Basic Inc. v. Levinson*, 485 U.S. 224, 226 (1988). While a market efficiency determination is premature here,[19] relevant factors support applying the *Basic* presumption. SRAC's securities were listed on the NASDAQ. ¶339(a); *see Todd v. STAAR Surgical Co.*, 2017 WL 821662, at *6 (C.D. Cal. Jan. 5, 2017) ("the federal courts are unanimous in their agreement that a listing on the NASDAQ or a similar national market is a good indicator of efficiency."). And new information about SRAC was rapidly incorporated into its stock price. ¶¶339-40; *see Petrie*, 308 F.R.D. at 352.

While Defendants claim that a pre-merger SPAC categorically cannot trade in an efficient market, they cite no authority so holding.[20] And the facts here disprove their assertion. Prior to the October 7, 2020 announcement of the proposed merger,

---

reliance on omissions where plaintiffs also alleged reliance on affirmative statements that "it would be our duty to see that these transfers were properly made" and "the bank would be acting for the individual stockholders.").

[19] In determining market efficiency, courts conduct a fact-intensive inquiry, usually at the class certification stage, and frequently involving assessment of expert reports and testimony. *See Petrie v. Elec. Game Card, Inc.*, 308 F.R.D. 336, 352 (C.D. Cal. 2015) (experts' statistical "event studies" are "by far the most common test for a causal connection" between new information and stock price reactions).

[20] Moreover, Defendants' argument is against public policy because it would shield many SPACs and their target companies (an area of the markets that the SEC and commentators have noted is rife with fraud and abuse, *see* ¶¶31-34) from liability in private securities class actions. *See Basic*, 485 U.S. at 245 ("The presumption of reliance . . . supports[] the congressional policy embodied in the 1934 Act."); *id.* at 231 (the "private cause of action [] for a violation of § 10(b) . . . constitutes an essential tool for enforcement of the 1934 Act's requirements.").

SRAC's stock traded in a narrow band around its $10 redemption price. *See* Spencer Decl. Ex. 1 (SRAC stock price chart). SRAC's stock price increased substantially as Defendants touted Momentus's prospects while omitting material negative information. *See id.* And SRAC's stock price came crashing back down as the truth was revealed. *See id*; ¶¶136, 140, 149, 152, 157, 179. This is the expected result in an efficient market.

Third, the class is entitled to a presumption of reliance on the "integrity of the regulatory process" through which Defendants provided information to the markets. *Arthur Young & Co. v. U. S. Dist. Ct.*, 549 F.2d 686, 695 (9th Cir. 1977); *see Zelman v. JDS Uniphase Corp.*, 376 F. Supp. 2d 956, 969 (N.D. Cal. 2005) ("courts in the Ninth Circuit have adopted an 'integrity of the regulatory process' theory permitting plaintiffs to invoke a presumption of reliance in the context of initial public offerings."). Although courts have traditionally applied this presumption in the context of IPOs, the process of a private operating company merging with a publicly traded SPAC is similar to an IPO. ¶29. Defendants themselves argue that SRAC's proposed acquisition of Momentus was "functionally equivalent" to an IPO. *See* Momentus MTD at 24. The Court should presume investors' reliance.

### K. The Complaint States A Claim For Control Person Liability

Defendants' only argument concerning Plaintiff's Section 20(a) control person claims is their contention that the Complaint does not plead a primary violation under Section 10(b), which argument fails as detailed *supra*.

### III. CONCLUSION

Defendants' motion should be denied. If the Court grants any part of the motion, Plaintiff requests leave to amend. *See* Fed. R. Civ. P. 15(a)(2); *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment").

Dated: May 26, 2022

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Garth A. Spencer*
Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Casey E. Sadler (SBN 274241)
  *csadler@glancylaw.com*
Charles Linehan (SBN 307439)
  *clinehan@glancylaw.com*
Garth A. Spencer (SBN 335424)
  *gspencer@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Hartmut Haenisch*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007
Email: fcruz@frankcruzlaw.com

*Additional Counsel*

PLAINTIFF'S OPPOSITION TO MOMENTUS'S MOTION TO DISMISS

26

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case and am over eighteen years old. On May 26, 2022, I served true and correct copies of the foregoing document by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on May 26, 2022, at Jacksonville, Florida.

*s/ Garth A. Spencer*
Garth A. Spencer