Robert V. Prongay (SBN 270796)
 *rprongay@glancylaw.com*
Casey E. Sadler (SBN 274241)
 *csadler@glancylaw.com*
Charles Linehan (SBN 307439)
 *clinehan@glancylaw.com*
Garth Spencer (SBN 335424)
 *gspencer@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Hartmut Haenisch*
[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE STABLE ROAD ACQUISITION CORP. SECURITIES LITIGATION | Case No. 2:21-CV-5744-JFW(SHKx) |
| | Honorable John F. Walter |
| | **LEAD PLAINTIFF'S MEMORADNUM IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| | Hearing Date: October 2, 2023<br>Hearing Time: 1:30 p.m.<br>Location: W. 1st Street, Courtroom 7A |

# **TABLE OF CONTENTS**

I.     PRELIMINARY STATEMENT ........................................................................ 1

II.    SUMMARY OF LITIGATION AND PROCEDURAL HISTORY ................ 2

    A.     Nature of the Action ................................................................. 2

    B.     Initial Complaint and Lead Appointment Process ................................. 3

    C.     Lead Counsel's Investigation and the Amended Complaint ................. 3

    D.     The Court Denies in Part the Motions to Dismiss the Amended Complaint ................................................................................ 4

    E.     Lead Plaintiff Initiated Discovery Of Defendants ................................ 4

    F.     Mediation Efforts and Settlement Negotiations ................................... 5

III.   STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e) .... 6

IV.    ARGUMENT ....................................................................................... 7

    A.     The Settlement Is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) Factors and the Remaining *Hanlon* Factors .............................. 7

        1.     Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class ................................................................... 7

        2.     The Settlement Is the Result of Arms'-Length Negotiations ....... 8

        3.     The Settlement Is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation ................................................................ 9

            (a)     The Strength of Lead Plaintiff's Case and Risk of Continued Litigation ................................................ 9

            (b)     Risks of Maintaining Class Action Status ..................... 11

        4.     Rule 23(e)(2)(C)(ii)-(iv) ............................................................ 11

        5.     The Settlement Treats All Class Members Equitably Relative To Each Other ...................................................................... 13

6.     The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval ............................................................. 14

B.     Class Certification is Appropriate for Settlement Purposes ................. 16

     1.     The Settlement Class is Sufficiently Numerous ........................ 18

     2.     Common Questions of Law or Fact Exist ................................. 18

     3.     Lead Plaintiff's Claims Are Typical of Those of the Settlement Class ................................................................................. 19

     4.     Lead Plaintiff and Lead Counsel Adequately Represent the Settlement Class .................................................................. 19

     5.     The Predominance and Superiority Requirements Are Satisfied ................................................................................ 20

     6.     The Court Should Appoint Lead Counsel as Counsel for the Class ..................................................................................... 21

C.     The Court Should Approve the Proposed Form and Method of Notice ................................................................................... 21

V.     PROPOSED SCHEDULE OF EVENTS ........................................................ 22

VI.     CONCLUSION ................................................................................. 23

# TABLE OF AUTHORITIES

<u>CASES</u>

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)................................................................................17, 21

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds,*
    133 S. Ct. 1184 (2013)................................................................................20

*Barnes v. AT&T Pension Benefit Plan,*
    270 F.R.D. 488 (N.D. Cal. 2010) ...........................................................18

*Blackie v. Barrack,*
    524 F.2d 891 (9th Cir. 1975) ..................................................................18

*Cheng Jiangchen v. Rentech, Inc.,*
    2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ........................................20

*Christine Asia Co. v. Yun Ma,*
    2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019).....................................13, 22

*Churchill Vill., L.L.C. v. Gen. Elec.,*
    361 F.3d 566 (9th Cir. 2004) ....................................................................7

*Hanlon v. Chrysler Corp.,*
    150 F.3d 1011 (9th Cir. 1998) ...........................................................*passim*

*Harris v. Palm Springs Alpine Estates, Inc.,*
    329 F.2d 909 (9th Cir. 1964) ..................................................................18

*Hayes v. MagnaChip Semiconductor Corp.,*
    2016 WL 6902856 (N.D. Cal. Nov. 21, 2016)........................................11

*Hefler v. Wells Fargo & Co.,*
    2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)..........................................14

*In re Adobe Sys., Inc. Sec. Litig.,*
    139 F.R.D. 150 (N.D. Cal. 1991) ............................................................18

*In re Am. Apparel, Inc. S'holder Litig.,*
    2014 WL 10212865 (C.D. Cal. July 28, 2014) .........................................9

*In re BankAtlantic Bancorp, Inc.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)..........................................................11

*In re Bridgepoint Educ., Inc. Sec. Litig.*,
2015 WL 224631 (S.D. Cal. Jan. 15, 2015) ...........................................................19

*In re China Med. Corp. Sec. Litig.*,
2013 WL 12126754 (C.D. Cal. May 16, 2013).........................................................9

*In re Cooper Cos. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009)............................................................................18

*In re Diamond Foods, Inc.*,
295 F.R.D. 240 (N.D. Cal. 2013) ...........................................................................20

*In re Omnivision Tech., Inc.*,
559 F. Supp. 2d 1035 (N.D. Cal. 2008)..................................................................11

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ....................................................................................13

*In re Priceline.com, Inc. Sec. Litig.*,
2007 WL 2115592 (D. Conn. July 20, 2007)..........................................................22

*In re Verisign, Inc. Sec. Litig.*,
2005 WL 7877645 (N.D. Cal. Jan. 13, 2005)..........................................................18

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005)......................................................................10

*Jaffe v. Morgan Stanley & Co., Inc.*,
2008 WL 346417 (N.D. Cal. Feb. 7, 2008).............................................................17

*Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823 (N.D. Cal. 2017)....................................................................10

*Mild v. PPG Indus., Inc.*,
2019 WL 3345714 (C.D. Cal. July 25, 2019) ....................................................8, 20

*Officers for Justice v. Civ. Serv. Comm.*,
688 F.2d 615 (N.D. Cal. 1982)...............................................................................15

*Persky v. Turley*,
1991 WL 329564 (D. Ariz. Dec. 20, 1991)............................................................21

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997) .........................................................................11

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ...............................................................................9

*Siemer v. Assocs. First Capital Corp.*,
2001 WL 35948712 (D. Ariz. March 30, 2001).....................................................18

*Stewart v. Applied Materials, Inc.*,
2017 WL 3670711 (N.D. Cal. Aug. 25, 2017).......................................................16

*Vaccaro v. New Source Energy Partners L.P.*,
2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017).......................................................15

*Vinh Nguyen v. Radient Pharm. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014).........................................................13

*Wolin v. Jaguar Land Rover N. Am., LLC*,
617 F.3d 1168 (9th Cir. 2010) ......................................................................16, 17

*Wong v. Arlo Techs., Inc.*,
2021 WL 1146042 (N.D. Cal. Mar. 25, 2021) ....................................................7, 9

STATUTES

15 U.S.C. §§ 78j(b) and 78t(a) ..............................................................................2

RULES

Fed. R. Civ. P. 23.........................................................................................*passim*

REGULATIONS

17 C.F.R. § 240.10b-5 ...........................................................................................2

MEMORANDUM IN SUPPORT OF MOTION

## I.    PRELIMINARY STATEMENT

The Parties[1] have reached a proposed Settlement of the above-captioned action (the "Action") that resolves all claims against Defendants in exchange for a non-reversionary cash payment of $8,500,000.  Lead Plaintiff Hartmut Haenisch ("Lead Plaintiff") submits this Settlement represents an excellent result for the Settlement Class and ultimately should be approved by this Court, especially given the risks, costs, and delays of continued litigation.  Indeed, this is one of the rare cases in which Lead Plaintiff was able to recover more than all of the available insurance policies.

The Settlement was reached after contested litigation, which included: (i) Lead Counsel's comprehensive investigation into the alleged claims asserted against Defendants, which was assisted by an investigator, and by consultations with a damages expert; (ii) drafting the 103 page Amended Complaint (plus exhibits); (iii) fully briefing, and defeating in part, three different motions to dismiss the Amended Complaint; (iv) initiating discovery of Defendants, including propounding comprehensive requests for production, proposing parameters for Defendants to search their electronically stored information, and drafting a confidentiality order and discovery protocol; (v) arms'-length negotiations between the Parties, including the drafting of substantial mediation statements and an all-day mediation session with Jed D. Melnick, Esq. of JAMS on October 17, 2022, an experienced and highly respected mediator of complex class actions; (vi) engaging with Defendants and the mediator in months of additional negotiations, which resulted in the acceptance of a mediator's recommendation to settle; and (vii) extensive negotiations related to the

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation and Agreement of Settlement dated August 18, 2023 (the "Stipulation").  A true and correct copy of the Stipulation and its exhibits are altogether attached as Exhibit 1 to the Declaration of Casey E. Sadler in Support of Motion for Preliminary Approval of Class Action Settlement (the "Sadler Decl.").

Stipulation and its exhibits prior to its execution, including further engagement of the mediator. Thus, the $8.5 million Settlement is the result of arm's-length negotiations conducted by experienced counsel, with the assistance of a well-respected mediator, and with sufficient information to evaluate the Settlement in light of the risks and uncertainties, including material questions as to causation and damages, of continued litigation. The Settlement is further supported by the publicly disclosed cash-flow constraints being experienced by Defendant Momentus, Inc. (making the timing and payment of the Settlement Funds a material consideration of the parties' Settlement).

As set forth herein, the Settlement warrants preliminary approval by this Court so that notice can be distributed to members of the Settlement Class and a Settlement Hearing can be scheduled to consider final approval of the Settlement.

## II. SUMMARY OF LITIGATION AND PROCEDURAL HISTORY

### A. Nature of the Action

Lead Plaintiff asserts claims on behalf of a putative class of investors pursuant to Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5, against SRAC, Sponsor, Momentus and the Individual Defendants (collectively, "Defendants").[2]

Lead Plaintiff alleges Defendants misled investors between October 7, 2020 and July 13, 2021, inclusive (the "Settlement Class Period"), by failing to disclose that (i) multiple federal agencies had determined that Momentus's then-CEO Defendant Kokorich, who is a citizen of Russia with alleged ties to the Russian

---

[2] The Individual Defendants were executives of SRAC, the Sponsor, and/or Momentus during the Settlement Class Period. Mikhail Kokorich, Momentus's former CEO, is named as a defendant in the Amended Complaint but was never served and did not appear in this Action. Lead Plaintiff understands that Mr. Kokorich currently resides in Switzerland and will be released as part of this Settlement.

government and who is not a citizen or legal permanent resident of the United States, posed an unacceptable national security risk, (ii) Momentus had never successfully tested its technology in space as claimed, (iii) as a result, Momentus's financial projections of immediate, explosive revenue growth were highly misleading, and (iv) SRAC's superficial due diligence of Momentus failed to provide any reasonable basis for its public statements about the company. Defendants deny these allegations and the Settlement, as proposed, is entered into by Defendants without any admission of wrongdoing.

### B.    Initial Complaint and Lead Appointment Process

Beginning on July 15, 2021, three class action complaints were filed in the United States District Court for the Central District of California (the "Court"), styled *Jensen v. Stable Road Acquisition Corp.*, No. 2:21-cv-05744-JFW(SHKx); *Hall v. Stable Road Acquisition Corp.*, No. 2:21-cv-05943-JFW(SHKx); and *DePoy v. Stable Road Acquisition Corp.*, No. 2:21-cv-06287- JFW(SHKx). By Order dated October 20, 2021, the Court ordered that the cases be consolidated and recaptioned as *In re Stable Road Acquisition Corp. Securities Litigation*, No. 2:21-CV-5744-JFW(SHKx); appointed Hartmut Haenisch Lead Plaintiff for the consolidated action; and approved Lead Plaintiff's selection of Glancy Prongay & Murray LLP as Lead Counsel for the putative class.  ECF No. 75.

### C.    Lead Counsel's Investigation and the Amended Complaint

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Defendants' allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) SRAC and Momentus's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, press releases, blog posts, and news articles concerning SRAC and Momentus, (c) SRAC and Momentus's investor call transcripts, and (d) court filings and other publicly available material related to SRAC and Momentus, including the SEC's order with respect to certain Defendants and filings in its civil action against Mikhail Kokorich;

and (2) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, contacting former Momentus employees and other sources of relevant information.  Lead Counsel also consulted with a damages and loss causation expert.   On November 12, 2021, Lead Plaintiff filed and served the Amended Complaint based on the foregoing investigation.  ECF No. 94.

**D.    The Court Denies in Part the Motions to Dismiss the Amended Complaint**

On February 14, 2022, defendants Momentus and Harms filed a Motion to Dismiss the Amended Complaint.  ECF No. 122.  On that same day, defendant Kennedy filed a Motion to Dismiss the Amended Complaint.  ECF No. 124.  On February 25, 2022, defendants SRAC, Sponsor, Kabot, Hofmockel, Norris and Quiroga filed a Motion to Dismiss the Amended Complaint.  ECF No. 131.

On May 26, 2022, Lead Plaintiff filed and served his papers in opposition to the three Motions to Dismiss.  ECF Nos. 138-141.  On June 20, 2022, Defendants served their reply papers.  ECF Nos. 142-45.

On July 13, 2022, the Court granted in part, and denied in part, defendants' motions.  ECF No. 154.   Pursuant to the Court's July 13, 2022 Order, defendants Hofmockel, Norris, and Quiroga were dismissed from the litigation.  *Id.*

**E.    Lead Plaintiff Initiated Discovery Of Defendants**

On July 28, 2022 the Parties held their Rule 26(f) conference.  On August 2, 2022, defendants: (1) Momentus, Harms, and Kennedy;  and (2) SRAC, Sponsor, and Kabot, filed and served their Answers to the Amended Complaint.  ECF Nos. 160-161.  Thereafter, Lead Plaintiff initiated discovery.

Lead Plaintiff served his initial disclosures on Defendants, and reviewed Defendants' initial disclosures.  Lead Plaintiff propounded comprehensive requests for production on Defendants, and analyzed Defendants' responses and objections thereto.  Lead Plaintiff proposed search terms, date ranges, and document custodians for Defendants to search their electronically stored information.   Lead Plaintiff

drafted and sent to Defendants a proposed confidentiality order and discovery protocol.  While the Parties had agreed to explore a potential resolution of the Action, Lead Plaintiff remained prepared to vigorously press discovery if the Parties' efforts toward resolution were not successful.

### F.    Mediation Efforts and Settlement Negotiations

On October 17, 2022, Lead Counsel and Defendants' Counsel participated in a full-day mediation session before Jed Melnick, Esq. of JAMS.  In advance of that session, the Parties exchanged, and provided to Mr. Melnick, detailed mediation statements and exhibits, which addressed the issues of both liability and damages. The session ended without any agreement being reached.

Over the course of the next several months, Mr. Melnick conducted further discussions with the Parties, which culminated in Mr. Melnick making a mediator's recommendation to resolve the Action for $8,500,000 for the benefit of the Settlement Class, that the Parties accepted.  The agreement in principle to settle the Action that was memorialized in a term sheet (the "Term Sheet"), which was fully executed as of April 13, 2023, following several months of negotiations, including the involvement of the mediator.  The Term Sheet sets forth, among other things, the Parties' agreement to settle and release all claims asserted against Defendants in the Action in return for $8,500,000 to be paid on behalf of the Defendants by Momentus and/or the Corporate Defendants' insurers for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

In connection with the Parties' agreement in principle to settle the Action set forth in the Term Sheet, and in order to better enable Lead Counsel to evaluate the merits of the Action and the reasonableness of the proposed Settlement, Lead Counsel requested and Momentus has provided Lead Counsel with certain documents relating to the planned merger between SRAC and Momentus.  *See* Stipulation, at 5, ¶K.

The Stipulation was executed following months of additional negotiations, including further briefing for the mediator.

## III.   STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(e)

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented for Court approval, and be approved if the Court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).  Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.*  Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)   have the class representatives and class counsel adequately represented the class;
(B)   was the proposal negotiated at arm's length;
(C)   is the relief provided for the class adequate, taking into account:
    (i)   the costs, risks, and delay of trial and appeal;
    (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
    (iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and
    (iv)   any agreement required to be identified under Rule 23(e)(3); and
(D)   does the proposal treat class members equitably relative to each other.

These new factors are not exclusive, nor intended to displace any factor previously adopted by the courts. *See* Advisory Committee Notes to 2018 Amendments (324 F.R.D. 904, at 919).  The Ninth Circuit's traditional factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

(1) strength of the plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout the trial; (4) amount offered in settlement; (5) extent of discovery completed and stage of the proceeding; (6) experience and views of counsel; (7) presence of a government participant; and

(8) reaction of class members to the proposed settlement.[3]

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *accord Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Wong v. Arlo Techs., Inc.*, 2021 WL 1146042, at *6 (N.D. Cal. Mar. 25, 2021) (recognizing Rule 23(e)'s considerations "overlap with certain *Hanlon* factors.").[4]  As set forth below, the proposed Settlement satisfies the preliminary approval criteria under the Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Hanlon* factors.

## IV.   ARGUMENT

### A.   The Settlement Is Fair, Reasonable, and Adequate in Light of the Rule 23(e)(2) Factors and the Remaining *Hanlon* Factors

#### 1.   Lead Plaintiff and Lead Counsel Adequately Represented the Settlement Class

FED. R. CIV. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Hanlon*, 150 F.3d at 1020.

Here, Lead Plaintiff and Lead Counsel adequately represented the Settlement Class both during the litigation of this Action and its settlement.  Lead Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests; rather, Lead Plaintiff's interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members.  *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25,

---

[3] The Court does not yet have the benefit of the Settlement Class's reaction as notice of the proposed Settlement has not yet been provided to the Settlement Class.  There is no government participant.

[4] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Additionally, Lead Plaintiff worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for himself and the Settlement Class.

Lead Plaintiff also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. Lead Counsel have successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country. *See* ECF No. 46-5 (GPM firm résumé). Moreover, Lead Counsel vigorously prosecuted the Settlement Class's claims throughout the litigation, by conducting an extensive investigation of the claims through a detailed review of publicly available documents about the Company, as well as contacting former Momentus employees, drafting the detailed Amended Complaint, fully briefing and defeating in part three motions to dismiss, initiating discovery of Defendants, and obtaining an $8.5 million Settlement for the benefit of the Settlement Class. *PPG*, 2019 WL 3345714, at *3 (finding adequacy and noting that Lead Counsel [GPM] "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class's claims[.]").

### 2. The Settlement Is the Result of Arms'-Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B).[5] The Ninth Circuit, as well as courts in this District, "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement.

---

[5] Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Arlo*, 2021 WL 1146042, at *6 (citing *Hanlon*, 150 F.3d at 1026).

MEMORANDUM IN SUPPORT OF MOTION

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  Here, as detailed above, the Parties participated in a full-day mediation session with Mr. Melnick in October 2022.  The mediation negotiations continued for several months and culminated in a mediator's proposal that the Action be settled for $8.5 million.  The arm's-length nature of the extensive settlement negotiations and the involvement of a mediator with substantial experience mediating securities class actions support the conclusion that the Settlement is fair and was achieved free of collusion.  *See In re China Med. Corp. Sec. Litig.*, 2013 WL 12126754, at *7 (C.D. Cal. May 16, 2013) (finding the settlement, which was reached through mediation with mediator Mr. Melnick, weighed in favor of preliminary approval); *In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *8 (C.D. Cal. July 28, 2014) (approving settlement reached with the assistance of mediator, Mr. Melnick).

**3.      The Settlement Is an Excellent Result for the Settlement Class in Light of the Benefits of the Settlement and the Risks of Continued Litigation**

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors.  FED. R. CIV. P. 23(e)(2)(C).[6] As discussed below, each of these factors supports the Settlement's approval.

**(a)      The Strength of Lead Plaintiff's Case and Risk of Continued Litigation**

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class

---

[6] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor) and; the risks of maintaining class action status through the trial (third factor).  *Arlo*, 2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026).

members, including the immediacy and certainty of a recovery." *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

As the Court recognized in its motion to dismiss order, while Lead Plaintiff sufficiently pled certain of his fraud claims, the Court dismissed the claims against certain of the Individual Defendants. *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder…litigation to assess the risks involved."). Thus, Lead Plaintiff and Lead Counsel recognize that the risks of continued litigation were considerable.

Assuming, *arguendo*, that this Action were to proceed through summary judgment and trial, in order to defeat a summary judgment motion and to prevail at trial, Lead Plaintiff and Lead Counsel would have to prove, *inter alia*, that the statements and omissions were false and misleading, Defendants knew or were reckless in not knowing their statements and omissions were false and misleading at the time made, and that those statements and omissions were corrected and caused recoverable damages for the Settlement Class. Lead Plaintiff anticipates Defendants would present strong arguments challenging Lead Plaintiff's pleading and proof on all of those elements in their expected motion(s) for summary judgment and/or at trial, in particular as to causation and damages.

Defendants argued in their motion to dismiss, and would undoubtedly argue in a motion for summary judgment or at trial, that Lead Plaintiff failed to allege actionable misrepresentations under the federal securities laws. Defendants also would have almost certainly moved for summary judgment on the element of scienter. Proving scienter in a securities case is often the most difficult element of proof and one which is rarely supported by direct evidence or an admission. *See, e.g., Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *5 (N.D. Cal. Nov. 21, 2016).

Finally, even if Lead Plaintiff prevailed on liability and the Settlement Class

MEMORANDUM IN SUPPORT OF MOTION

was awarded damages, Defendants likely would appeal the verdict and award. The appeals process would have likely spanned several years including an appeal to the Ninth Circuit, and, potentially, an *en banc* review from the Ninth Circuit or a writ of certiorari to the Supreme Court, or both. During this time on potential appeals, the Settlement Class would receive no distribution of any damage award. In addition, an appeal of any judgment would carry the risk of reversal, in which case the Settlement Class would receive no recovery.[7]

### (b)    Risks of Maintaining Class Action Status

While Lead Plaintiff and Lead Counsel are confident that the Settlement Class meets the requirements for certification, *see* Sec. IV.B, *infra*, the class has not yet been certified, and Lead Plaintiff is aware that there is a risk the Court could disagree. Even if the Court were to certify the class, there is always a risk that the class could be decertified at a later stage in the proceedings. *See, e.g.*, *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1035, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class"). In their motions to dismiss, Defendants argued that the element of reliance cannot be presumed on the facts of this action. While Lead Plaintiff vigorously disputes that argument, Defendants undoubtedly would have challenged class certification on this and other bases if the case reached that stage. Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement.

### 4.    Rule 23(e)(2)(C)(ii)-(iv)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided

---

[7] *See Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ($81 million jury verdict for plaintiffs reversed on appeal on loss causation grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-*22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict for plaintiffs on liability, the district court granted defendants' motion for judgment as a matter of law), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

MEMORANDUM IN SUPPORT OF MOTION

for the class is adequate. FED. R. CIV. P. 23(e)(2)(C)(ii)-(iv). These factors weigh in support of the Settlement.

**Rule 23 (e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants is well-established and effective. Here, Strategic Claims Services ("SCS"), the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any Claim deficiencies or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Lead Plaintiff nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[8]

**Rule 23(e)(2)(C)(iii):** As disclosed in the Notice and Summary Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving fee equal to 33% percent of a $12 million settlement fund). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may

---

[8] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶13.

not be terminated based on any ruling with respect to attorneys' fees.  *See* Stipulation ¶16.

**Rule 23(e)(2)(C)(iv):**  The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members totaling a certain percentage of SRAC Securities purchased during the Settlement Class Period request exclusion (or "opt out") from the Settlement.[9]  "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co. v. Yun Ma*, 2019 WL 5257534, at *1 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, 2020 WL 763277 (2d Cir. Jan. 2, 2020).

**5.    The Settlement Treats All Class Members Equitably Relative To Each Other**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another.  The Settlement easily satisfies this standard.  Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund.  Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.  *See Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it 'fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths

---

[9] "SRAC Securities" are defined in the Stipulation to mean publicly traded SRAC units, publicly traded SRAC Class A common stock, and publicly traded SRAC warrants. Stipulation, ¶1(zz).

and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'").

### 6.    The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval

*Hanlon* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors.[10]  These factors, viewed in light of the Rule 23(e)(2) factors identified above, support preliminary approval.

**The Amount Offered in Settlement:** "To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs' expected recovery against the value of the settlement offer.'"  *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *9 (N.D. Cal. Sept. 4, 2018).  The $8.5 million Settlement Amount is within the range of reasonableness under the circumstances so as to warrant preliminary approval of the Settlement and the issuance of notice to the Settlement Class.  Pursuant to the proposed Plan of Allocation, the estimated average recovery, before deducting Court-approved fees and expenses and notice and claims administration costs, will be approximately $0.40 per eligible SRAC Security.  *See* Stipulation Ex. A-1 (the "Notice"), at ¶3.

The $8.5 million recovery represents approximately 10.5% of estimated maximum damages of approximately $80.5 million under the proposed Plan of Allocation in this Action—Lead Plaintiff's best-case scenario—assuming that: (i) the Court certified the same class period as the Settlement Class Period; (ii) Lead Plaintiff survived summary judgment on all elements and also convinced a jury that liability was proven; and (iii) the trier of fact accepted Lead Plaintiff's damages theory.  This recovery is *more than two and a half times* the typical recovery for

---

[10] Although courts within the Ninth Circuit have recognized that Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, such as the extent of discovery completed and the experience and view of counsel, these factors are briefed below for thoroughness.

cases of a similar magnitude.  *See, e.g.,* Sadler Decl., Ex. 2 (excerpt from Janeen McIntosh, Svetlana Starykh, and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* (NERA Jan. 24, 2023), at p. 17 (Fig. 18) (median recovery was 3.8% for securities class actions with estimated damages between $50-$100 million that were filed and settled between December 2011-December 2022)).  And, of course, less than a complete victory on any aspect of the aforementioned assumptions would decrease recoverable damages or eliminate them altogether, and each element at issue was strongly contested by Defendants.

In the light of the risks of continued litigation, the percentage of recovery is reasonable.  Indeed, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair."  *Officers for Justice v. Civ. Serv. Comm.*, 688 F.2d 615, 628 (N.D. Cal. 1982).

**The Stage of the Proceedings and Extent of Discovery Completed:** The fact that formal discovery was in its early stages does not weigh against preliminary approval.  *E.g.*, *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, WL 6248426, at *13-*14 (N.D. Cal. Oct. 25, 2016) (formal discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement").  Here, Lead Plaintiff conducted an extensive investigation of SRAC and Momentus, including contacting former employees and analyzing numerous publicly available documents. Moreover, Lead Plaintiff engaged in substantial briefing on three motions to dismiss, and the Parties exchanged detailed mediation briefs and participated in a mediation process in conjunction with an experienced mediator.  *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly available information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the ... industry.  The Court

finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement."). Therefore, Lead Plaintiff had a thorough understanding of the strengths and risks of this Action.

**The Experience and Views of Counsel:**  Courts also give weight to the opinion of experienced and informed counsel supporting the settlement.  *See, e.g.*, *Stewart v. Applied Materials, Inc.*, 2017 WL 3670711, at *6 (N.D. Cal. Aug. 25, 2017).  Here, Lead Counsel has extensive experience in securities litigation and has obtained a thorough understanding of the merits and risks of the Action.  Lead Counsel's belief in the fairness and reasonableness of this Settlement supports preliminary approval.  Defendants have been vigorously represented by Kirkland & Ellis LLP, Baker & McKenzie LLP, Wilson Elser Moskowitz Edelman & Dicker LLP, Stoner Carlson LLP, and Winston & Strawn LLP, throughout the Action and settlement negotiations.  Counsel for Defendants is equally well-informed regarding the case, and their representation of Defendants was just as rigorous as Lead Counsel's representation of the Settlement Class.  Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and a highly qualified mediator, preliminary approval is warranted.

## B.    Class Certification is Appropriate for Settlement Purposes

At the Settlement Hearing, the Court will be asked to grant final approval to the Settlement on behalf of the Settlement Class.  Thus, it is appropriate for the Court to consider, at the preliminary approval stage and solely for purpose of the Settlement, whether the certification of the Settlement Class appears to be appropriate.  *Hanlon*, 150 F.3d at 1019.  Rule 23(a) sets forth four prerequisites to class certification: (i) numerosity; (ii) commonality; (iii) typicality; (iv) adequacy of representation.  *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010).  In addition, the court must find that at least one of the three conditions of Rule 23(b) is satisfied.  *Id*.  Under subsection (b)(3), the Court must find the questions of law or fact common to the members of the class predominate over any

questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Id.*; *Jaffe v. Morgan Stanley & Co., Inc.*, 2008 WL 346417, at *7 (N.D. Cal. Feb. 7, 2008).

The proposed Settlement Class consists of "all persons and entities that purchased or otherwise acquired SRAC Securities between October 7, 2020 and July 13, 2021, inclusive ('Settlement Class Period'), and were damaged thereby." Stipulation, ¶1(ss).[11]  Lead Plaintiff believes this Action satisfies all the factors for certification of a Settlement Class.[12]  The Ninth Circuit and numerous courts within the Ninth Circuit have held that class actions are generally favored in securities fraud actions.  *See, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 902-03 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).[13]

---

[11] Excluded from the Settlement Class are: (i) Defendants; (ii) any person who served as an executive officer and/or director of the Corporate Defendants during the Settlement Class Period (including Edward Freedman, Ann Kono, and Marc Lehmann), and members of their Immediate Family; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Corporate Defendants; (iv) any entity in which Defendants have or had a controlling interest during the Settlement Class Period; (v) any trust of which any Individual Defendant is the settlor or that is for the benefit of any Individual Defendant and/or member(s) of their Immediate Family; (vi) John Rood, and his Immediate Family; and (vii) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof.  Also excluded from the Settlement Class are any persons and entities who or that validly exclude themselves by submitting a request for exclusion that is accepted by the Court.

[12] "Whether trial would present intractable management problems, *see* Rule 23(b)(3)(D), is not a consideration when settlement−only certification is requested, for the proposal is that there be no trial." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 593 (1997).

[13] "[T]he Ninth Circuit and courts in this district hold a liberal view of class actions in securities litigation." *In re Adobe Sys., Inc. Sec. Litig.*, 139 F.R.D. 150, 152-53 (N.D. Cal. 1991); *see also In re Cooper Cos. Sec. Litig.*, 254 F.R.D. 628, 642 (C.D. Cal. 2009) ("'Rule 23 is . . . liberally construed in a securities fraud context because (footnote continued)

### 1.    The Settlement Class is Sufficiently Numerous

To meet the requirement of numerosity, one need only show that it is impractical to join all members of the class. *Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-914 (9th Cir. 1964).  Impracticable does not mean impossible, only that it would be difficult or inconvenient to join all members of the class.  *Id.*  Lead Counsel estimates that there were hundreds, if not thousands, of purchasers of SRAC Securities during the Settlement Class Period. The threshold presumption of impracticability of joinder is thus easily exceeded.  *See, e.g. Barnes v. AT&T Pension Benefit Plan*, 270 F.R.D. 488, 493 (N.D. Cal. 2010) ("'As a general rule, classes numbering greater than forty individuals satisfy the numerosity requirement.'").

### 2.    Common Questions of Law or Fact Exist

In order to maintain a class action, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Commonality is satisfied if there is one issue common to the class members. *Hanlon*, 150 F.3d at 1019.  Generally, courts have liberally construed the commonality prerequisite, requiring only that "the named plaintiffs share at least one question of fact or law with the grievances of the proposed class." *Siemer v. Assocs. First Capital Corp.*, 2001 WL 35948712, at *14 (D. Ariz. March 30, 2001).  Not all questions of fact and law need be common to satisfy Rule 23(a)(2).  *Hanlon*, 150 F.3d at 1019.  This factor is "construed permissively, and '[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class.'" *Id.* at 1019.  Rule 23(a)(2) is satisfied here.  Lead

class actions are particularly effective in serving as private policing weapons against corporate wrongdoing.'"); *In re Verisign, Inc. Sec. Litig.*, 2005 WL 7877645, at *9 (N.D. Cal. Jan. 13, 2005) ("Class actions are particularly well-suited in the context of securities litigation, wherein geographically dispersed shareholders with relatively small holdings would otherwise have difficulty in challenging wealthy corporate defendants.").

Plaintiff's claims that Defendants violated the federal securities laws by omitting and/or misrepresenting material facts about Momentus's business, operations, and prospects in publicly disseminated statements during the Settlement Class Period unquestionably raise issues of common interest to the Settlement Class.

### 3. Lead Plaintiff's Claims Are Typical of Those of the Settlement Class

Like other Settlement Class Members, Lead Plaintiff alleges that he purchased SRAC Securities during the Settlement Class Period and was subsequently damaged due to Defendants' conduct. The other members of the Settlement Class were allegedly affected in the same way.

Similarly, the interest of Lead Plaintiff in obtaining a fair, reasonable, and adequate settlement of the claims asserted is identical to the interests of the remaining Settlement Class Members. Under the proposed Plan of Allocation, Lead Plaintiff will receive the same *pro rata* share of the Settlement Fund as the rest of the Settlement Class. Accordingly, the typicality requirement is met. *In re Bridgepoint Educ., Inc. Sec. Litig.*, 2015 WL 224631, at *5 (S.D. Cal. Jan. 15, 2015) ("Here, Plaintiffs' claims arise from the same events and conduct that gave rise to the claims of other class members. They are, therefore, typical of the class.").

### 4. Lead Plaintiff and Lead Counsel Adequately Represent the Settlement Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The two key inquiries are (1) whether there are conflicts within the class; and (2) whether plaintiffs and counsel will vigorously fulfill their duties to the class. The adequacy inquiry also 'factors in competency and conflicts of class counsel.'" *In re Diamond Foods, Inc.*, 295 F.R.D. 240, 252 (N.D. Cal. 2013).

As explained in Sec. IV.A.1, *supra*, Lead Plaintiff and Lead Counsel are adequate representatives. First, Lead Plaintiff and Settlement Class Members purchased SRAC Securities during the Settlement Class Period, and were all injured

by Defendants' allegedly materially false statements.  If Lead Plaintiff was to prove his claims at trial, he would also prove the Settlement Class's claims.  *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (investor class "will prevail or fail in unison" because claims are based on common misrepresentations).  Thus, the interests of Lead Plaintiff and other members of the Settlement Class are aligned, as they share the common objective of maximizing their recovery from Defendants.  *PPG*, 2019 WL 3345714, at *3 ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members.").

Second, Lead Plaintiff has demonstrated his commitment to this litigation by retaining qualified counsel.  Lead Counsel has extensive experience and expertise litigating securities class actions.  *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding "Lead Counsel has also adequately represented the class.  [GPM] has significant experience in securities class action lawsuits.").

### 5. The Predominance and Superiority Requirements Are Satisfied

Under Rule 23(b)(3), a class may be certified if a court finds that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.  Here, the proposed Settlement Class satisfies the requirements of Rule 23(b)(3) in that, as described above, the questions of law or fact common to the members of the Settlement Class predominate over any questions affecting individual members.  Moreover, damages suffered by members of the Settlement Class are not sufficient to make it economical to prosecute separate actions in order to recover individual losses sustained as a result of Defendants' alleged violations of the securities laws.  *Amchem Prods.*, 521 U.S. at 617 ("The policy at the very core

of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action. . . . A class action solves this problem[.]").  Accordingly, a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

In securities claims, it is common for factual variations among shareholders related to stock transaction dates and sizes, "sophistication of investors and degree of reliance" to exist, but common questions of fact related to misrepresentation claims "will predominate over the individual issues."  *Persky v. Turley*, 1991 WL 329564, at *3 (D. Ariz. Dec. 20, 1991).

**6.    The Court Should Appoint Lead Counsel as Counsel for the Class**

A court that certifies a class must also appoint class counsel.  *See* FED. R. CIV. P. 23(g).  The Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class."  FED. R. CIV. P. 23(g)(1)(A).

GPM was appointed Lead Counsel in October 2021 (ECF No. 75), and since that time the firm has devoted substantial time, effort, and resources to identifying, investigating, litigating and settling the claims in this matter.  Moreover, as explained in Sec. IV.A.1, *supra*, GPM has substantial experience prosecuting securities class actions.  For these reasons, among others, Lead Plaintiff respectfully requests that the Court appoint GPM to serve as Class Counsel.

**C.    The Court Should Approve the Proposed Form and Method of Notice**

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval the Claims Administrator will mail the Notice and Claim Form (Exhibits 1 and 2 to the Preliminary Approval Order) to all Settlement Class Members who can be identified with reasonable effort, including through the

records maintained by Defendants of SRAC Securities holders during the Settlement Class Period.[14]   The Claims Administrator will also utilize a proprietary list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice. The Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses.   The Notice also will provide specifics on the date, time and place of the Settlement Hearing and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation and/or the application for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class.   In addition to the mailing of the Notice and Claim Form, the Summary Notice will be published in *Investor's Business Daily* and transmitted once over the *PR Newswire*.

The proposed form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA.

## V.    PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing the Notice and publication of the Summary Notice, and deadlines for submitting claims or for opting out of, or objecting to, the Settlement.   The Parties respectfully propose the following schedule for the Court's consideration, as agreed to by the Parties and set forth in the proposed Preliminary Approval Order ("Prelim. Appr. Order"):

---

[14] Lead Plaintiff requests that the Court approve retention of Strategic Claims Services, as the claims administrator for this case.   SCS has successfully administered numerous complex securities class action settlements. *See Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at *14 (S.D.N.Y. Oct. 16, 2019) (SCS served as claims administrator in $250 million securities class action settlement); *In re Priceline.com, Inc. Sec. Litig.*, 2007 WL 2115592, at *3 (D. Conn. July 20, 2007) (SCS served as claims administrator for $80 million settlement).

MEMORANDUM IN SUPPORT OF MOTION

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice to Settlement Class Members (which date shall be the "Notice Date") (Prelim. Appr. Order ¶7(b)) | Not later than 20 business days after entry of Prelim. Appr. Order |
| Deadline for publishing the Summary Notice (Prelim. Appr. Order ¶7(d)) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Prelim. Appr. Order ¶26) | Not later than 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests and objections (Prelim. Appr. Order ¶¶13, 17) | Not later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Prelim. Approval Order ¶26) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Prelim. Appr. Order ¶10) | 120 calendar days after the Notice Date |
| Settlement Hearing | Not earlier than 120 calendar days after entry of the Prelim. Appr. Order, or at the Court's earliest convenience thereafter |

Lead Plaintiff requests that the Court schedule the Settlement Hearing for a date 120 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter.  As this motion is unopposed, Lead Plaintiff requests that the Court consider this motion for preliminary approval on the papers at this time.

## VI.   CONCLUSION

For the foregoing reasons, Lead Plaintiff respectfully requests that the Court grant the unopposed motion for preliminary approval of the Settlement, approve the forms and methods of notice, and enter the proposed Preliminary Approval Order.

Dated: August 30, 2023

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Casey E. Sadler*
Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Casey E. Sadler (SBN 274241)
  *csadler@glancylaw.com*
Charles Linehan (SBN 307439)
  *clinehan@glancylaw.com*
Garth Spencer (SBN 335424)
  *gspencer@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Hartmut Haenisch*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007
Email: fcruz@frankcruzlaw.com

*Additional Counsel*

MEMORANDUM IN SUPPORT OF MOTION

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Lead Plaintiff Hartmut Haenisch, certifies that this brief contains 7,392 words, which complies with the word limit of L.R. 11-6.1.

DATED: August 30, 2023          *s/ Casey E. Sadler*
                                 Casey E. Sadler

**PROOF OF SERVICE BY ELECTRONIC POSTING**

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old.  On August 30, 2023, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on August 30, 2023, at Los Angeles, California.

*s/ Casey E. Sadler*
Casey E. Sadler