Robert V. Prongay (SBN 270796)
 *rprongay@glancylaw.com*
Casey E. Sadler (SBN 274241)
 *csadler@glancylaw.com*
Garth Spencer (SBN 335424)
 *gspencer@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Hartmut Haenisch*
[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| IN RE STABLE ROAD ACQUISITION CORP. SECURITIES LITIGATION | Case No. 2:21-CV-5744-JFW(SHKx) |
|---|---|
| | Honorable John F. Walter |
| | **LEAD PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION** |
| | Hearing Date: April 22, 2024<br>Hearing Time: 1:30 p.m.<br>Location: W. 1st Street, Courtroom 7A |

# TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ..................................................................................1

II.   HISTORY OF THE LITIGATION .............................................................................3

III.  STANDARDS GOVERNING FINAL APPROVAL ....................................................3

IV.   THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE ...........5

    A.   Lead Plaintiff And Lead Counsel Have Adequately Represented The Settlement Class ........................................................................................5

    B.   The Settlement Is The Result Of Arms'-Length Negotiations ...............6

    C.   The Settlement Is An Excellent Result For The Settlement Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation ...........................................................................................7

        1.   The Strength of Lead Plaintiff's Case and Risk of Continued Litigation..........................................................................................8

        2.   Risks of Maintaining Class Action Status .................................10

    D.   Rule 23(e)(2)(C)(ii)-(iv) ...................................................................11

    E.   The Settlement Treats All Class Members Equitably Relative To Each Other..................................................................................................13

    F.   The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Final Approval.........................................................................................13

V.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE ........................................................................................18

VI.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED..........21

VII.  NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS ..............................21

VIII. CONCLUSION ......................................................................................22

# TABLE OF AUTHORITIES

<u>CASES</u>

*Christine Asia Co., Ltd. v. Yun Ma*,
  2019 WL 5257534 (S.D.N.Y., 2019) ........................................................................9, 12

*City of Omaha Police & Fire Ret Sys. v. LHC Grp.*,
  2015 WL 965693 (W.D. La. March 2, 2015).................................................................20

*Franklin v. Kaypro*,
  884 F.2d 1222 (9th Cir. 1989) ......................................................................................4

*Gross v. GFI Grp., Inc.*,
  784 F. App'x. 27 (2d Cir. Sept. 13, 2019)...................................................................10

*Gudimetla v. Ambow Education Holding*,
  2015 WL 12752443 (C.D. Cal. Mar. 16, 2015) ....................................................14, 15

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ....................................................................5, 7, 8, 17

*Hayes v. MagnaChip Semiconductor Corp.*,
  2016 WL 6902856 (N.D. Cal. Nov. 21, 2016).......................................................9, 10

*Hefler v. Wells Fargo & Co.*,
  2018 WL 4207245 (N.D. Cal. Sept. 4, 2018)...............................................................14

*Hefler v. Wells Fargo & Co.*,
  2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...............................................................5

*In re Amgen Inc. Sec. Litig.*,
  2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) .........................................................5, 9

*In re BankAtlantic Bancorp, Inc.*,
  2011 WL 1585605 (S.D. Fla. Apr. 25, 2011)...............................................................10

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011) ........................................................................................7

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
  2016 WL 4474366 (N.D. Cal. Aug. 25, 2016)............................................................12

*In re China Medicine Corp. Sec. Litig.*,
2014 WL 12581781 (C.D. Cal. Jan. 7, 2014)..........................................................7

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005)..........................................16, 18, 20

*In re LJ Int'l, Inc. Sec. Litig.*,
2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) ...............................................15, 16

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009).......................................................18

*In re Omnivision Tech., Inc.*,
559 F. Supp. 2d 1035 (N.D. Cal. 2008)................................................................11

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007).....................................................16, 17, 18

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) .................................................................................12

*In re Par Pharm. Sec. Litig.*,
2013 WL 3930091 (D.N.J. July 29, 2013) ...........................................................18

*In re Regulus Therapeutics Inc. Sec. Litig.*,
2020 WL 6381898 (S.D. Cal. Oct. 30, 2020).......................................................13

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ...............................................................................3

*In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*,
364 F. Supp. 2d 980 (D. Minn. 2005) ....................................................................8

*In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*,
2016 WL 6248426 (N.D. Cal. Oct. 25, 2016) ......................................................15

*Knapp v. Art.com, Inc.*,
283 F. Supp. 3d 823 (N.D. Cal. 2017)....................................................................8

*Mauss v. NuVasive, Inc.*,
2018 WL 6421623 (S.D. Cal. Dec. 12, 2018) ......................................................21

*Mild v. PPG Indus., Inc.*,
2019 WL 3345714 (C.D. Cal. July 25, 2019) ........................................................6

MEMORANDUM IN SUPPORT OF MOTION

*Nat'l Rural Telecomm. Coop. v. DirecTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004)....................................................................16

*New York State Teachers' Ret. Sys. v. Gen. Motors Co.*,
  315 F.R.D. 226 (E.D. Mich. 2016) ................................................................12

*Robbins v. Koger Props., Inc.*,
  116 F.3d 1441 (11th Cir. 1997) .....................................................................10

*Rodriquez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ........................................................................4, 7

*Schueneman v. Arena Pharm., Inc.*,
  2020 WL 3129566 (S.D. Cal. June 12, 2020) ...............................................20

*Shapiro v. JPMorgan Chase & Co.*,
  2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014)................................................14

*Vaccaro v. New Source Energy Partners L.P.*,
  2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017)................................................15

*Vikram v. First Student Management, LLC*,
  2019 WL 1084169 (N.D. Cal. March 7, 2019) ..............................................14

*Wong v. Arlo Techs., Inc.*,
  2021 WL 1146042 (N.D. Cal. Mar. 25, 2021) ..........................................5, 7, 8

*Yang v. Focus Media Holding Ltd.*,
  2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ................................................13

STATUTES

15 U.S.C. § 78u-4(a)(7) ......................................................................................21

RULES

Fed. R. Civ. P. 23...................................................................................*passim*

In accordance with Rule 23(e)(2) of the Federal Rules of Civil Procedure, Court-appointed lead plaintiff Hartmut Haenisch ("Lead Plaintiff"), on behalf of himself and the Settlement Class, respectfully submits this memorandum in support of his motion for: (1) final approval of the proposed Settlement resolving the above-captioned action (the "Action"); and (2) approval of the proposed plan of allocation of the proceeds of the Settlement.[1]

## I.   PRELIMINARY STATEMENT

The Parties have reached a proposed Settlement of the above-captioned Action that resolves all claims against Defendants in exchange for a non-reversionary cash payment of $8,500,000. Lead Plaintiff respectfully submits that this Settlement represents an excellent result for the Settlement Class, especially given the risks, costs, and delays of continued litigation, as well as the precarious financial position of Momentus and the limited D&O insurance available to fund a settlement. Momentus issued a going concern warning in its 10-Q for the quarter ended March 31, 2023, and has done so every quarter since, received a notice of delisting from NASDAQ on March 20, 2023 because its stock had been trading for under $1.00 for 30 consecutive days, and as of close of the market on March 14, 2024, has a current market capitalization of approximately $5.9 million, which is significantly less than the amount of the Settlement. Moreover, this is one of the rare cases in which Lead Plaintiff was able to recover more than all of the available insurance policies. And Lead Plaintiff was required to move the Court to compel Momentus and/or the Corporate Defendants' insurers to comply with the terms of the Stipulation and fully fund the Settlement. *See* ECF Nos. 185-193. In short, even if this litigation were to

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation and Agreement of Settlement dated August 18, 2023 (the "Stipulation") (ECF No. 178-1), or the concurrently filed Declaration of Casey E. Sadler (the "Sadler Declaration"). Citations herein to "¶__" and "Ex. __" refer, respectively, to paragraphs in, and exhibits to, the Sadler Declaration.

continue, it is highly doubtful Lead Plaintiff and the Settlement Class would recover more than the Settlement Amount.  The Settlement is, therefore, substantively fair, reasonable and adequate.

The Settlement was also reached through a procedurally fair process.  By the time the Settlement was reached, Lead Plaintiff and his counsel were well informed about the strengths and weaknesses of their claims and Defendants' defenses.  Prior to reaching the Settlement, Lead Counsel, *inter alia*:

- conducted an extensive investigation into Defendants' allegedly wrongful acts, which included working with a private investigator to locate and interview former Momentus employees and consultation with an expert in the fields of loss causation and damages;

- drafted the 103-page Amended Complaint (plus exhibits) based on the research and investigation;

- engaged in substantial briefing opposing Defendants' three motions to dismiss;

- initiated discovery of Defendants, which included, among other things, propounding comprehensive requests for production, proposing parameters for Defendants to search their electronically stored information, and drafting a confidentiality order and discovery protocol;

- engaged in an adversarial mediation process, which involved: (i) preparing a detailed mediation statement addressing liability, loss causation, and damages, along with exhibits; (ii) reviewing and analyzing Defendants' mediation statements; and (iii) participating in an unsuccessful full-day mediation session with an experienced and highly respected mediator of complex cases—Jed Melnick, Esq. of JAMS—followed by months of additional negotiations, which resulted in the acceptance of a mediator's recommendation to settle;

- engaged in extensive negotiations related to the Stipulation and its exhibits prior to its execution, including two further engagements of the mediator; and

- reviewed documents produced by Momentus, which consisted of Momentus' Board of Directors materials, internal emails, and other documents relating to the planned merger between SRAC and Momentus, to confirm Lead Plaintiff and Lead Counsel's belief that the Settlement is fair, reasonable, and adequate.  ¶10.

The $8.5 million Settlement is, therefore, the result of arm's-length negotiations conducted by experienced counsel, with the assistance of a well-respected mediator, and with sufficient information to evaluate the Settlement in light

MEMORANDUM IN SUPPORT OF MOTION

of the risks and uncertainties of continued litigation, including material questions as to causation, damages, and ability to pay.

As discussed in greater detail below, Lead Plaintiff and his counsel believe that the proposed Settlement meets the standards for final approval and is in the best interests of the Settlement Class. Consequently, Lead Plaintiff respectfully requests that the Court grant the Settlement final approval.

Lead Plaintiff also moves for approval of the proposed Plan of Allocation of the Net Settlement Fund. The Plan of Allocation was developed in conjunction with Lead Plaintiff's consulting damages expert and distributes the proceeds of the Net Settlement Fund fairly and equitably to Settlement Class Members. Accordingly, it should be approved.

## II.   HISTORY OF THE LITIGATION

The Sadler Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a more fulsome description of, *inter alia*, the factual history of the Action and nature of the claims asserted; the work done by Lead Plaintiff and Lead Counsel to prosecute the Action; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; and the terms of the Plan of Allocation.

## III.   STANDARDS GOVERNING FINAL APPROVAL

Federal Rule of Civil Procedure 23(e) requires judicial approval for any compromise or settlement of class action claims and states that a class action settlement should be approved if the court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2). In the Ninth Circuit and throughout the country, "there is a strong judicial policy that favors settlements particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir.

MEMORANDUM IN SUPPORT OF MOTION

2008).[2]  Moreover, courts should defer to "the private consensual decision of the parties" to settle (*Rodriquez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)) and advance the "overriding public interest in settling and quieting litigation." *Franklin v. Kaypro*, 884 F.2d 1222, 1229 (9th Cir. 1989).

Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)   have the class representatives and class counsel adequately represented the class;
(B)   was the proposal negotiated at arm's length;
(C)   is the relief provided for the class adequate, taking into account:
  (i)   the costs, risks, and delay of trial and appeal;
  (ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
  (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
  (iv)  any agreement required to be identified under Rule 23(e)(3); and
(D)   does the proposal treat class members equitably relative to each other.

Factors (A) and (B) "identify matters . . .  described as procedural concerns, looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement," while factors (C) and (D) "focus on . . . a substantive review of the terms of the proposed settlement" (*i.e.*, "[t]he relief that the settlement is expected to provide to class members"). FED. R. CIV. P. 23(e) Advisory Committee Notes to 2018 Amendments, 324 F.R.D. 904, at 919.

These factors do not "displace" any previously adopted factors, but "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.*, 324 F.R.D. at 918. "Accordingly, the Court [should] appl[y] the framework set forth in Rule 23, while

---

[2] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

continuing to draw guidance from the Ninth Circuit's factors and relevant precedent." *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *4 (N.D. Cal. Dec. 18, 2018).

Prior to the Rule 23(e)(2) amendment, courts in the Ninth Circuit considered the following "*Hanlon* factors" (certain of which overlap with Rule 23(e)(2)):

> (1) strength of the plaintiff's case; (2) risk, expense, complexity, and likely duration of further litigation; (3) risk of maintaining class action status throughout the trial; (4) amount offered in settlement; (5) extent of discovery completed and stage of the proceeding; (6) experience and views of counsel; (7) presence of a government participant; and (8) reaction of class members to the proposed settlement.[3]

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998); *see also Wong v. Arlo Techs., Inc.*, 2021 WL 1146042, at *6 (N.D. Cal. Mar. 25, 2021) (recognizing Rule 23(e)'s considerations "overlap with certain *Hanlon* factors.").

As explained below and in the Sadler Declaration, application of each of the four factors specified in Rule 23(e)(2), and the relevant, non-duplicative *Hanlon* factors, demonstrates that the Settlement merits final approval.

## IV.    THE SETTLEMENT IS FAIR, REASONABLE, AND ADEQUATE

### A.    Lead Plaintiff And Lead Counsel Have Adequately Represented The Settlement Class

FED. R. CIV. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class." "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020.

Here, Lead Plaintiff and Lead Counsel adequately represented the Settlement Class both during the litigation of this Action and its settlement.  Lead Plaintiff's

---

[3] "Because no government entities are participants in this case, this factor is neutral." *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *4 (C.D. Cal. Oct. 25, 2016).

claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests; rather, Lead Plaintiff's interest in obtaining the largest possible recovery in this Action is aligned with the other Settlement Class Members. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Additionally, Lead Plaintiff worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for himself and the Settlement Class. *See* Ex. 5 (Declaration of Lead Plaintiff).

Lead Plaintiff also retained counsel who are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. Lead Counsel have successfully prosecuted securities class actions and complex litigation in federal and state courts throughout the country. *See* Ex. 6 (firm résumé). Moreover, Lead Counsel vigorously prosecuted the Settlement Class's claims throughout the litigation by, *inter alia*, conducting an extensive investigation of the claims through a detailed review of publicly available documents about the Company, as well as contacting former Momentus employees, drafting the detailed 103-page Complaint, fully briefing and defeating in part three motions to dismiss, initiating discovery of Defendants, obtaining an $8.5 million Settlement for the benefit of the Settlement Class, and moving to enforce the Stipulation and funding requirements. *PPG*, 2019 WL 3345714, at *3 (finding adequacy and noting that Lead Counsel GPM "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class's claims[.]").

**B.     The Settlement Is The Result Of Arms'-Length Negotiations**

The Court must also consider whether the settlement "was negotiated at arm's

length." FED. R. CIV. P. 23(e)(2)(B).[4]   The Ninth Circuit, as well as courts in this District, "put a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution" in approving a class action settlement. *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).   Here, the Parties participated in a full-day mediation session with Mr. Melnick in October 2022.   The mediation negotiations continued for several months and culminated in a mediator's proposal.   The arm's-length nature of the extensive settlement negotiations and the involvement of a mediator with substantial experience support the conclusion that the Settlement is fair and was achieved free of collusion. *See In re China Medicine Corp. Sec. Litig.*, 2014 WL 12581781, at *5 (C.D. Cal. Jan. 7, 2014) ("Mr. Melnick's involvement in the settlement supports the argument that it is non-collusive.").

It is also important to note that the Settlement has none of the indicia of collusion identified by the Ninth Circuit. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) ("subtle signs" of collusion include a "disproportionate distribution of the settlement" between the class and class counsel, "a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," or an agreement for "fees not awarded to revert to defendants rather than be added to the class fund").

For these reasons, the Settlement satisfies the "procedural" fairness inquiry.

**C.    The Settlement Is An Excellent Result For The Settlement Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation**

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay

---

[4] Rule 23(e)(2)(A)-(B)'s considerations overlap with certain *Hanlon* factors, "such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings." *Arlo*, 2021 WL 1146042, at *6 (citing *Hanlon*, 150 F.3d at 1026).

of trial and appeal" along with other relevant factors.  FED. R. CIV. P. 23(e)(2)(C).[5] As discussed below, each of these factors supports the Settlement's approval.

### 1.    The Strength of Lead Plaintiff's Case and Risk of Continued Litigation

In assessing whether the proposed Settlement is fair, reasonable, and adequate, the Court "must balance the risks of continued litigation, including the strengths and weaknesses of plaintiff's case, against the benefits afforded to class members, including the immediacy and certainty of a recovery."  *Knapp v. Art.com, Inc.*, 283 F. Supp. 3d 823, 831 (N.D. Cal. 2017).

As the Court recognized in its motion to dismiss order, while Lead Plaintiff sufficiently pled certain of his fraud claims, the Court dismissed the claims against certain of the Individual Defendants.  *See In re Xcel Energy, Inc., Sec., Deriv. & "ERISA" Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder…litigation to assess the risks involved.").  Thus, Lead Plaintiff and Lead Counsel recognize that the risks of continued litigation were considerable.

Assuming, *arguendo*, that this Action were to proceed through summary judgment and trial, in order to defeat a summary judgment motion and to prevail at trial, Lead Plaintiff and Lead Counsel would have to prove, *inter alia*, that the statements and omissions were false and misleading, Defendants knew or were reckless in not knowing their statements and omissions were false and misleading at the time made, and that those statements and omissions were corrected and caused recoverable damages for the Settlement Class.  Lead Plaintiff anticipates Defendants would present strong arguments challenging Lead Plaintiff's pleading and proof on

---

[5] Rule 23(e)(2)(C)(i) essentially incorporates three of the traditional *Hanlon* factors: the strength of plaintiff's case (first factor); the risk, expense, complexity, and likely duration of further litigation (second factor); and the risks of maintaining class action status through the trial (third factor).  *Arlo*, 2021 WL 1146042, at *8 (citing *Hanlon*, 150 F.3d at 1026).

MEMORANDUM IN SUPPORT OF MOTION

all of those elements in their expected motion(s) for summary judgment and/or at trial, in particular as to causation and damages.

Defendants argued in their motion to dismiss, and would undoubtedly argue in a motion for summary judgment and/or at trial, that Lead Plaintiff failed to allege actionable misrepresentations under the federal securities laws.  Defendants also would have almost certainly moved for summary judgment on the element of scienter. Proving scienter in a securities case is often the most difficult element of proof and one which is rarely supported by direct evidence or an admission.  *See*, *e.g.*, *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at \*5 (N.D. Cal. Nov. 21, 2016); *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at \*12 (S.D.N.Y., 2019) ("Proving scienter is hard to do.").

Moreover, Defendants argued, and would continue to contest, loss causation and damages.  For instance, Momentus defendants argued in their motion to dismiss that (i) "[a]ny attempt to plead loss causation here is undercut by the fact that Stable Road's stock price actually *increased* significantly after one of Plaintiff's alleged corrective disclosures"; and (ii) that "announcement and commencement of a regulatory investigation does not constitute a 'corrective disclosure' for purposes of loss causation." ECF No. 122, at p.23 (emphasis in the original).  While Lead Plaintiff believes he would ultimately be successful in establishing loss causation and damages, defenses to these elements pose substantial risks to a plaintiff's potential recovery at trial because each side would have presented expert testimony on the issue, requiring a jury to decide a so-called "battle of the experts." *See Amgen*, 2016 WL 10571773, at \*3 ("Courts have recognized that, in a 'battle of experts,' the outcome cannot be guaranteed.").

Even if Lead Plaintiff prevailed on liability and the Settlement Class was awarded damages, Defendants likely would appeal the verdict and award.  The appeals process would have likely spanned several years including an appeal to the Ninth Circuit, and, potentially, an *en banc* review from the Ninth Circuit or a writ of

certiorari to the Supreme Court, or both.  During this time on potential appeals, the Settlement Class would receive no distribution of any damage award.  In addition, an appeal of any judgment would carry the risk of reversal, in which case the Settlement Class would receive no recovery.  *See Gross v. GFI Grp., Inc.*, 784 F. App'x. 27, 29 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment in contravention of previous trial court findings).[6]

Finally, "[t]he potential inability of Settling Defendants to pay a substantial judgment also contributed to the risk faced by [Lead Plaintiff] in further litigating [his] case."  *Hayes*, 2016 WL 6902856, at *5.  Momentus' financial condition has deteriorated significantly since the filing of the initial complaint.  The company's stock trades at under a dollar, it faces delisting, it has included going concern warnings in its SEC filings, it has a total market cap of approximately $5.9 million, is exploring strategic alternatives, may well file for bankruptcy, and the $8.5 million Settlement Amount is greater than the available insurance.  ¶¶35-37.  "The decision to settle was therefore a pragmatic choice given that Plaintiffs faced a real risk that any victory at trial would be mostly, if not wholly, symbolic due to the Company's financial condition and future prospects."  *Hayes*, 2016 WL 6902856, at *5.  Given the circumstances, this factor supports final approval.  *See id.*

### 2. Risks of Maintaining Class Action Status

While Lead Plaintiff and Lead Counsel are confident that the Settlement Class meets the requirements for certification (*see* ECF No. 177, § IV.B), the class had not yet been certified, and Lead Plaintiff is aware that there is a risk the Court could have disagreed.  In their motions to dismiss, Defendants argued that the element of reliance

---

[6] *See also Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) ($81 million jury verdict for plaintiffs reversed on appeal on loss causation grounds and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-*22 (S.D. Fla. Apr. 25, 2011) (following a jury verdict for plaintiffs on liability, the district court granted defendants' motion for judgment as a matter of law), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

MEMORANDUM IN SUPPORT OF MOTION

cannot be presumed on the facts of this Action. *See, e.g.*, ECF No. 122-1, pp. 22-23. While Lead Plaintiff vigorously disputes that argument, Defendants undoubtedly would have challenged class certification on this and other bases if the case reached that stage. Furthermore, even if the Court were to certify the class, there is always a risk that the class could be decertified at a later stage in the proceedings. *See, e.g.*, *In re Omnivision Tech., Inc.*, 559 F. Supp. 2d 1035, 1041 (N.D. Cal. 2008) (even if a class is certified, "there is no guarantee the certification would survive through trial, as Defendants might have sought decertification or modification of the class").

### D.   Rule 23(e)(2)(C)(ii)-(iv)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," "the terms of any proposed award of attorneys' fees, including timing of payment," and "any agreement required to be identified under Rule 23(e)(2)." FED. R. CIV. P. 23(e)(2)(C)(ii)-(iv). Each of these factors support the Settlement's approval or is neutral and thus do not suggest any basis for concluding the Settlement is inadequate.

**Rule 23 (e)(2)(C)(ii):** The method for processing Settlement Class Members' claims and distributing relief to eligible claimants is well-established and effective. Here, Strategic Claims Services ("SCS"), the Claims Administrator selected by Lead Counsel (and approved by the Court (ECF No. 181, ¶7)), will process claims under the guidance of Lead Counsel, allow Claimants an opportunity to cure any Claim deficiencies or request the Court to review a denial of their claims, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Lead Plaintiff nor Defendants possess the individual investor trading data required for a claims-free

process to distribute the Net Settlement Fund.[7]  *See New York State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 233-34, 245 (E.D. Mich. 2016) (approving settlement with a nearly identical distribution process).

**Rule 23(e)(2)(C)(iii):**  The Notice disclosed that Lead Counsel would be applying for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services rendered on behalf of the Settlement Class. Lead Counsel ultimately decided to request a fee of only 25% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount).  This request is reasonable in light of the work performed and the results obtained, is the Ninth Circuit "benchmark," and is  below awards in many similar complex class action cases.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (approving fee equal to 33% percent of a $12 million settlement fund).  More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees.  *See* Stipulation ¶16.

**Rule 23(e)(2)(C)(iv):**  The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class Members owning a certain percentage of SRAC Securities purchased during the Settlement Class Period request exclusion (or "opt out") from the Settlement.[8]  "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co.*, 2019 WL 5257534, at *1; *see also In re Carrier IQ, Inc.,*

---

[7] This is not a claims-made settlement.  If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted.  *See* Stipulation ¶13.

[8] "SRAC Securities" are defined in the Stipulation to mean, collectively, publicly traded SRAC units, publicly traded SRAC Class A common stock, and publicly traded SRAC warrants.  Stipulation, ¶1(zz).

MEMORANDUM IN SUPPORT OF MOTION

*Consumer Privacy Litig.*, 2016 WL 4474366, at \*5 (N.D. Cal. Aug. 25, 2016) ("opt-out deals are not uncommon as they are designed to ensure that an objector cannot try to hijack a settlement in his or her own self-interest.").

### E. The Settlement Treats All Class Members Equitably Relative To Each Other

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund. Lead Plaintiff will receive the same level of *pro rata* recovery, based on his Recognized Claim as calculated by the Plan of Allocation, as all other similarly situated Settlement Class Members. "Moreover, the service award Lead Plaintiff seeks is reasonable and does not constitute inequitable treatment of class members." *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at \*5 (S.D. Cal. Oct. 30, 2020). Accordingly, this factor favors final approval of the Settlement. *See Yang v. Focus Media Holding Ltd.*, 2014 WL 4401280, at \*10 (S.D.N.Y. Sept. 4, 2014) ("the Plan of Allocation ensures an equitable *pro rata* distribution of the Net Settlement Fund among all Authorized Claimants based solely on when they purchased and sold shares, taking into account the relative amounts of artificial inflation prevailing during the Class Period.").

### F. The Remaining *Hanlon* Factors Are Neutral Or Weigh In Favor Of Final Approval

*Hanlon* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors.[9] These factors, viewed in light of the Rule 23(e)(2) factors

---

[9] Although courts within the Ninth Circuit have recognized that Rule 23(e)(2)(A)- (footnote continued)

13

identified above, support final approval.

**The Amount Offered in Settlement:** "To evaluate the adequacy of the settlement amount, courts primarily consider plaintiffs' expected recovery against the value of the settlement offer." *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *9 (N.D. Cal. Sept. 4, 2018). "This determination requires evaluating the relative strengths and weaknesses of the plaintiffs' case; it may be reasonable to settle a weak claim for relatively little, while it is not reasonable to settle a strong claim for the same amount." *Vikram v. First Student Management, LLC*, 2019 WL 1084169, at *3 (N.D. Cal. March 7, 2019); *see also Shapiro v. JPMorgan Chase & Co.*, 2014 WL 1224666, at *11 (S.D.N.Y. Mar. 24, 2014) (settlement amount must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case"). Courts must also consider the "serious risk[] that even if Plaintiffs were successful in all aspects of their claims they may be unable to collect a judgment." *Gudimetla v. Ambow Education Holding*, 2015 WL 12752443, at *5 (C.D. Cal. Mar. 16, 2015).

The $8.5 million recovery represents approximately 10.5% of estimated *maximum* damages of approximately $80.5 million under the proposed Plan of Allocation in this Action—*i.e.*, Lead Plaintiff's *best-case scenario*—assuming that: (i) the Court certified the same class period as the Settlement Class Period; (ii) Lead Plaintiff survived summary judgment on all elements and also convinced a jury that liability was proven; and (iii) the trier of fact accepted Lead Plaintiff's damages theory. This recovery is *more than two and a half times* the typical recovery for cases of a similar magnitude. *See, e.g.,* Sadler Decl., Ex. 2 (excerpt from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024), at p. 25 (Fig. 21) (median recovery

(B)'s considerations overlap with certain *Hanlon* factors, such as the extent of discovery completed and the experience and view of counsel, these factors are briefed below for thoroughness.

was 3.8% for securities class actions with estimated damages between $50-$100 million that settled between January 2014-December 2023)).  And, of course, less than a complete victory on any aspect of the aforementioned assumptions would decrease recoverable damages or eliminate them altogether, and each element at issue was strongly contested by Defendants.

"Considering the risks inherent in this litigation and [Defendant's] financial situation, this factor weighs in favor of Final Approval."  *See Gudimetla v. Ambow Educ. Holding*, 2015 WL 12752443, at *5 (C.D. Cal. Mar. 16, 2015) (approving securities fraud class action settlement where recovery of $1.5 million was 5.6% of $26.7 million in estimated damages where there were very serious ability to pay and collectability issues); *In re LJ Int'l, Inc. Sec. Litig.*, 2009 WL 10669955, at *4 (C.D. Cal. Oct. 19, 2009) (approving securities fraud class action settlement where $2 million recovery was 4.5% of $44 million maximum possible recovery).

**The Stage of the Proceedings and Extent of Discovery Completed:** The fact that formal discovery was in its early stages does not weigh against final approval. *See, e.g.*, *In re: Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 2016 WL 6248426, at *13-*14 (N.D. Cal. Oct. 25, 2016) (formal discovery is "not a necessary ticket to the bargaining table where the parties have sufficient information to make an informed decision about settlement").  Here, Lead Plaintiff conducted an extensive investigation of SRAC and Momentus, including contacting former employees and analyzing numerous publicly available documents.  Moreover, (i) Lead Plaintiff engaged in substantial briefing on three motions to dismiss, (ii) the Parties exchanged detailed mediation briefs and participated in a months-long adversarial mediation process in conjunction with an experienced mediator, and (iii) Momentus produced, and Lead Counsel reviewed, certain documents during confirmatory discovery.  *Vaccaro v. New Source Energy Partners L.P.*, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("Although the action did not proceed to formal discovery, Lead Plaintiffs (i) reviewed vast amounts of publicly available

information, (ii) conducted interviews of numerous individuals, and (iii) consulted experts on the ... industry.  The Court finds that Lead Plaintiffs were well-informed to gauge the strengths and weaknesses of their claims and the adequacy of the settlement.”). Therefore, Lead Plaintiff and his counsel had a thorough understanding of the strengths and risks of this Action at the time of Settlement.

**The Experience and Views of Counsel:** “The recommendation of experienced counsel carries significant weight in the court’s determination of the reasonableness of the settlement.” *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005).  This makes sense, as counsel is “most closely acquainted with the facts of the underlying litigation.” *Id.*  As discussed above, Lead Counsel has a thorough understanding of the merits and weakness of the claims, as well as extensive prior experience litigating securities class action cases.  Under such circumstances, Lead Counsel’s conclusion that the Settlement is fair and reasonable and in the best interests of the Settlement Class likewise supports the Settlement’s approval.  *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2007) (finding class counsel’s recommendation in favor of settlement presumptively reasonable because counsel demonstrated knowledge about the case and securities litigation in general).

It is also important to note that Lead Plaintiff, who was thoroughly involved in all aspects of the litigation, supports the Settlement. *See* Ex. 5, ¶¶3-8.  Indeed, Lead Plaintiff’s support for the Settlement should be afforded “special weight” because a plaintiff “ha[s] a better understanding of the case than most members of the class.” *Nat’l Rural Telecomm. Coop. v. DirecTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004); *see also In re Portal Software, Inc. Sec. Litig.*, , at *5 (N.D. Cal. Nov. 26, 2007) (noting Congress’ intent to foster involvement of Lead Plaintiff when passing PSLRA and stating that “the role taken by the lead plaintiff in the settlement process supports settlement because lead plaintiff was intimately involved in the settlement negotiations.”).

MEMORANDUM IN SUPPORT OF MOTION

Consequently, this factor weighs in favor of final approval.

**The Reaction of the Settlement Class:** The eighth *Hanlon* factor—the reaction of the Settlement Class—overlaps with Rules 23(e)(4), on the opportunity for exclusion, and 23(e)(5), on the opportunity to object. *Hanlon*, 150 F.3d at 1026. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to class members." *Omnivision*, 559 F. Supp. 2d at 1043; *see also Hanlon*, 150 F.3d at 1027 (that the "overwhelming majority" stayed in the class is "objective positive commentary as to its fairness").

Here, in accordance with the Court's Preliminary Approval Order,[10] 80,815 potential Settlement Class Members were notified of the Settlement either by mailed Notice Packet or by emailed link to the Notice Packet, and the Summary Notice was published in the national edition of *Investor's Business Daily* and transmitted over the *PR Newswire* on December 18, 2023. *See* Ex. 1 ("Craig Decl."), at ¶¶8, 11. SCS also established a dedicated website, www.StableRoadSecuritiesSetttlement.com, to provide potential Settlement Class Members with information concerning the Settlement and access downloadable copies of, *inter alia*, the Notice and Claim Form, as well as copies of the Stipulation, Preliminary Approval Order, the Revised Preliminary Approval Order, and the Complaint. *Id.* at ¶13. The website became operational on December 7, 2023. *Id.* The website also lists the exclusion, objection, and claim filing deadlines, as well as the date and time of the Court's Settlement Hearing. As of March 12, 2024, only four requests for exclusion have been received by the Claims Administrator, and only one objection, which essentially seeks an advisory opinion regarding the scope of the release, has been filed with the Court.

---

[10] The deadlines set forth in the Preliminary Approval Order were modified by Court order on November 22, 2023 Order (the "Revised Preliminary Approval Order"). ECF No. 195.

MEMORANDUM IN SUPPORT OF MOTION

¶¶63-64; Craig Decl., ¶14 and Ex. D thereto; ECF No. 196.

As provided in the Revised Preliminary Approval Order, Lead Plaintiff will file reply papers in support of the Settlement on April 15, 2024, after the deadline for requesting exclusions or objecting has passed. Lead Plaintiff's reply papers will address the requests for exclusion and objections received and/or filed.[11]

\*   \*   \*

As discussed in detail above, each of the Rule 23(e)(2) and *Hanlon* factors either supports a finding that the Settlement is fair, reasonable, and adequate, or is otherwise neutral. Final approval is, therefore, appropriate.

## V. THE PLAN OF ALLOCATION IS FAIR, REASONABLE AND ADEQUATE

Lead Plaintiff also requests final approval of the Plan of Allocation. A plan of allocation in a class action "is governed by the same standards of review applicable to approval of the settlement as a whole: the plan must be fair, reasonable, and adequate." *Omnivision*, 559 F. Supp. 2d at 1045. To meet this standard, a plan of allocation recommended by experienced and competent class counsel "need only have a reasonable and rational basis." *In re Par Pharm. Sec. Litig.*, 2013 WL 3930091, at \*8 (D.N.J. July 29, 2013); *Heritage Bond*, 2005 WL 1594403, at \*11; *see also In re Marsh & McLennan Companies, Inc. Sec. Litig.*, 2009 WL 5178546, at \*13 (S.D.N.Y. Dec. 23, 2009) ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel.").

Here, the proposed Plan of Allocation is set forth in the Notice that was mailed to Settlement Class Members and posted on the Settlement Website. Craig Decl., Ex. A (Notice), at ¶¶46-65. Lead Counsel developed the Plan of Allocation in consultation with Lead Plaintiff's damages consultant with the objective of equitably

---

[11] Lead Plaintiff will submit an updated [Proposed] Judgment Approving Class Action Settlement, which will include the final list of requests for exclusion.

MEMORANDUM IN SUPPORT OF MOTION

distributing the Net Settlement Fund to Settlement Class Members who suffered economic losses as a proximate result of the alleged wrongdoing.  The computations under the Plan of Allocation are a method to weigh the Claims of Authorized Claimants against one another for the purposes of making *pro rata* allocations of the Net Settlement Fund.  ¶¶65-72.

Under the Plan of Allocation, a Claimant's Recognized Claim is calculated based on the estimated alleged artificial inflation in the price of their SRAC Securities during the Settlement Class Period, as determined by Lead Plaintiff's consulting damages expert.  Lead Plaintiff's consulting damages expert reviewed publicly available information regarding SRAC and performed statistical analyses of the price movements of SRAC Securities relative to the price performance of market and peer indices during the Settlement Class Period.  From this data, she calculated the alleged artificial inflation by isolating the losses in SRAC Securities that resulted from the alleged violations of the federal securities laws, eliminating losses attributable to market factors, industry factors, or alleged Company-specific factors unrelated to the alleged violations of law.  The amount of artificial inflation in publicly traded SRAC Class A common stock, SRAC warrants and SRAC units on each day of the Settlement Class Period is set forth in Table 1 in the Notice.  *See* Craig Decl., Ex. 1 (Notice), at ¶50.

Under the Plan of Allocation, a "Recognized Loss Amount" will be calculated for each purchase or other acquisition of SRAC Securities during the Settlement Class Period that is listed in the Claim Form and for which adequate documentation is provided.  The calculation of each Settlement Class Member's Recognized Loss under the Plan of Allocation will be based on several factors, including when the SRAC Securities were purchased and sold, the type of SRAC Securities purchased or sold, the purchase and sale price of the SRAC Securities, and the estimated artificial inflation in the price of the SRAC Securities at the time of the purchase or sale of the SRAC Securities.  If a Claimant has an overall market gain with respect to his, her, or

its overall transactions in SRAC Securities during the Settlement Class Period, or if the Claimant purchased SRAC Securities during the Settlement Class Period, but did not hold any of those SRAC Securities through at least one of the alleged corrective disclosures, the Claimant's recovery under the Plan of Allocation will be zero, as any loss suffered would not have been caused by the revelation of the alleged fraud. Craig Decl., Ex. A at ¶¶49, 61-62.

In general, the Recognized Loss Amount will be the difference between the estimated artificial inflation on the date of purchase and the estimated artificial inflation on the date of sale, or the difference between the actual purchase price and sale price, whichever is less. The Recognized Loss Amount also incorporates the "90-day look back" provision of the PSLRA. *See* Craig Decl., Ex. A at ¶¶51, 53. The sum of a Claimant's Recognized Loss Amounts is the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to Authorized Claimants on a *pro rata* basis based on the relative size of their Recognized Claims, subject to a $10 *de minimis* provision. *See* Craig Decl., Ex. A at ¶¶56, 63-64.

Lead Counsel believe that the Plan of Allocation provides a fair and reasonable method to equitably allocate the Net Settlement Fund among Settlement Class Members who suffered losses as a proximate result of the conduct alleged in the Action. *See Schueneman v. Arena Pharm., Inc.*, 2020 WL 3129566, at *7 (S.D. Cal. June 12, 2020) (approving substantially similar plan of allocation); *City of Omaha Police & Fire Ret Sys. v. LHC Grp.*, 2015 WL 965693, at *15 (W.D. La. March 2, 2015) (approving plan of allocation where "[u]nder the Plan, each Class Member will receive his or her *pro rata* share of the funds based on the calculation of recognized losses.").

Moreover, to date, no Settlement Class Members have objected to the Plan of Allocation. *See  Heritage Bond*, 2005 WL 1594403, at *12 ("In light of the lack of objectors to the plan of allocation at issue, and the competence, expertise, and zeal of

counsel in bringing and defending this action, the Court finds the plan of allocation as fair and adequate."). The Court should, therefore, approve the Plan of Allocation.

## VI.   THE SETTLEMENT CLASS SHOULD BE FINALLY CERTIFIED

The Court's September 20, 2023 Preliminary Approval Order certified the Settlement Class for settlement purposes only under Fed. R. Civ. P. 23(a) and (b)(3). *See* ECF No. 181 at ¶¶1-3. There have been no changes to alter the propriety of class certification for settlement purposes. Thus, for the reasons stated in Lead Plaintiff's Memorandum in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement (ECF No. 177 at 16-21), Lead Plaintiff respectfully requests that the Court affirm its determinations in the Preliminary Approval Order certifying the Settlement Class under Rules 23(a) and (b)(3).

## VII.   NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23 AND DUE PROCESS

For any class certified under Rule 23(b)(3), due process and Rule 23 require that class members be given "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). The Notice provides all the necessary information required by Rule 23(c)(2)(B) and satisfies the requirements of the PSLRA, 15 U.S.C. § 78u-4(a)(7). This Court has already found that the proposed notice program is adequate and sufficient (*see* ECF No. 181, ¶¶7-9). Lead Counsel and SCS carried out the notice program as proposed. In sum, the notice program detailed in ¶¶55-64 of the Sadler Declaration and the Craig Declaration (Ex. 1, ¶¶3-13) fairly apprises Settlement Class Members of their rights with respect to the Settlement, and is the best notice practicable under the circumstances. *See Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *2-3 (S.D. Cal. Dec. 12, 2018) (combination of mailed notice, publication of summary notice in *Investor's Business Daily* and over *Globe Newswire*, and posting of notice on settlement website satisfied requirements

of "Rule 23, the Private Securities Litigation Reform Act ("PSLRA"), and due process.").

## VIII. CONCLUSION

For the reasons stated in this memorandum and in the Sadler Declaration, Lead Plaintiff respectfully requests that the grant the motion.

Dated: March 18, 2024

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Casey E. Sadler*
Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Casey E. Sadler (SBN 274241)
  *csadler@glancylaw.com*
Garth Spencer (SBN 335424)
  *gspencer@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Hartmut Haenisch*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007
Email: fcruz@frankcruzlaw.com

*Additional Counsel*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiff Hartmut Haenisch, certifies that this brief contains 6,945 words, which complies with the word limit of L.R. 11-6.1.

DATED: March 18, 2024         *s/ Casey E. Sadler*
                              Casey E. Sadler

## <u>PROOF OF SERVICE</u>

I hereby certify that on this 18th day of March, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Casey E. Sadler*
Casey E. Sadler

MEMORANDUM IN SUPPORT OF MOTION