Robert V. Prongay (SBN 270796)
Casey E. Sadler (SBN 274241)
Garth Spencer (SBN 335424)
**GLANCY PRONGAY & MURRAY LLP**
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: rprongay@glancylaw.com
Email: csadler@glancylaw.com
Email: gspencer@glancylaw.com

*Counsel for Lead Plaintiff Hartmut Haenisch*

[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| IN RE STABLE ROAD ACQUISITION CORP. SECURITIES LITIGATION | Case No. 2:21-CV-5744-JFW(SHKx) |
|---|---|
| | Honorable John F. Walter |
| | **MEMORANDUM OF LAW IN SUPPORT OF LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES** |
| | Hearing Date:  April 22, 2024<br>Hearing Time: 1:30 p.m.<br>Location:  W. 1st Street, Courtroom 7A |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................... 1

II.     FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION......... 3

III.    THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST . 4

    A.      Lead Counsel Is Entitled To A Common Fund Fee Award.................4

    B.      The Requested Attorneys' Fee Is Reasonable Under Either The Percentage-Of-The-Fund Method Or The Lodestar Method................5

        1.      The Quality Of The Result Supports The Fee Request ............... 5

        2.      The Substantial Litigation Risks Support The Fee Request........ 7

        3.      The Skill Required And The Quality Of The Work .................. 10

        4.      The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel Support The Fee Request.......................... 12

        5.      A 25% Fee Award Is Consistent With Fee Awards In Similar, Complex, Contingent Litigation ............................................... 14

        6.      The Reaction Of The Settlement Class Supports The Requested Fee.............................................................................................. 15

    C.      A Lodestar Cross-Check Supports The Requested Fee ......................16

IV.     LEAD COUNSEL'S EXPENSES SHOULD BE REIMBURSED ............... 19

V.      THE COURT SHOULD GRANT LEAD PLAINTIFF'S PSLRA AWARD REQUEST ............................................................................................... 20

VI.     CONCLUSION ........................................................................................ 21

# **TABLE OF AUTHORITIES**

CASES

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
572 F.3d 221 (5th Cir. 2009) ...................................................................................2

*Bell v. Pension Comm. of ATH Holding Co., LLC*,
2019 WL 4193376 (S.D. Ind. Sept. 4, 2019).............................................................3

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980)..................................................................................................4

*Brown v. China Integrated Energy Inc.*,
2016 WL 11757878 (C.D. Cal. July 22, 2016) .........................................................9

*Craft v. Cty. of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008)...................................................................18

*Destefano v. Zynga*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016).............................................................12

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005)..................................................................................................10

*Edmonds v. U.S.*,
658 F. Supp. 1126 (D.S.C. 1987) .............................................................................11

*Ellison v. Steven Madden, Ltd.*,
2013 WL 12124432 (C.D. Cal. May 7, 2013)...........................................................4

*Fernandez v. Victoria Secret Stores, LLC*,
2008 WL 8150856 (C.D. Cal. 2008) ........................................................................16

*Fischel v. Equitable Life Assur. Soc'y of U.S.*,
307 F.3d 997 (9th Cir. 2002) ...................................................................................17

*Glass v. UBS Fin. Servs.*,
331 F. App'x. 452 (9th Cir. 2009)............................................................................17

*Glickenhaus & Co. v. Household Int'l, Inc.*,
787 F.3d 408 (7th Cir. 2015) ...............................................................................13

*Gonzalez v. City of Maywood*,
729 F.3d 1196 (9th Cir. 2013) .............................................................................16

*Gross v. GFI Grp., Inc.*,
784 F. App'x. 27 (2d Cir. Sept. 13, 2019)........................................................9, 12

*Guevoura Fund Ltd. v. Sillerman*,
2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019).....................................................20

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994) ...................................................................................19

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ......................................................7

*Hensley v. Eckerhart*,
461 U.S. 424 (1983).................................................................................................5

*In re Activision Sec. Litig.*,
723 F. Supp. 1373 (N.D. Cal. 1989).....................................................................14

*In re Am. Apparel Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. Jul. 28, 2014) ...............................................14, 17

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ....................................................16

*In re Anthem, Inc. Data Breach Litig.*,
2018 WL 3960068 (N.D. Cal. Aug. 17, 2018) .......................................................5

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ............................................................6

*In re Apollo Grp. Inc. Sec. Litig.*,
2012 WL 1378677 (D. Ariz. 2012) ......................................................................17

*In re Apple Computer Sec. Litig.*,
1991 WL 238298 (N.D. Cal. Sept. 6, 1991).........................................................2

*In re Banc of California Sec. Litig.*,
2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ........................................................ 15

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .......................................................... 2

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) ................................................................... 10

*In re Bluetooth Headsets Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ................................................................................. 5

*In re Genworth Fin. Sec. Litig.*,
2016 WL 5400360 (E.D. Va. Sep. 26, 2016) ........................................................ 16

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ................................................. *passim*

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................... 17, 19

*In re LJ Int'l, Inc. Sec. Litig.*,
2009 WL 10669955 (C.D. Cal. Oct. 19, 2009) ................................................... 7, 9

*In re Marsh & McLennan Cos. Sec. Litig.*,
2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) ................................................. 20, 21

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ............................................................................... 14

*In re NASDAQ Market-Makers Antitrust Litig.*,
187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................... 13

*In re Nuvelo, Inc. Sec. Litig.*,
2011 WL 2650592 (N.D. Cal. July 6, 2011) ........................................................ 15

*In re Ocean Power Tech., Inc., Sec. Litig.*,
2016 WL 6778218 (D.N.J. Nov. 15, 2016) ............................................................ 2

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) .......................................................... *passim*

*In re Oracle Corp. Sec. Litig.*,
  2009 WL 1709050 (N.D. Cal. June 16, 2009)........................................................13

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ...............................................................................10, 14

*In re Telik, Inc. Sec. Litig.*,
  576 F. Supp. 2d 570 (S.D.N.Y. 2008) ....................................................................16

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and
  Prods. Liab. Litig.*,
  2013 WL 12327929 (C.D. Cal. July 24, 2013) .......................................................14

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007) ........................................................................17

*In re Vivendi Universal, S.A. Sec. Litig.*,
  765 F. Supp. 2d 512 (S.D.N.Y. 2011) ....................................................................12

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir. 1994) ...........................................................................12, 14

*In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ...................................................................8, 13

*Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*,
  2012 WL 5199742 (D. Nev. Oct. 19, 2012) ..............................................................7

*Janus Cap. Grp., Inc. v. First Deriv. Traders*,
  564 U.S. 135 (2011)..................................................................................................13

*Kendall v. Odonate Therapeutics, Inc.*,
  2022 WL 1997530 (S.D. Cal. June 6, 2022) ...........................................................15

*Lea v. TAL Educ. Grp.*,
  2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) .........................................................18

*Leach v. NBC Universal Media, LLC*,
  2017 WL 10435878 (S.D.N.Y. Aug. 24, 2017) .......................................................18

*Maley v. Del Global Techs. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002) .......................................................................18

*Marshall v. Northrop Grumman Corp.*,
   2020 WL 5668935 (C.D. Cal. Sept. 18, 2020) .......................................................14

*Mild v. PPG Indus., Inc.*,
   2019 WL 3345714 (C.D. Cal. July 25, 2019 .........................................................11

*Morris v. Lifescan, Inc.*,
   54 F. App'x 663 (9th Cir. 2003) .............................................................................15

*Morrison v. Nat'l Australia Bank Ltd.*,
   561 U.S. 247 (2010) .................................................................................................13

*Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*,
   2009 WL 9100391 (C.D. Cal. June 24, 2009) .......................................................14

*Paul, Johnson, Alston & Hunt v. Graulty*,
   886 F.2d 268 (9th Cir. 1989) .....................................................................................5

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ..................................................................................2

*Rodriguez v. Disner*,
   688 F.3d 645 (9th Cir. 2012) .....................................................................................5

*Schwartz v. TXU Corp.*,
   2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ....................................................8, 11

*Silverman v. Motorola Sols., Inc.*,
   739 F.3d 956 (7th Cir. 2013) .....................................................................................2

*Steiner v. Am. Broad Co.*,
   248 F. App'x 780 (9th Cir. 2007) ............................................................................18

*Todd v. STAAR Surgical Co.*,
   2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ........................................................21

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
   669 F.3d 632 (5th Cir. 2012) .....................................................................................4

*Varljen v. H.J. Meyers & Co., Inc.*,
  2000 WL 1683656 n.2 (S.D.N.Y. Nov. 8, 2000) ....................................................20

*Vincent v. Hughes Air West, Inc.*,
  557 F.2d 759 (9th Cir. 1977) ...............................................................................4

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .......................................................................*passim*

STATUTES

15 U.S.C. § 78u-4(a)(4) ...........................................................................................1, 20

15 U.S.C. § 78u-4(a)(6) ...............................................................................................4

15 U.S.C. § 78u-4(b)(1)-(b)(2)(A), and (b)(3)(B) ........................................................1

15 U.S.C. § 78u-5(c)(1)(A)...........................................................................................8

Court-appointed lead counsel, Glancy Prongay & Murray LLP ("GPM" or "Lead Counsel"), respectfully submits this memorandum of law in support of its Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses.[1]

## I.    INTRODUCTION

Lead Counsel have succeeded in obtaining an $8,500,000 non-reversionary, all cash, settlement (the "Settlement") for the benefit of the Settlement Class. This is an extremely favorable outcome in the face of substantial risks and it is the result of Lead Counsel's vigorous, persistent, and skilled efforts. Lead Counsel now respectfully moves for an award of attorneys' fees in the amount of 25% of the Settlement Fund (*i.e.*, $2,125,000, plus interest at the same rate as the Settlement Fund), and reimbursement of $111,115.83 in Litigation Expenses. The Litigation Expenses consist of $101,115.83 in out-of-pocket costs incurred by Lead Counsel while prosecuting the Action, and a $10,000 award to Court-appointed lead plaintiff Hartmut Haenisch ("Lead Plaintiff" or "Mr. Haenisch") for reimbursement of the reasonable costs (including the cost of time spent) incurred in prosecuting the Action on behalf of the Settlement Class pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).

Achieving the Settlement was not easy. Defendants were represented by highly skilled litigators, and Lead Counsel faced numerous hurdles and risks from the outset, including the PSLRA's heightened pleading standards and automatic stay of discovery, the high cost of experts and investigators needed to litigate a complex securities fraud case, and a substantial risk of non-payment. *See* 15 U.S.C. § 78u-4(b)(1)-(b)(2)(A), and (b)(3)(B). These are not idle risks. "To be successful, a

---

[1] Unless otherwise defined, all capitalized terms used herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated August 18, 2023 (the "Stipulation"; ECF No. 178-1), or the concurrently filed Declaration of Casey E. Sadler ("Sadler Declaration"). All citations to "¶ __" and "Ex. __" in this memorandum refer, respectively, to paragraphs in, and Exhibits to, the Sadler Declaration.

securities class action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action." *Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009).[2] As a result, a significant number of cases—like this one—are dismissed in whole or in part at the outset. *See* ECF No. 154.[3]

Nor do the risks end at the pleading stage. Even when a plaintiff is successful at trial, payment is far from guaranteed.[4] There was, therefore, a very strong possibility that the case would yield little or no recovery after many years of costly litigation. *See Silverman v. Motorola Sols., Inc.*, 739 F.3d 956, 958 (7th Cir. 2013) (observing that "Defendants prevail outright in many securities suits."); *In re Ocean Power Tech., Inc., Sec. Litig.*, 2016 WL 6778218, at *28 (D.N.J. Nov. 15, 2016) ("The risk of non-payment is especially high in securities class actions, as they are notably difficult and notoriously uncertain.").

Despite these risks, Lead Counsel has vigorously pursued this case for over two years—working 1,433.95 hours, and advancing $101,115.83 in expenses, all on a fully continent basis. As compensation for Lead Counsel's significant efforts and achievements on behalf of the Settlement Class, Lead Counsel respectfully requests a

---

[2] Unless otherwise noted, all internal citations and quotations have been omitted and emphasis has been added.

[3] *See also* Ex. 2 (excerpt from Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2023 Full-Year Review* (NERA Jan. 23, 2024) ("NERA Report") at p. 15-16 (Fig. 14) (finding motion to dismissed filed in 96% of securities class action lawsuits, with a decision reached in 73% of the cases, and stating that "[a]mong the cases where a decision was reached, 60% were granted (with or without prejudice) while 40% were denied either in part or in full.").

[4] *See In re Apple Computer Sec. Litig.*, 1991 WL 238298 (N.D. Cal. Sept. 6, 1991) (overturning jury verdict for plaintiffs); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs); *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) (granting defendants' motion for judgment as a matter of law following plaintiffs' verdict).

fee award in the amount of 25% of the Settlement Fund.  Lead Counsel believe that an award of 25% (*i.e.*, the Ninth Circuit "benchmark"), properly reflects the many significant risks taken by Lead Counsel, as well as the result achieved in a hard fought and difficult litigation.  When examined under either the percentage-of-the-fund or lodestar methods for calculating attorneys' fees, the requested fee is reasonable, and well within the range of attorneys' fees awarded in similar complex, contingency cases.

Lead Counsel also seek reimbursement of $101,115.83 in out-of-pocket litigation expenses.  *See* ¶¶92-96.  The expenses are reasonable in amount, and were necessarily incurred in the successful prosecution of the Action.  Accordingly, they should be approved.

Finally, Lead Counsel respectfully requests a PSLRA award in the amount of $10,000 to compensate Lead Plaintiff for the time and effort he expended on behalf of the Settlement Class.  The work Lead Plaintiff performed is set forth in his declaration (Ex. 5), and but for his "commitment to pursuing these claims, the successful recovery for the [Settlement] Class would not have been possible." *Bell v. Pension Comm. of ATH Holding Co., LLC*, 2019 WL 4193376, at *6 (S.D. Ind. Sept. 4, 2019).

For all the reasons set forth herein, and in the Sadler Declaration, Lead Counsel respectfully requests that the Court award attorneys' fees equal to 25% of the Settlement Fund, approve reimbursement of $101,115.83 in litigation expenses incurred by Lead Counsel, and grant Mr. Haenisch a PSLRA award in the amount of $10,000.

## II.    FACTUAL AND PROCEDURAL HISTORY OF THE LITIGATION

For the sake of brevity, the Court is respectfully referred to the Sadler Declaration for a discussion of, *inter alia*, the Action's history; the nature of the claims asserted; the negotiations leading to the Settlement; the risks and uncertainties of continued litigation; a summary of the services Lead Counsel provided for the

benefit of the Settlement Class; and additional information on the factors that support the fee and expense application, including the lodestar cross-check.

### III.   THE COURT SHOULD APPROVE LEAD COUNSEL'S FEE REQUEST

#### A.   Lead Counsel Is Entitled To A Common Fund Fee Award

It is well settled that attorneys who represent a class and are successful in recovering a common fund for the benefit of class members are entitled to a reasonable fee from the common fund as compensation for their services. *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977).

"Under Ninth Circuit law, the district court has discretion in common fund cases to choose either the percentage-of-the-fund or the lodestar method" when awarding attorneys' fees. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). Notwithstanding that discretion, where there is an easily quantifiable benefit to the class—such as a cash common fund—the percentage-of-the-fund approach is the prevailing method. *See Ellison v. Steven Madden, Ltd.*, 2013 WL 12124432, at *8 (C.D. Cal. May 7, 2013) (finding "use of the percentage method" to be the "dominant approach in common fund cases"). Moreover, application of the percentage-of-the-fund method is consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a ***reasonable percentage*** of the amount" recovered for the class. 15 U.S.C. § 78u-4(a)(6); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012) ("Part of the reason behind the near-universal adoption of the percentage method in securities cases is that the PSLRA contemplates such a calculation."). For these reasons, among others, Lead Counsel respectfully requests that the Court award attorneys' fees in this case on a percentage-of-the-fund basis.

**B.    The Requested Attorneys' Fee Is Reasonable Under Either The Percentage-Of-The-Fund Method Or The Lodestar Method**

"The Ninth Circuit has established twenty-five percent of the fund as the 'benchmark' award that should be granted in common fund cases." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *5 (C.D. Cal. June 10, 2005). The benchmark is "presumptively reasonable," *In re Anthem, Inc. Data Breach Litig.*, 2018 WL 3960068, at *4 (N.D. Cal. Aug. 17, 2018), and it should only be adjusted upward or downward for "unusual circumstances." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989).  In making this determination, "[t]he guiding principle is that attorneys' fees be reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012).  Factors that courts have used to determine whether the requested percentage is fair and reasonable include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiffs; (5) the reaction of the Settlement Class; and (6) awards made in similar cases.  *See Vizcaino*, 290 F.3d at 1048-51.  The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances.  *Id.*  As demonstrated below, each of these factors, along with the lodestar cross-check, militate in favor of approving the requested fee.

**1.    The Quality Of The Result Supports The Fee Request**

"Courts have consistently recognized that the result achieved is a major factor to be considered in making a fee award."  *Heritage Bond,* 2005 WL 1594389, at *8; *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *In re Bluetooth Headsets Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Foremost among these considerations, however, is the benefit obtained for the class.").

Here, Lead Counsel have achieved a significant and certain cash payment of $8.5 million, plus interest, for the benefit of the Settlement Class without the substantial risk, delay, expense, and uncertainty of continued litigation, trial and the inevitable appeals. Lead Plaintiff's consulting damages expert estimates that *if* the Court certified the same class period as the Settlement Class Period, *if* the class had prevailed on its claims at both summary judgment and after a jury trial, *and if* the Court and jury accepted Lead Plaintiff's damages theory, including proof of loss causation as to each of the *eleven* stock price drop dates alleged in this case (*i.e.*, Lead Plaintiff's best-case scenario), estimated total *maximum* class wide damages would be approximately $80.5 million. ¶53. Under this scenario, the recovery is approximately 10.5% of class-wide damages. This is *more than two and a half times* the typical recovery for cases of a similar magnitude. *See* Ex. 2 (NERA Report, at p. 25 (Fig. 21) (between January 2014-December 2023 the median of settlement value as a percentage of "NERA-Defined Investor Losses" was 3.8% for securities class actions with estimated losses between $50-$100 million)).

This case was not, however, risk free and there were meaningful barriers to recovery. Obstacles included both the well-known general risks of complex securities litigation, as well as the specific risks inherent in this case. *See In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) (noting that "[t]he difficulty of establishing liability is a common risk of securities litigation" and that "[t]he risk of establish damages [is] equally daunting."). Indeed, as discussed, *infra*, Defendants had challenged, or would likely challenge, virtually every element of the Lead Plaintiff's claims—including, but not limited to the *eleven* loss causation dates. Less than a complete victory on any aspect of the aforementioned assumptions would decrease recoverable damages or eliminate them altogether.

Moreover, this case presented very real collectability risk, and even if Lead Plaintiff were to obtain a judgment for more than the Settlement Amount, there may

have been no money to collect.  Not only is the $8.5 million Settlement Amount greater than the insurance available to settle this case (¶37), but, as the Court is aware, Defendants failed to timely fund the Settlement and only did so after the Court granted Lead Plaintiff's motion to enforce the settlement agreement.  *See* ECF Nos. 185-192. Notably, that motion practice was initiated a mere two months after the Stipulation was signed  (*compare* ECF Nos. 185 (motion to enforce filed October 23, 2023) and 178-1 (Stipulation signed on August 18, 2023)), and as discussed *infra*, there is no guarantee that Momentus will continue as a going concern.

Given the range of possible results in this litigation, including no recovery at all, there can be no question that the Settlement constitutes a considerable achievement and weighs heavily in favor of the requested fee.  *See In re LJ Int'l, Inc. Sec. Litig.*, 2009 WL 10669955, at \*4-5, \*7-8 (C.D. Cal. Oct. 19, 2009) (awarding 25% of gross settlement fund in securities fraud class action settlement where $2 million recovery was 4.5% of $44 million maximum possible recovery and significantly below the median recovery in similar sized cases); *Int'l Bhd. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at \*3 (D. Nev. Oct. 19, 2012) (awarding 25% of $12.5 million gross settlement fund in securities fraud class action settlement where recovery was 3.5% of maximum damages).

**2.      The Substantial Litigation Risks Support The Fee Request**

The second factor courts in this Circuit consider in awarding attorneys' fees is "the risk of litigation." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046-47 (N.D. Cal. 2008); *see also Vizcaino*, 290 F.3d at 1048.  While courts have always recognized that securities class actions are complex and carry significant risks, post-PSLRA rulings and empirical studies make it clear that the risk of no recovery has increased significantly.  *See Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*13 (N.D. Cal. Dec. 18, 2018) ("Plaintiffs' Counsel faced substantial risks in pursuing this litigation, given the inherent uncertainties of trying securities fraud cases and the

demanding pleading standards of the PLSRA."); *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *32 (N.D. Tex. Nov. 8, 2005) ("the risk of no recovery in complex [securities] cases of this type is very real.").[5]  This Action was no exception.

While Lead Counsel believe that the claims of Lead Plaintiff and the Settlement Class are meritorious, Lead Counsel also recognized from the outset that there were a number of substantial risks in the litigation and that Lead Plaintiff's ability to succeed at trial and obtain a large judgment was far from certain.  As discussed in greater detail in the Sadler Declaration and in the memorandum of law in support of the Settlement, there were substantial risks here with respect to establishing both liability and damages.  ¶¶39-47.  For evidence of this risk, the Court needs to look no further than its own Order dismissing certain Individual Defendants and portions of the case with prejudice pursuant to Defendants' motions to dismiss.  *See* ECF No. 154; *see also In re Xcel Energy, Inc., Sec., Deriv. & ERISA Litig.*, 364 F. Supp. 2d 980, 1003 (D. Minn. 2005) ("The court needs to look no further than its own order dismissing the shareholder … litigation to assess the risks involved.").

The fact that Lead Plaintiff prevailed in significant part at the pleading stage did not, however, guarantee a recovery at trial.  Lead Counsel faced significant hurdles in ***proving*** liability and damages.  For example, Defendants forcefully argued, and would continue to maintain at summary judgment and trial, that the statements at issue were neither actionable nor material.  Among other things, Defendants maintained that many of the statements at issue were: (i) protected by the PSLRA safe harbor provision (15 U.S.C. § 78u-5(c)(1)(A)) because they were  forward-looking in nature and accompanied by meaningful cautionary language; (ii) vague, generalized statements of corporate optimism or opinion that no reasonable investor could rely; or (iii) true.  While Lead Plaintiff prevailed on the motion to dismiss because the Court could not "conclude as a matter of law that the alleged omissions or misstatements

---

[5] *See also* NERA Report at p. 15-16 (Fig. 14).

were not material or misleading" (ECF No. 154, pp.11-12), it also made clear that "[b]oth the materiality and misleading nature of a statement or omission are usually questions for the trier of fact." *Id*. at p.11. Falsity and materiality were, therefore, an open question, and the trier of fact could have determined that the evidence supported Defendants' version of the events. *See Gross v. GFI Grp., Inc.*, 784 F. App'x. 27, 29 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment on the alternative ground that Defendant's "statement did not, as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b)," despite the trial court twice finding the statement actionable).

Defendants, including Defendants SRAC, Sponsor and Kabot (the "Stable Road Defendants"), would have also continued to contest scienter. Among other things, the SRAC Defendants would assert that the following cut against a finding of scienter: (i) after investigating the transaction and disclosures the SEC determined that the Stable Road Defendants acted negligently, not with fraudulent intent, and declined to bring the very same claims asserted by Lead Plaintiff; (ii) that affiliates of SRAC committed $15 million towards the transaction alongside other investors, which they would never have done if they believed they were investing in a fraudulent enterprise; and (iii) neither SRAC affiliates nor its directors and officers (including defendant Kabot) sold any SRAC Securities during the class period. While Lead Plaintiff strongly disagreed with Defendants and believed he would be able to prove scienter, there is no doubt that the issue would have been contested on summary judgment, at trial and on appeal. *See In re LJ*, 2009 WL 10669955, at *5 ("It is very difficult to predict whether a jury would have believed Plaintiffs' claims regarding state of mind."); *Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *11 (C.D. Cal. July 22, 2016) ("To prevail, Plaintiffs would have to establish Defendants acted with scienter, which can be particularly difficult to establish.").

Additionally, Defendants would have asserted that Lead Plaintiff could not establish loss causation for many of the eleven purported disclosures dates, and even

if he could, the damages were minimal.  *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005) ("a plaintiff [must] prove that the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss."). Although Lead Plaintiff believed that he had meritorious arguments in response to Defendants' assertions, it simply cannot be disputed that the Parties held extremely disparate views on loss causation and damages, and had Defendants' arguments been accepted in whole or part, they would have dramatically limited or foreclosed any potential recovery.  *See In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-called 'battle of experts,' victory is by no means assured.").

Finally, as noted above, ability to pay was a major risk in this case.  Momentus' financial condition has deteriorated significantly since the filing of the initial complaint.  The company's stock trades at under a dollar, it faces delisting, it has included going concern warnings in its SEC filings, is exploring strategic alternatives, and it may well file for bankruptcy.  Furthermore, the $8.5 million Settlement Amount is greater than the available insurance, and it exceeds the company's total market capitalization of approximately $5.9 million.  ¶35.

In sum, the risks posed by litigation were substantial, and they were present every step of the way.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (finding attorneys' fees of 33% "justified because of the complexity of the issues and the risks").

### 3.   The Skill Required And The Quality Of The Work

The third factor to consider in determining what fee to award is the skill required and the quality of the work performed.  To this end, courts have recognized that the "prosecution and management of a complex national class action requires unique legal skills and abilities," *Omnivision*, 559 F. Supp. 2d at 1047, and that "[t]he experience of counsel is also a factor in determining the appropriate fee award." *Heritage Bond*, 2005 WL 1594403, at *12.  "This is particularly true in securities

cases because the [PSLRA] makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Omnivision*, 559 F. Supp. 2d at 1047.

As demonstrated by its firm résumé, GPM's attorneys have many years of experience litigating complex federal civil cases, and, in particular, shareholder and securities class actions. *See* Ex. 6. Lead Counsel's experience allowed them to obtain significant investigative materials in spite of the PSLRA's barriers to obtaining formal discovery, identify the complex issues involved in this case, prevail in large part against Defendants' three motions to dismiss, formulate strategies to effectively prosecute the Action, and obtain the rare settlement that exceeds the insurance available to settle the Action. Without question, Lead Counsel's skill and experience were a major factor in obtaining the excellent result achieved by this Settlement. *See Edmonds v. U.S.*, 658 F. Supp. 1126, 1137 (D.S.C. 1987) ("prosecution and management of a complex national class action requires unique legal skills and abilities."); *see also Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019 (GPM lawyers "are highly experienced in securities litigation and have vigorously prosecuted the Settlement Class's claims[.]").

In evaluating the quality of Lead Counsel's work, it is also important to consider the quality and vigor of opposing counsel. *See Heritage Bond*, 2005 WL 1594403, at *20. Defendants in this Action were represented by Kirkland & Ellis LLP, Baker & McKenzie LLP, Wilson Elser Moskowitz Edelman & Dicker LLP, Stoner Carlson LLP, and Winston & Strawn LLP, all of which are experienced, aggressive, and highly skilled counsel. "The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at *30 (N.D. Tex. Jan. 13, 2006).

### 4.    The Contingent Nature Of The Fee And The Financial Burden Carried By Counsel Support The Fee Request

The fourth factor is the contingent nature of the fee.  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("*WPPSS*"); *see also Destefano v. Zynga*, 2016 WL 537946, at *18 (N.D. Cal. Feb. 11, 2016) ("[W]hen counsel takes on a contingency fee case and the litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award.").  Here, Lead Counsel has received no compensation to date, invested 1,433.95 hours of work equating to a total lodestar of $1,208,155.00, and advanced expenses of $101,115.83.  Additional work in implementing the Settlement and claims administration will also be required.  Since the inception of this case, Lead Counsel has borne the risk that any compensation and expense reimbursement would be contingent on the result achieved, as well as on this Court's discretion in awarding fees and expenses.

The risk of no recovery in complex cases like this one is very real.  Lead Counsel know from personal experience that despite the most vigorous and competent of efforts, success in complex contingent litigation is never guaranteed.  *See Gross*, 310 F. Supp. 3d at 399 (GPM served as Co-Lead Counsel in case where the Court granted summary judgment for defendants following four years of litigation, discovery in the U.S. and U.K., and the expenditure of millions of dollars of attorney time and hard costs), *aff'd on other grounds* 784 F. App'x 27 (2d Cir. Sept. 13, 2019).[6]

And Lead Counsel is not alone.  There are many other hard-fought lawsuits where, because of the discovery of facts unknown when the case was commenced, changes in the law during the pendency of the case, or a decision of a judge or jury following a trial on the merits, excellent professional efforts by members of the plaintiffs' bar produced no attorneys' fees for counsel.  *See In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 533-34 (S.D.N.Y. 2011), *aff'd*, 838 F.3d 223 (2d Cir. 2016) (after jury verdict for plaintiff, court significantly reduced scope of

---

[6] *See also* ¶50.

class by amending class definition to exclude purchasers of ordinary shares, based on Supreme Court's reversal, in *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247 (2010), of unbroken circuit court precedent over 40 years); *Omnivision*, 559 F. Supp. 2d at 1047 (noting in 2008 that "[n]ationwide, Plaintiffs have won only three of eleven [securities class action] cases to reach verdicts since 1996."). Indeed, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *In re Xcel*, 364 F. Supp. 2d at 994.[7] Even plaintiffs who get past summary judgment and succeed at trial may find a judgment in their favor overturned on appeal or on a post-trial motion. *See Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing and remanding jury verdict of $2.46 billion after 13 years of litigation on loss causation grounds and error in jury instruction in light of *Janus Cap. Grp., Inc. v. First Deriv. Traders*, 564 U.S. 135 (2011)).[8]

Here, because Lead Counsel's fee was entirely contingent, the only certainties were that there would be no fee or expense reimbursement without a successful result, and that such a result would only be realized after substantial amounts of time, effort, and expense had been expended. Nevertheless, Lead Counsel committed significant amounts of both time and money to vigorously and successfully prosecute this Action for the benefit of the Settlement Class. ¶¶10, 75-81, 92-96. Under such circumstances, "[t]he contingent nature of counsel's representation strongly favors approval of the requested fee." *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 488 (S.D.N.Y. 1998).

---

[7] *See In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 16, 2009) (granting summary judgment to defendants after eight years of litigation), *aff'd* 627 F.3d 376 (9th Cir. 2010).

[8] *See also supra* n.4.

### 5.      A 25% Fee Award Is Consistent With Fee Awards In Similar, Complex, Contingent Litigation

"As noted above, the Ninth Circuit has established 25 percent of the common fund as the benchmark for attorney fee awards."  *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Prods. Liab. Litig.*, 2013 WL 12327929, at \*32 (C.D. Cal. July 24, 2013).  However, "a reasonable fee award is the hallmark of common fund cases" and the guiding principle in this Circuit is that a fee award be "reasonable under the circumstances."  *WPPSS*, 19 F.3d at 1295 n.2. As applied, this means that "in most common fund cases, the award exceeds that benchmark."  *Omnivision*, 559 F. Supp. 2d at 1047; *see also Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, at \*8 (C.D. Cal. Sept. 18, 2020) (awarding one-third of $12.375 million settlement fund, collecting cases, and stating: "[a]n attorney fee of one third of the settlement fund is routinely found to be reasonable in class actions."); *Multi-Ethnic Immigrant Workers Org. Network v. City of Los Angeles*, 2009 WL 9100391, at \*4 (C.D. Cal. June 24, 2009) (reviewing empirical research and stating: "[n]ationally, the average percentage of the fund award in class actions is approximately one-third.").

"This is particularly true in securities class actions such as this."  *In re Am. Apparel Inc. S'holder Litig.*, 2014 WL 10212865, at \*23 (C.D. Cal. Jul. 28, 2014); *see also Pac. Enters.*, 47 F.3d at 373 (affirming 33% award from $12 million common fund "because of the complexity of the issues and the risks"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1373 (N.D. Cal. 1989) (surveying securities cases nationwide, awarding 32.8% fee from $3.5 million fund, and noting, "[t]his court's review of recent reported cases discloses that nearly all common fund awards range around 30%"); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) (affirming award of one-third of $1.725 million settlement).  Indeed, for securities class action settlements settled between 2014 and 2023 with a gross settlement value

of between $5 million and $10 million, the median fee as a percentage of settlement value was 30%. *See* NERA Report at p.29 (Fig. 25).[9]

The requested fee is, therefore, in line with the Ninth Circuit benchmark and is well within the range of percentages courts in this Circuit and elsewhere have awarded in similarly complex cases. *See Vizcaino*, 290 F.3d at 1051 (affirming award of 28% of $97 million settlement fund); *Morris v. Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming attorneys' fee award of 33% of a $14.8 million cash class action settlement); *Heritage Bond*, 2005 WL 1594403, at *23 (awarding fee of 33.33% of $27,783,000 settlement fund because "courts in this circuit, as well as other circuits have awarded attorneys' fees of 30% or more in complex class actions"); *In re Banc of California Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding one-third of a $19.75 million settlement fund); *In re Nuvelo, Inc. Sec. Litig.*, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011) (30% of $8.9 million); *OmniVision*, 559 F. Supp. 2d at 1049 (28% of $13.75 million); *Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *6 (S.D. Cal. June 6, 2022) (awarding 33⅓% of $12.75 million settlement fund in securities class action).[10]

*A fortiori*, this factor also weighs in favor of granting Lead Counsel's 25% fee request.

### 6.    The Reaction Of The Settlement Class Supports The Requested Fee

"The existence or absence of objectors to the requested attorneys' fee is a factor is determining the appropriate fee award." *Heritage Bond*, 2005 WL 1594403, at *21. While the time to object to the fee and expense application does not expire until April

---

[9] For securities class actions settled during the 1996-2013 timeframe; the median of plaintiffs' attorneys' fees as a percentage of gross settlement value ranging from $5 million to $10 million was 30%. NERA Report at p.29 (Fig. 25). Thus, for a case settling for $8.5 million—like this one—fee awards have remained remarkably consistent since the passage of the PSLRA in 1995.

[10] *See also* Ex. 7 (collecting Ninth Circuit cases).

1, 2024, to date, only a single objection has been filed with the Court. ECF No. 196.[11] "That only one objection to the fee request was received is powerful evidence that the requested fee is fair and reasonable." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 594 (S.D.N.Y. 2008); *see also Fernandez v. Victoria Secret Stores, LLC*, 2008 WL 8150856, at *13 (C.D. Cal. 2008) (3 members objected and 29 opted out, indicating favorable result and award of "generous fee").

### C.    A Lodestar Cross-Check Supports The Requested Fee

Although Lead Counsel seek approval of a fee based on a percentage of the fund, as "[a] final check on the reasonableness of the requested fees, courts often compare the fee counsel seeks as a percentage with what their hourly bills would amount to under the lodestar analysis." *Omnivision*, 559 F. Supp. 2d at 1048; *see also In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness").

"A lodestar cross-check first computes the plaintiffs' attorneys' reasonable hourly rate for the litigation and multiplies that rate by the number of hours dedicated to the case." *In re Genworth Fin. Sec. Litig.*, 2016 WL 5400360, at *7 (E.D. Va. Sep. 26, 2016). In the second step of the analysis, a court adjusts the lodestar to take into account, among other things, the time and labor required, the result achieved, the quality of representation, whether the fee is fixed or contingent, the novelty and difficulty of the questions involved, and awards in similar cases. *See Gonzalez v. City of Maywood*, 729 F.3d 1196, 1209, n.11 (9th Cir. 2013); *Vizcaino*, 290 F.3d at 1051-52 ("courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases."); *Heritage Bond*, 2005 WL 1594403, at *22 ("In securities class

---

[11] Lead Counsel will address the objection and any others that are received in its reply papers, which will be filed on April 15, 2024.

actions, it is common for a counsel's lodestar figure to be adjusted upward by some multiplier reflecting a variety of factors such as the effort expended by counsel, the complexity of the case, and the risks assumed by counsel.").

When the lodestar is used as a cross-check, "the focus is not on the necessity and reasonableness of every hour of the lodestar, but on the broader question of whether the fee award appropriately reflects the degree of time and effort expended by the attorneys." *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 270 (D.N.H. 2007); *Glass v. UBS Fin. Servs.*, 331 F. App'x. 452, 456 (9th Cir. 2009).[12] In this case, the lodestar method – whether used directly or as a "cross-check" on the percentage method – strongly demonstrates the reasonableness of the requested fee.

Here, Lead Counsel (including attorneys, paralegals, and professional support staff) collectively devoted a total of 1,433.95 hours to the prosecution of the Action. Ex. 3.   As is customary when seeking a percentage-of-the-fund award in common fund cases and submitting data for a lodestar cross-check, Lead Counsel is submitting a declaration that includes a schedule breaking down the firm's lodestar by individual, position, billing rate, and hours billed.[13]   Ex. 3.   Based on current hourly rates,[14] Lead Counsel's lodestar is $1,208,155.00.   ¶79.[15]   Thus, the 25% fee request (equal to $2,125,000), yields a multiplier of 1.76.   *Id.*

---

[12] *See also In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 (D. Ariz. 2012) ("an itemized statement of legal services is not necessary for an appropriate lodestar cross-check"); *In re Am. Apparel*, 2014 WL 10212865, at *23 ("the lodestar cross-check can be performed with a less exhaustive cataloging and review of counsel's hours.").

[13] *See In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1176 (S.D. Cal. 2007) ("Here, counsel have provided sworn declarations from attorneys attesting to the experience and qualifications of the attorneys who worked on the case, the hourly rates, and the hours expended.").

[14] Courts use current rather historic rates, to ensure that "[a]ttorneys in common fund cases [are] compensated for any delay in payment." *Fischel v. Equitable Life Assur. Soc'y of U.S.*, 307 F.3d 997, 1010 (9th Cir. 2002).

[15] Lead Counsel's rates range from $895 to $1,195 for partners, and $450 to $750 for non-partners (¶78), and "are comparable to peer plaintiffs and defense-side law firms

A multiplier of 1.76 is well within the range of multipliers commonly awarded in securities class actions and other complex litigation. *See Vizcaino*, 290 F.3d at 1051-52 (approving a 3.65 multiplier and finding that when the lodestar is used as a cross-check, "most" multipliers were in the range of 1 to 4, but citing numerous examples of even higher multipliers); *Steiner v. Am. Broad Co.*, 248 F. App'x 780, 783 (9th Cir. 2007) (approving a percentage fee award that corresponded to a multiplier of 6.85); *Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1125 (C.D. Cal. 2008) (approving percentage fee award equal to multiplier of approximately 5.2, collecting cases and stating that "[w]hile this is a high end multiplier, there is ample authority for such awards resulting in multipliers in this range or higher."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fee equal to a 4.65 multiplier, which was "well within range awarded by courts in this Circuit and courts throughout the country").

"The fact that [Lead] Counsel's fee award will not only compensate them for time and effort already expended, but for the time that they will be required to spend administering the settlement going forward, also supports their fee request." *Leach v. NBC Universal Media, LLC*, 2017 WL 10435878 at ¶49 (S.D.N.Y. Aug. 24, 2017). Indeed, Lead Counsel will oversee the claims administration process, respond to shareholder inquiries, and prepare and present a Motion for Distribution of the Net Settlement Fund to the Court. The multiplier will, therefore, diminish as the case moves forward.

In sum, Lead Counsel's fee request is well within the range of reasonableness in complex class actions such as this one, whether calculated as a percentage of the fund or in relation to Lead Counsel's lodestar.

---

litigating matters of similar magnitude." *Lea v. TAL Educ. Grp.*, 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) (approving GPM's 2021 rates); *see also* Ex. 4 (chart of rates charged by peer plaintiff and defense counsel in complex litigation).

## IV.    LEAD COUNSEL'S EXPENSES SHOULD BE REIMBURSED

In addition to an award of attorneys' fees, attorneys who create a common fund for the benefit of a class are also entitled to payment of reasonable litigation expenses and costs from the fund. *Omnivision*, 559 F. Supp. 2d at 1048.  The appropriate analysis to apply in deciding which expenses are compensable in a common fund case of this type is whether the particular costs are of the type typically billed by attorneys to paying clients in the marketplace.  *See Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee paying client.").

From the beginning of the case, Lead Counsel were aware that they might not recover any of their expenses and would not recover anything unless and until the Action was successfully resolved.  Lead Counsel also understood that, even assuming that the case was ultimately successful, an award of expenses would not compensate for the lost use of the funds advanced.  Thus, Lead Counsel were motivated to, and did, take significant steps to minimize expenses whenever practicable without jeopardizing the vigorous and efficient prosecution of the Action.  ¶93.

In the aggregate, Lead Counsel have incurred out-of-pocket expenses in the amount of $101,115.83 while prosecuting the Action, and these expenses are set forth in the Sadler Declaration. ¶94.  The vast majority of expenses ($98,336.35, or approximately 97.25%) were for the retention of a experts ($41,261.00), the mediator ($33,618.75), and a private investigation firm ($10,564.20), as well as online research ($12,892.40).  Each of these expenses were critical to Lead Counsel's success in achieving the Settlement and, like the other categories of expenses for which counsel seek reimbursement, are the types of expenses routinely charged to clients who pay hourly.  They should, therefore, be reimbursed out of the common fund.  *See Immune Response*, 497 F. Supp. 2d at 1177-78 (approving counsel's request for reimbursement "for 1) meals, hotels, and transportation; 2) photocopies; 3) postage, telephone, and fax; 4) filing fees; 5) messenger and overnight delivery; 6) online legal

research; 7) class action notices; 8) experts, consultants, and investigators; and 9) mediation fees.").[16]

## V.  THE COURT SHOULD GRANT LEAD PLAINTIFF'S PSLRA AWARD REQUEST

In connection with the Lead Counsel's request for payment of Litigation Expenses, Lead Plaintiff respectfully requests a PSLRA award in the amount of $10,000 to reimburse Mr. Haenisch for time spent prosecuting the Action.  *15 U.S.C. § 78u-4(a)(4)*.  "Court[s] have found that the PSLRA permits courts to award lead plaintiffs in federal securities actions reimbursement for their time devoted to participating in and directing the litigation on behalf of the class."  *Guevoura Fund Ltd. v. Sillerman*, 2019 WL 6889901, at *22 (S.D.N.Y. Dec. 18, 2019). Reimbursement of such costs are allowed because they "encourages participation of plaintiffs in the active supervision of their counsel."  *Varljen v. H.J. Meyers & Co., Inc.*, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000).

Here, Mr. Haenisch took an active role in the litigation by, among other things: (i) moving to serve as Lead Plaintiff in the Action; (ii) producing his trading records to my attorneys; (iii) regularly communicated with his attorneys regarding the posture and progress of the case; (iv) reviewing significant pleadings and briefs filed in this Action; (v) reviewing the Court's orders and discussing them with his attorneys; (vi) consulting with his attorneys regarding the settlement negotiations; and (vii) evaluating and approving the proposed Settlement.  *See* Ex. 5 at ¶¶3-6.  These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives."  *In re Marsh & McLennan Cos. Sec. Litig.*, 2009 WL 5178546, at *21 (S.D.N.Y. Dec. 23, 2009).  Consequently, Lead Counsel respectfully requests that the Court grant Lead Plaintiff's request for reimbursement of his "reasonable

---

[16] Lead Counsel's requested reimbursement of $101,115.83 (plus a PSLRA award of $10,000 for Lead Plaintiff) is substantially less than the $165,000 maximum amount of potential expenses set forth in the Notice.  Ex. 1-A, ¶66.

costs and expenses incurred in managing this litigation and representing the Class." *Id.* at *21; *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *6 (C.D. Cal. Oct. 24, 2017) ($10,000 award to lead plaintiff).

## VI.    CONCLUSION

For the foregoing reasons, Lead Counsel respectfully requests that the Court grant the fee and expense application.

DATED:  March 18, 2024                Respectfully submitted,

**GLANCY PRONGAY & MURRAY LLP**

By:    */s/ Casey E. Sadler*

Robert V. Prongay
Casey E. Sadler
Garth Spencer
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone:  (310) 201-9150
Email: csadler@glancylaw.com
Email: rprongay@glancylaw.com
Email: gspencer@glancylaw.com

*Counsel for Lead Plaintiff Hartmut Haenisch*

THE LAW OFFICES OF FRANK R. CRUZ
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007
Email: fcruz@frankcruzlaw.com

*Additional Counsel*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Lead Plaintiff Hartmut Haenisch, certifies that this brief contains 6,940 words, which complies with the word limit of L.R. 11-6.1.


DATED: March 18, 2024              *s/ Casey E. Sadler*
                                   Casey E. Sadler

## **PROOF OF SERVICE**

I hereby certify that on this 18th day of March, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Casey E. Sadler*
Casey E. Sadler