Robert V. Prongay (SBN 270796)
 *rprongay@glancylaw.com*
Casey E. Sadler (SBN 274241)
 *csadler@glancylaw.com*
Garth Spencer (SBN 335424)
 *gspencer@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Hartmut Haenisch*
[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE STABLE ROAD ACQUISITION CORP. SECURITIES LITIGATION | Case No. 2:21-CV-5744-JFW(SHKx)<br><br>Honorable John F. Walter<br><br>**REPLY MEMORANDUM IN SUPPORT OF: (I) LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**<br><br>Hearing Date: April 22, 2024<br>Hearing Time: 1:30 p.m.<br>Location: W. 1st Street, Courtroom 7A |

REPLY MEMORANDUM

# **TABLE OF CONTENTS**

I.    THE SETTLEMENT CLASS'S REACTION SUPPORTS APPROVAL OF THE SETTLEMENT, PLAN OF ALLOCATION, AND THE REQUESTED ATTORNEYS' FEES AND LITIGATION EXPENSES ................................ 2

II.   THE OBJECTION IS WITHOUT MERIT AND THE SETTLEMENT SHOULD BE APPROVED ................................................................................. 3

      A.    The Language Of The Proposed Release Is Standard And Is Routinely Held To Be Proper In The Ninth Circuit ....................................................... 4

      B.    Settlements Routinely And Appropriately Release Non-Parties From Factually Related Claims ......................................................................... 6

      C.    The Objection Fails To Provide Any Evidence That The Settlement Amount Is Insufficient ..................................................................................... 8

      D.    The Objection Is Contrary To Public Policy ........................................... 8

      E.    The Court Should Not Issue An Advisory Opinion On Whether The Settlement Releases Claims In The Objectors' Delaware Action ........ 11

      F.    The Objectors' Afterthought Request To Conduct A Discovery Fishing Expedition Should Be Rejected ........................................................... 11

III.  CONCLUSION ................................................................................. 12

## TABLE OF AUTHORITIES

CASES

*Belew v. Brink's, Inc.*,
  721 F. App'x 734 (9th Cir. 2018) ....................................................................... 4, 7

*Davis v. Yelp, Inc.*,
  2022 WL 21748777 (N.D. Cal. Aug. 1, 2022) ....................................................... 5

*Eisen v. Porsche Cars N. Am., Inc.*,
  2014 WL 439006 (C.D. Cal. Jan. 30, 2014) ........................................................ 10

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .............................................................................. 2

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) ................................................................................ 4

*In re Banc of California Sec. Litig.*,
  2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ...................................................... 3

*In re Extreme Networks, Inc. Sec. Litig.*,
  2019 WL 3290770 (N.D. Cal. July 22, 2019) ....................................................... 3

*In re Network Assocs., Inc., Sec. Litig.*,
  76 F. Supp. 2d 1017 (N.D. Cal. 1998) ................................................................ 10

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................ 2, 3

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
  2018 WL 6198311 (N.D. Cal. Nov. 28, 2018) ...................................................... 6

*In re W. States Wholesale Nat. Gas Antitrust Litig.*,
  725 F. App'x 560 (9th Cir. 2018) ......................................................................... 6

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
  2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) ........................................................ 2

*Mauss v. NuVasive, Inc.*,
   2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ...........................................................3

*Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)...........................................................................2

*Negrete v. ConAgra Foods, Inc.*,
   2021 WL 4202519 (C.D. Cal. June 21, 2021).........................................................7

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
   442 F.3d 741 (9th Cir. 2006) ................................................................................7

*Roberts v. Electrolux Home Prods., Inc.*,
   2014 WL 4568632 (C.D. Cal. Sept. 11, 2014)......................................................10

*Sabol v. Hydroxatone LLC*,
   2013 WL 6154432 (D.N.J. Nov. 22, 2013) .............................................................7

*Smith v. CRST Van Expedited, Inc.*,
   2012 WL 5873701 (S.D. Cal. Nov. 20, 2012)........................................................11

*United States v. Oregon*,
   913 F.2d 576 (9th Cir. 1990) .................................................................................4

*Waldbuesser v. Northrop Gruman Corp.*,
   2017 WL 9614818 (C.D. Cal. Oct. 24, 2017) .........................................................3

*Zhou v. Faraday Future Intelligent Elec. Inc.*,
   2024 WL 1245341 (C.D. Cal. Mar. 18, 2024) ................................................*passim*

*Zhou v. Faraday Future Intelligent Elec. Inc.*,
   2024 WL 1458406 (C.D. Cal. Mar. 6, 2024) ........................................................12

OTHER AUTHORITIES

6 Newberg and Rubenstein on Class Actions § 18:20 (6th ed.).................................7

The reaction of the Settlement Class confirms that the proposed $8.5 million non-reversionary Settlement is an excellent result.[1] Following an extensive notice program, including notice provided to approximately 81,000 potential Settlement Class Members, not a single institutional or large shareholder has objected to any aspect of the Settlement, the Plan of Allocation, or the requested fees and Litigation Expenses. Moreover, Lead Plaintiff has only received four requests for exclusion. The Settlement Class's overwhelmingly positive reaction strongly supports approval of the Settlement and the Plan of Allocation, as well as the request for attorneys' fees and Litigation Expenses.

Only one objection has been filed with the Court.  ECF No. 196 (the "Objection"). The Objection essentially seeks an improper advisory opinion on whether the Settlement's release language would apply to preclude the objectors' claims brought in their Delaware state court action.  The correct inquiry, which the Objection entirely fails to address, is whether the Settlement releases only claims that share the same "factual predicate" as the claims in the instant Action, which it does. Judge Snyder recently rejected a similar objection to a class action settlement from similarly situated Delaware state court plaintiffs in *Zhou v. Faraday Future Intelligent Elec. Inc.*, 2024 WL 1245341 (C.D. Cal. Mar. 18, 2024). The *Faraday* opinion is well reasoned, directly on-point, and the Objection here should be overruled for the same reasons.

Instead of just excluding themselves from the Settlement Class and litigating their case in Delaware, the objectors ask the Court to re-write or reject the Settlement, and—in doing so—deny relief to thousands of Settlement Class Members who were injured by the allegedly wrongful conduct. As set forth below, the Objection provides no basis for such a result and is utterly without merit. Accordingly, it should be denied in its entirety, and the Settlement should be approved.

---

[1] All capitalized terms, unless otherwise defined herein, have the same meaning as set forth in the Stipulation and Agreement of Settlement dated August 18, 2023 (the "Stipulation") (ECF No. 178-1), or the Declaration of Casey E. Sadler. ECF No. 202.

REPLY MEMORANDUM

**I.**  **THE SETTLEMENT CLASS'S REACTION SUPPORTS APPROVAL OF THE SETTLEMENT, PLAN OF ALLOCATION, AND THE REQUESTED ATTORNEYS' FEES AND LITIGATION EXPENSES**

Strategic Claims Services, Inc. has either mailed a Notice and Claim Form, or emailed the link to the Notice and Claim Form, to 81,066 potential Settlement Class Members.  *See* Supplemental Declaration of Margery Craig ("Suppl. Craig Decl."),[2] at ¶4.  Important filings related to the Final Approval Motion (ECF Nos. 198-99) and the Fee and Expense Motion (ECF Nos. 200-01) were placed on the Settlement Website.  *See* Suppl. Craig Decl., at ¶7.  Only four exclusion requests have been received, and only one objection was filed with the Court.  *See id.* at ¶¶8-9; ECF No. 196.

In this Circuit, "the reaction of the class members to the proposed settlement" is one of the factors to consider in analyzing whether a settlement is fair, reasonable, and adequate.  *See, e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998).[3] "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004).

That only one objection and only four requests for exclusion have been received demonstrates the Settlement Class's positive reaction to the Settlement and supports final approval. *Faraday*, 2024 WL 1245341 at *7-10 (approving settlement where there was one objection and four exclusion requests, noting "[t]he absence of objections to the Settlement by almost all class members strongly supports approval."); *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2013 WL 6577020, at *16 (C.D. Cal. Dec. 5, 2013) (69 exclusion requests in response to mailing of over 50,000 notices supports settlement); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (approving

---

[2] The Supp. Craig Decl. is attached as Exhibit 1 to the Supplemental Declaration of Casey E. Sadler, which is filed concurrently herewith.

[3] Unless otherwise noted, all internal quotations and citations are omitted, and all emphasis is added.

settlement where there were three objections out of approximately 57,000 class members). Moreover, the fact that no institutional investors or other large shareholders have objected to the proposed Settlement further underscores the reasonableness of the Settlement. *See, e.g.*, *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) ("Many potential class members are sophisticated institutional investors; the lack of objections from such institutions indicates that the settlement is fair and reasonable.").

That there are no objections to the Plan of Allocation—it is not even mentioned in the Objection—strongly supports its approval. *See, e.g.*, *Mauss v. NuVasive, Inc.*, 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018) (concluding the plan of allocation was fair and reasonable after it was in the notice and no class member objected).

Finally, the reaction of the Settlement Class should also be considered with respect to Lead Counsel's Fee and Expense Motion. *See Omnivision*, 559 F. Supp. 2d at 1048 ("The reaction of the class may also be a determining factor in . . . determining the fee award."). Here, while the sole Objection states in passing that the objectors "object to the proposed settlement *and request for attorneys' fees*," that is the *full* extent of the argument concerning fees. Thus, the Objection should be overruled as to the fee request.

Moreover, the lack of any real objection to the Fee and Expense Motion supports a finding that it is fair and reasonable. *See Waldbuesser v. Northrop Grumman Corp.*, 2017 WL 9614818, at *5 (C.D. Cal. Oct. 24, 2017) (finding only two objections after mailing 210,000 notices was "remarkably small," and "conclud[ing] that the lack of significant objections to the requested fees justifies an award of one-third of the [$16.5 million] settlement fund."); *In re Banc of California Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% of $19,750,000 settlement fund where "over 35,000 copies of the Notice were disseminated to potential Class Members . . . and no objections to the fees or expenses were filed by Class Members.").

## II.   THE OBJECTION IS WITHOUT MERIT AND THE SETTLEMENT SHOULD BE APPROVED

An objector to a proposed settlement agreement bears the burden of proving any

assertions they raise challenging the reasonableness of a class action settlement. *United States v. Oregon*, 913 F.2d 576, 581 (9th Cir. 1990). Where the negotiated settlement is the product of "good faith, arms-length negotiation" it is "presumptively valid" and the objector must meet "a heavy burden" of showing it is "unreasonable." *Id.* As explained in the Final Approval Motion (pp. 6-7) and the accompanying Sadler Declaration (¶¶23-25), the Settlement here was reached only after months of arms-length negotiation overseen by a highly respected mediator, and bears no sign of collusion. Indeed, the lack of collusion is evident from Lead Plaintiff having to bring a motion to compel Defendants to comply with the Settlement. *See* ECF Nos. 185-87. It is, therefore, the objectors' burden to show that the Settlement is unreasonable. As shown below, the Objection utterly fails to carry this burden, and should be overruled.

**A.    The Language Of The Proposed Release Is Standard And Is Routinely Held To Be Proper In The Ninth Circuit**

The Settlement's release language is commonplace in court-approved securities class action settlements, and appropriately restricts the scope of the release to the facts underlying this Action. "[T]he Ninth Circuit allows federal courts to release not only those claims alleged in the complaint, but also claims based on the identical factual predicate as that underlying the claims in the settled class action." *Faraday*, 2024 WL 1245341, at \*8. Put differently, "the released claims must arise from the same common nucleus of operative fact as those alleged in the complaint." *Belew v. Brink's, Inc.*, 721 F. App'x 734, 735 (9th Cir. 2018); *see also Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) ("we have held that federal district courts properly released claims not alleged in the underlying complaint where those claims depended on the same set of facts as the claims that gave rise to the settlement").

Here, the "Released Plaintiff's Claims" are appropriately limited to claims that: (i) were asserted in the Complaint; or (ii) "arise out of, or relate to, or are based upon" matters alleged in the Complaint *and* relate to transactions in or ownership of SRAC Securities during the Settlement Class Period. *See* ECF No. 178-1 at ¶1(nn). The Objection does not argue that the first prong—claims asserted in the Complaint—should

not be released. As to the second prong, it is properly tailored to the same common nucleus of operative fact as those alleged in the Complaint, and so satisfies the identical factual predicate rule. *First,* the release is limited to claims relating to matters alleged in the Complaint. *Second*, the release is further limited to claims relating to transactions in or ownership of SRAC Securities. *Third*, the release is still further limited to claims relating to the October 7, 2020 through July 13, 2021 Settlement Class Period.[4] Thus, the Settlement releases only claims relating to the conduct at issue in the Complaint that affected SRAC Securities during the Settlement Class Period.[5]  Any claims that do not relate to this "common nucleus of fact" are not released.[6]

This scope of the proposed release is similar to many other releases in securities class action settlements that have been approved by this Court, other courts in the Ninth Circuit, and even the law firms now representing the objectors (in cases where they served as lead counsel for federal securities class action plaintiffs). *See* Suppl. Sadler Decl., Ex. 2 (table of example cases and release language). For example, *Faraday* analyzed similar release language, finding that it "is commensurate with the legal standard," and that "Courts in this circuit have approved releases with similar language." 2024 WL 1245341, at *8 (collecting cases); *see also Davis v. Yelp, Inc.*, 2022 WL 21748777, at *2 (N.D. Cal. Aug. 1, 2022) (analyzing similar release and holding that

---

[4] The Objection simply ignores that the objectors' Delaware case is premised entirely on a purportedly misleading proxy statement that was issued *after* the end of the Settlement Class Period. *See, e.g*., ECF 196-5 at ¶¶27-28 (objectors' Delaware complaint alleging misleading statements in SRAC's July 23, 2021 proxy statement).

[5] The Objection is highly misleading in its presentation of excerpts from the definition of "Released Plaintiff's Claims," most notably omitting that the release has both a time limitation (the Settlement Class Period) and a subject matter limitation (related to conduct alleged in the Complaint). *See* Objection at 2-3.

[6] The release is even further limited to "all claims and causes of action. . . *that Lead Plaintiff or any other member of the Settlement Class:* (i) asserted in the operative Complaint, or (ii) could have asserted . . ." ECF No. 178-1 at ¶1(nn). Claims that could not have been asserted by Settlement Class Members are not released.

REPLY MEMORANDUM

"[i]n limiting the scope of the of released claims as such, the agreement focuses on the factual predicates relevant to the securities claims"); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2018 WL 6198311, at *5 (N.D. Cal. Nov. 28, 2018) ("The proposed release of claims is sufficiently tailored. The release's scope is limited to claims that relate to both the complaint's factual allegations and to the purchase or ownership of VWAG's ADRs.").

The Objection fails to address the weight of such precedent, and does not even mention the applicable "identical factual predicate" rule. Instead, the objectors merely complain that the Settlement *might* release claims in their Delaware state court action (which this Court should not decide, *see infra* Part II.E), and claim to be confused by the meaning of the release.[7] The objectors' speculation regarding the Parties' subjective intent when negotiating the release language is also irrelevant. After extensive negotiations, overseen by a respected mediator, the Parties agreed to the release language that is plainly set forth in the Stipulation. It is the objective language of the Stipulation, and not the subjective intent of the Parties, that determines the release's scope. *See In re W. States Wholesale Nat. Gas Antitrust Litig.*, 725 F. App'x 560, 564 (9th Cir. 2018) (whether "claims share an 'identical factual predicate' is a purely legal question; we need not look beyond the complaints in each action").

**B.    Settlements Routinely And Appropriately Release Non-Parties From Factually Related Claims**

The Objection claims that the release is overbroad because it extends not only to Defendants, but also to directors, officers and other affiliates. Objection at 10; Stipulation at ¶1(n) (definition of "Defendants' Releasees"). Defendants cite no authority holding that such a release is impermissible. On the contrary, it is well-established that "[a] class settlement may also release factually related claims against parties not named as

---

[7] The objectors' professed confusion regarding why the release excludes derivative claims does not make the release "untenably vague and overly broad." Objection at 9. In fact, the exclusion of derivative claims, which were not alleged in the Complaint, makes the release even more narrowly tailored to the facts and claims in this Action.

defendants," provided that the released claims "arise from an identical factual predicate as the claims asserted" in the action. *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006); 6 Newberg and Rubenstein on Class Actions § 18:20 (6th ed.) ("courts approve the release of non-parties, even those beyond their jurisdiction, so long as there exists some factual relationship between the release and the class's claims.").

Here, extending the release to Defendants' related parties is appropriate because the proposed release language is narrowly tied both in subject matter and temporally to the conduct alleged in the Complaint. Therefore, the released claims as to Defendants' affiliates "arise from the same common nucleus of operative fact as those alleged in the complaint" against the Defendants. *Belew*, 721 F. App'x at 735. Such non-party releases are customary in securities class action settlements, and have been repeatedly approved by this Court, other courts in the Ninth Circuit, and even the law firms representing the objectors. *See* Suppl. Sadler Decl., Ex. 2 (table of example cases and release language).

Again, *Faraday* is instructive. There, the Delaware objectors made essentially the same arguments as here about the scope of the release, including objecting to the inclusion of certain non-parties. *See* Case No. 2:21-cv-09914 at ECF No. 125, p. 7. Judge Snyder overruled the objection, finding "that the proposed release language is appropriate. The Ninth Circuit allows federal courts to release not only those claims alleged in the complaint, but also claims based on the identical factual predicate as that underlying the claims in the settled class action." *Faraday*, 2024 WL 1245341 at *8; *see also Negrete v. ConAgra Foods, Inc.*, 2021 WL 4202519, at *8 (C.D. Cal. June 21, 2021) ("The inclusion of the Third-Part[ies] . . . in the definition of Released Parties . . . does not undermine the fairness of the settlement"); *Sabol v. Hydroxatone LLC*, 2013 WL 6154432, at *14 (D.N.J. Nov. 22, 2013) ("There is nothing wrong, in general, with releasing non-parties in connection with the settlement of a class action. That is frequently done when the claims against the non-parties are closely related factually to the claims asserted against the named parties").

### C. The Objection Fails To Provide Any Evidence That The Settlement Amount Is Insufficient

The Objection also argues that the Settlement Amount is too small because the Delaware claims are "many times (*i.e.*, at least an order of magnitude) greater than the $8.5 million for which the Federal Plaintiffs have agreed to settle." Objection at 6-8. The Objection fails to provide *any* factual basis for this claim, including, for instance, a damages analysis. Nor does it cite a single case with similar claims where a better result was obtained. Moreover, the Objection does not even address where it plans to get the money for this hypothetical recovery when the Company is teetering on bankruptcy and Lead Plaintiff was forced to move the Court to enforce payment of the Settlement Amount. In stark contrast, Lead Plaintiff has already articulated why the Settlement is an excellent result and provided actual evidence in support. ECF No. 199 at 13-15. Indeed, the recovery here is more than two and a half times the typical recovery. *Id.* at 14.

Further, the lack of objections and opt-outs after dissemination of notice to over 81,000 potential Settlement Class Members and nominees supports a finding that other Settlement Class Members do not share the objectors' unsubstantiated views about the value of their Delaware litigation. The Objection's bald assertions that the Settlement is insufficient should be rejected.[8]

### D. The Objection Is Contrary To Public Policy

This Action was filed on July 15, 2021 and Hartmut Haenisch was appointed lead plaintiff on October 20, 2021. ECF No. 75. On November 12, 2021, the Complaint was filed (ECF No. 94), and after briefing on three motions to dismiss, the Court denied those motions in substantial part on July 13, 2022. ECF No. 154. On August 8, 2022, the Parties filed a Joint Rule 26(f) Report that disclosed that the Parties "contemplate that

---

[8] The Objection further alleges that the "settlement is utterly insufficient to justify releasing the Delaware Fiduciary Duty Action's meritorious claims." Objection at 7. Leaving aside the Objectors' naked claims of merit, as discussed *infra* at Part II.E, the Court should not issue an advisory opinion on whether the Settlement releases claims in the objectors' Delaware action.

they will participate in a private dispute resolution proceeding . . . no later than October 28, 2022." ECF 165 at 11. In contrast, the first complaint in the consolidated Delaware action was not filed until November 10, 2022. *See* Objection at 2.

Put another way, the Delaware action was filed well after Lead Plaintiff had exhaustively researched and filed the detailed amended Complaint, substantially defeated three motions to dismiss, and participated in a publicly announced mediation session. Furthermore, the objectors' complaint repeats verbatim or with minor changes allegations from the Complaint in this Action, and even admits that the objectors' "information and belief is based upon, among other things . . . the files in *In Re Stable Road Acquisition Corp. Securities Litigation*, No. 2:21-cv-5744 (C.D. Cal.)." ECF No. 196-5 at 2. All of this strongly suggests that the Delaware plaintiffs are attempting to piggy-back off the hard work and success of Lead Plaintiff and Lead Counsel.

Such a result should not be countenanced. The four objectors all had the opportunity to move this Court to be lead plaintiff pursuant to the PSLRA. If they had, they would have not been appointed lead plaintiff, because, insofar as can be determined from the records they have filed in support of their Objection,[9] they only lost $194.77 (Lora), $123.97 (Shirley) and $818.78 (Spears), whereas Lead Plaintiff Haenisch lost $256,945.90. *See* ECF No. 64 at 7. Based on the incomplete transaction records he provided,[10] one of the objectors, James Burk, actually had a Settlement Class Period gain of $397.47, meaning he lacks standing to make his objection. *See* ECF No. 181 at ¶1

---

[9] These loss calculations use the last-in, first-out method and the PSLRA's 90-day lookback price, and are based on objectors' submissions. However, those records appear to be incomplete, and do not comply with the requirements needed to submit an objection (*see* ECF No. 181 at ¶18; *id.* at ¶19) since they do not reflect the entire Settlement Class Period, and three objectors do not claim to provide records reflecting all Settlement Class Period transactions. *See* ECF Nos. 196-1 at ¶3 (Burk); 196-3 at ¶3 (Shirley); 196-4 at ¶3 (Spears).

[10] Burk's account statements demonstrate that he had relevant transactions for which no information was provided. *See* ECF No. 196-1 at Exs. A, B (3,000 share discrepancy between November 30, 2021 and March 31, 2022 not accounted for).

(certifying Settlement Class of certain persons who purchased SRAC Securities and "were damaged thereby").

One of the primary reasons for enactment of the PSLRA was to curtail lawyer-driven litigation and ensure that securities class action lawsuits were overseen by investors with significant losses, whose personal interests would best align with those of the class of investors suffering losses from the same occurrence. *See In re Network Assocs., Inc., Sec. Litig*., 76 F. Supp. 2d 1017, 1020 (N.D. Cal. 1998). Lawyer-driven litigation is similarly disfavored in the context of class action settlement objections. *E.g., Roberts v. Electrolux Home Prods., Inc*., 2014 WL 4568632, at *12 (C.D. Cal. Sept. 11, 2014) (noting "issues as to the legitimacy of the objection" that was "lawyer-driven and appears to be brought for an improper motive, and would otherwise delay important . . . benefits to the Settlement Class members"). The PSLRA and the Court's appointment of Lead Plaintiff vested him with broad authority to determine which claims to include, and to represent the Class's interests, including by negotiating the favorable Settlement.

As a matter of policy, a court-appointed lead plaintiff should not be required to elevate the narrow interests of objectors over the much greater financial interest of thousands of other class members. This would severely detract from the ability of lead plaintiffs to achieve beneficial settlements for the classes they represent, because tag-along actions filed by other plaintiffs with only nominal interests in the litigation would be able to hold up or preclude fair, reasonable and adequate settlements.[11]   Here, the objectors, who appear to have lost just a little more than one thousand dollars, are attempting to disrupt an $8.5 million settlement that followed a lengthy mediation process and was agreed to by Court-appointed Lead Plaintiff and Lead Counsel. If the objectors are truly dissatisfied with their potential recovery in the Settlement, they could simply opt out and continue to pursue their claims in Delaware. *See Eisen v. Porsche*

---

[11] The objectors' counsel previously informed Lead Counsel that their clients would object unless they could "get something worked out," though what counsel meant by this was not clear. *See* ECF No. 196-9 at p. 3.

*Cars N. Am., Inc.*, 2014 WL 439006, at *7 (C.D. Cal. Jan. 30, 2014) ("Federal courts routinely hold that the opt-out remedy is sufficient to protect class members who are unhappy with the negotiated class action settlement terms").  Instead, they filed the Objection seeking to have the entire Settlement thrown out if their demands are not met. This is yet another reason to overrule the objection.

### E.   The Court Should Not Issue An Advisory Opinion On Whether The Settlement Releases Claims In The Objectors' Delaware Action

The objectors essentially ask this Court to issue a hypothetical, advisory opinion on whether the proposed Release would bar claims in the Delaware action, and if so, to require the Parties to carve them out. The Court should decline that improper request. The determination of whether the proposed release covers any claims in the objectors' Delaware action should be made, if at all, by the Delaware court on consideration of an appropriate motion.  *See Faraday*, 2024 WL 1245341, at *8 n.5 ("The Court does not address whether the proposed release language would cover the claims that Cleveland is asserting in the Delaware Action. That determination is properly left for the Delaware Court of Chancery.").

If the Settlement is approved by this Court, as it should be, Defendants may or may not choose to assert in the objectors' Delaware action that the claims in that case are barred by the Settlement's release. If Defendants do make such an assertion in the Delaware court, the objectors will have the opportunity to argue that the release does not bar their claims, and the Delaware court will be properly positioned to rule on that ripe dispute. *See Smith v. CRST Van Expedited, Inc.*, 2012 WL 5873701, at *4 (S.D. Cal. Nov. 20, 2012) (overruling objection where the defendant "has not yet sought to enforce this release in [the objector's] action. If such a dispute ever in fact arises, it will be for the Court hearing the dispute, with full briefing, to decide").

### F.   The Objectors' Afterthought Request To Conduct A Discovery Fishing Expedition Should Be Rejected

According to the Objection, "Objectors reserve the right to . . . call counsel for the Federal Plaintiffs and/or Federal Defendants as witnesses at the settlement hearing,

and/or [] otherwise seek discovery with respect to the settlement and negotiation thereof, including with respect to negotiations occurring between the parties." Objection at 8-9. This request, which is not supported by any argument or legal authorities, should be rejected. First, such information is completely irrelevant to determining the scope or effect of the release. *Zhou v. Faraday Future Intelligent Elec. Inc.*, 2024 WL 1458406, at *2 (C.D. Cal. Mar. 6, 2024)[12] ("the effect of the release on the Delaware Action is not appropriately determined by discovery, as the language of the release controls that determination"). Second, the Objection "has failed to show that this is one of the 'rare circumstances' where discovery pertaining to settlement negotiations is appropriate," because the objectors have made no showing whatsoever that the Settlement is collusive. *Id.* Third, the requested discovery "invade[s] the attorney-client and mediator privileges, as they seek to discover settlement negotiations and attorney-client communications." *Id.* The objectors' unsupported threat to interrogate counsel about irrelevant and privileged communications should be rejected.

## III.   CONCLUSION

Lead Plaintiff respectfully requests that the grant the Final Approval Motion and Fee and Expense Motion in their entirety, and overrule the Objection.[13]

---

[12] Unlike in *Faraday*, the objectors here did not actually file a request for leave to take discovery in aid of their objection. *Id.* at 1.

[13] Given the passage of the exclusion and objection deadlines, a revised [Proposed] Judgment Approving Class Action Settlement and a revised [Proposed] Order Awarding Attorneys' Fees and Reimbursement of Litigation Expenses are submitted herewith. For the Court's convenience, Lead Plaintiff is also resubmitting the [Proposed] Order Approving Plan of Allocation of Net Settlement Fund.

Dated: April 15, 2024

**GLANCY PRONGAY & MURRAY LLP**

By: *s/ Casey E. Sadler*
Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Casey E. Sadler (SBN 274241)
  *csadler@glancylaw.com*
Garth Spencer (SBN 335424)
  *gspencer@glancylaw.com*
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Hartmut Haenisch*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007
Email: fcruz@frankcruzlaw.com

*Additional Counsel*

13
REPLY MEMORANDUM

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Lead Plaintiff Hartmut Haenisch, certifies that this brief contains 4354 words, which complies with the word limit of L.R. 11-6.1.

DATED: April 15, 2024                    *s/ Casey E. Sadler*
                                         Casey E. Sadler

## **PROOF OF SERVICE**

I hereby certify that on this 15th day of April, 2024, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*s/ Casey E. Sadler*
Casey E. Sadler
