Perrie M. Weiner, State Bar No. 134146
perrie.weiner@bakermckenzie.com
Aaron T. Goodman, State Bar No. 330791
aaron.goodman@bakermckenzie.com
**BAKER & McKENZIE LLP**
10250 Constellation Blvd., Suite 1850
Los Angeles, CA 90067
Telephone: (310) 201-4728

*Attorneys for Defendant Momentus Inc.*

Jeffrey L. Steinfeld (SBN 294848)
jlsteinfeld@winston.com
**WINSTON & STRAWN LLP**
333 South Grand Avenue, 38th Floor
Los Angeles, CA 90071
Telephone: (213) 615-1700

*Attorneys for Defendant Dawn Harm*

Mark Holscher (SBN 139582)
mholscher@kirkland.com
Austin Norris (SBN 284603)
austin.norris@kirkland.com
**KIRKLAND & ELLIS LLP**
555 South Flower Street, Ste. 3700
Los Angeles, CA 90071
Telephone: (213) 680-8190

*Attorneys for Defendants Brian Kabot, Juan Manuel Quiroga, James Norris, James Hofmockel, and SRC-NI Holdings, LLC*

William E. Stoner (SBN 101418)
wstoner@stonercarlson.com
**STONER CARLSON LLP**
301 E. Colorado Blvd., Suite 320
Pasadena, CA 91101
Telephone:  (213) 687-2640

*Attorneys for Defendant Fred Kennedy*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE STABLE ROAD ACQUISITION CORP. SECURITIES LITIGATION | Case No. 2:21-CV-5744-JFW(SHKx)<br><br>Hon. John F. Walter<br><br>**DEFENDANTS' RESPONSE IN OPPOSITION TO PUTATIVE SETTLEMENT CLASS MEMBERS' OBJECTION TO FINAL APPROVAL OF PROPOSED SETTLEMENT**<br><br>[Filed Concurrently with Declaration of Aaron T. Goodman]<br><br>Hearing Date: April 22, 2024<br>Hearing Time: 1:30 p.m.<br>Location: W. 1st Street, Courtroom 7A |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................... 1

BACKGROUND ...................................................................................................... 2

    I.    The Settlement Agreement ..................................................................... 2

    II.   The Delaware Action ............................................................................. 4

    III.  The Objection ........................................................................................ 5

ARGUMENT ........................................................................................................... 7

    I.    The Proposed Settlement is Fair and Reasonable .................................... 7

           A.    Standard of Review and the Objectors' Burden .................... 7

           B.    The Scope of "Released Plaintiffs' Claims" is Fair, Reasonable, and Routinely Court-Approved ........................ 9

           C.    The Scope of "Defendants' Releasees" is Fair, Reasonable, and Routinely Court-Approved ........................... 15

           D.    The Paucity of Objections Reflects the Fairness and Adequacy of the Settlement ................................................. 16

           E.    The Objectors' Proposed Language Would Deprive Defendants of Bargained-For Global Peace and Expose Defendants to Potential Double Recovery ......................... 17

CONCLUSION ...................................................................................................... 18

i

DEFENDANTS' RESPONSE IN OPPOSITION TO PUTATIVE SETTLEMENT CLASS MEMBERS'
OBJECTION TO FINAL APPROVAL OF PROPOSED SETTLEMENT

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Nextel Retail Stores, LLC*,
2010 WL 8591002 (C.D. Cal. Apr. 12, 2010) ...................................................... 13

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) ........................................................................ 11

*Burk v. Kabot*,
No. 2023-0334-PAF (Del. Ch.) .............................................................................. 4

*Cancilla v. Ecolab, Inc.*,
2014 WL 2943237 (N.D. Cal. June 30, 2014)................................................ 14, 15

*In re Celera Corp. S'holder Litig.*,
59 A.3d 418 (Del. 2012) ...................................................................................... 17

*In re Corrugated Container Antitrust Litig.*,
643 F.2d 195 (5th Cir. 1981) ............................................................................... 17

*Eisen v. Porsche Cars N. Am., Inc.*,
2014 WL 439006 (C.D. Cal. Jan. 30, 2014).......................................................... 17

*Farrar v. Workhorse Grp., Inc.*,
2023 WL 5505981 (C.D. Cal. July 24, 2023) ...................................................... 16

*Faught v. Am. Home Shield Corp.*,
2010 WL 10959223 (N.D. Ala. Apr. 27, 2010) .................................................... 18

*Flynn v. Sientra, Inc.*,
2017 WL 11139918 (C.D. Cal. Jan. 23, 2017)...................................................... 11

*Fraser v. Asus Comput. Int'l*,
2012 WL 6680142 (N.D. Cal. Dec. 21, 2012) ...................................................... 17

*Galvan v. Superior Tank Co.*,
2016 WL 11502113 (C.D. Cal. Dec. 19, 2016)....................................................... 9

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ...................................................... 11

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) ................................................................. 13

*Howard v. Am. Online, Inc.*,
  208 F.3d 741 (9th Cir. 2000) ................................................................. 13

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) ................................................................... 7

*In re Initial Pub. Offering Sec. Litig.*,
  226 F.R.D. 186 (S.D.N.Y. 2005) ........................................................... 17

*Kacsuta v. Lenovo (U.S.) Inc.*,
  2014 WL 12585787 ................................................................................ 16

*Lora v. Kabot*,
  No. 2023-0322-PAF (Del. Ch.) ................................................................ 4

*In re Luckin Coffee Inc. Sec. Litig.*,
  2021 WL 11114633 (S.D.N.Y. Oct. 26, 2021) ....................................... 12

*Milligan v. Toyota Motor Sales, U.S.A., Inc.*,
  2012 WL 10277179 (N.D. Cal. Jan. 6, 2012) ......................................... 17

*In re Momentus, Inc. S'holders Litig.*,
  No. 2022-1023-PAF ......................................................................*passim*

*Montoya v. PNC Bank, N.A.*,
  2016 WL 1529902 (S.D. Fla. Apr. 13, 2016) ......................................... 18

*In re Multiplan Corp. Stockholders Litigation*,
  2023 WL 2329706 (Del.Ch. Mar. 01, 2023) .......................................... 12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ........................................................ 8, 16

*Negrete v. ConAgra Foods, Inc.*,
  2021 WL 4202519 (C.D. Cal. June 21, 2021) ........................................ 16

*Noll v. eBay, Inc.*,
  309 F.R.D. 593 (N.D. Cal. 2015) ............................................................. 8

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
  442 F.3d 741 (9th Cir. 2006) ..................................................... 13, 14, 16

iii
DEFENDANTS' RESPONSE IN OPPOSITION TO PUTATIVE SETTLEMENT CLASS MEMBERS' OBJECTION TO FINAL APPROVAL OF PROPOSED SETTLEMENT

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ................................................................................. 7

*Silveira v. M&T Bank*,
2021 WL 4776065 (C.D. Cal. Oct. 12, 2021) ....................................................... 10

*In re Splunk Inc. Sec. Litig.*,
2024 WL 923777 (N.D. Cal. Mar. 4, 2024) .......................................................... 11

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ................................................................................... 8

*U.S. v. Or.*,
913 F.2d 576 (9th Cir. 1990) ................................................................................. 8

*In re Wells Fargo & Co. S'holder Derivative Litig.*,
445 F. Supp. 3d 508 (N.D. Cal. 2020)................................................................... 10

*Williams v. Boeing Co.*,
517 F.3d 1120 (9th Cir. 2008) .............................................................................. 15

*In re Wireless Facilities, Inc. Secs. Litig. II*,
253 F.R.D. 607 (S.D. Cal. Sept. 3, 2008) ............................................................. 11

*Zhou v. Faraday Future Intelligent Elec. Inc.*,
2024 WL 1245341 (C.D. Cal. Mar. 18, 2024) ............................................. 2, 9, 10

**Statutes**

ERISA....................................................................................................................... 11

RICO......................................................................................................................... 13

DEFENDANTS' RESPONSE IN OPPOSITION TO PUTATIVE SETTLEMENT CLASS MEMBERS' OBJECTION TO FINAL APPROVAL OF PROPOSED SETTLEMENT

Defendants Momentus Inc. ("Momentus"), Brian Kabot, Juan Manuel Quiroga, James Norris, James Hofmockel, SRC-NI Holdings, LLC, Dawn Harms, and Fred Kennedy (collectively, "Defendants") submit the following Response in Opposition to James Burk, Alexander Lora, Patricia Shirley, and Christopher Dylan Spears' (together, "Objectors") Objection to Stipulation of Settlement (the "Objection").

## **INTRODUCTION**

After months of arm's-length negotiations, the parties in this action reached a class-wide settlement, which this Court preliminarily approved as fair, reasonable, and adequate. The settlement includes a standard release of claims in this action and claims based on the same factual predicate. Not content with their rights under the settlement yet refusing to opt out, Objectors assert that the proposed release of claims contained in the Stipulation and Agreement of Settlement (the "Settlement Agreement") could be interpreted to include the claims that Objectors brought in a related Delaware action, *In re Momentus, Inc. S'holders Litig.*, No. 2022-1023-PAF (the "Delaware Action"). They are not wrong, in that the Settlement Agreement's release language was extensively negotiated by multiple sophisticated law firms – down to the line and word – to cover all claims not derivative in nature. As a result, the claims to be released in settlement of this action absolutely should, and were intended to, cover any overlapping claims advanced by the settlement class members to the extent they are also class members in the Delaware Action, should they assert the same claims or seek a double recovery of damages. This was an extremely generous settlement, where Momentus contributed a substantial sum of money in addition to the insurance proceeds to make this settlement happen, with the assumption that Defendants were, by and large, buying their peace; and, they certainly were not intending to pay twice for essentially the same overlapping claims and purported damages.

The Delaware Action arises out of the same set of facts, was filed on behalf of an overlapping class, and seeks to recover for the same injury alleged (and now released) in this action. The Objection attempts to preserve overlapping, duplicative claims

seeking a double recovery of damages. It should be swiftly rejected. Instead of meeting the Objectors' burden to demonstrate that the Settlement Agreement is not fair or reasonable to the Settlement Class, the Objectors incorrectly allege that the parties made an error in drafting the Settlement Agreement. Objectors offer precious little law, much less any evidence in support of their Objection, instead relying on their generic "error" theory and complaining that their supposedly ironclad, high-value Delaware claims could be released.

Objectors entirely ignore that courts in this Circuit routinely approve releases with identical or very similar language despite the potential value of the released claims. Indeed, just last month, the Central District of California in *Zhou v. Faraday Future Intelligent Elec. Inc.*, 2024 WL 1245341, at *8 (C.D. Cal. Mar. 18, 2024), overruled a nearly identical objection to the one here. This Court should do the same.

## BACKGROUND

The facts and history of this case are well known to the parties and to the Court, so Defendants focus here on the terms of the Settlement Agreement and the Objection.

### I.    The Settlement Agreement

The parties agreed to settle this action after many months of settlement negotiations amongst the parties, the parties' insurance carriers, and the many law firms representing them. *See gen.* Declaration of Aaron T. Goodman ("Goodman Decl."). On October 17, 2022, the parties held a full-day mediation before Jed Melnick, Esq., of JAMS. Goodman Decl. ¶ 2. The dispute was not settled on October 17, 2022, and thereafter Mr. Melnick assisted in a lengthy and extensive negotiation process amongst the parties, including numerous calls, emails, and conferences to discuss and negotiate the principal terms of the settlement. *Id.* ¶¶ 2–3. The parties did not come to an agreement on the principal terms of a global settlement until approximately six months later, in April 2023. *Id.* ¶ 4. Even so, while the parties had agreed to the principal terms of settlement, they had not yet negotiated the specific terms and scope of the bargained-for release. *Id.* The parties continued to negotiate

the long-form settlement agreement, including the release language, which was not finally agreed to and executed until approximately August 18, 2023. *Id*. ¶ 5. The primary focus of the parties' negotiations between April and August 2023 was the language of the release and any exclusions, which was specifically and intentionally negotiated as to each line, word, and punctuation mark. *Id*.

As described herein, Defendants intended for the release to provide global peace for all claims that arise out of, or relate to, or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the operative Complaint, and that in any way arise out of, relate to, or are based upon, directly or indirectly, the purchase, acquisition, ownership, disposition, holding, transfer, or sale of SRAC Securities. *See* ECF No. 178-1 at 15–16. The parties and their respective law firms made no error in drafting, negotiating, and executing the Settlement Agreement or the specific language of the releases. *Id*. ¶ 6. All told, it took the parties ten months from the date of the mediation to negotiate and agree upon the terms of the Settlement Agreement.

Lead Plaintiffs' October 2, 2023 Motion for Preliminary Approval of Class Action Settlement, accompanied by the Stipulation of Settlement and standard ancillary documents – filed one year after the mediation – was unopposed. ECF Nos. 176–78. Thereafter the Court entered its Order preliminarily approving the settlement, providing for notice to the Settlement Class, and setting deadlines leading up to the final approval hearing of February 5, 2024. ECF No. 181. The parties stipulated to extending the settlement hearing to April 22, 2024. ECF No. 195. It was not until March 8, 2024, that Objectors filed their Objection seeking to deprive Defendants of the sole consideration provided to them, which induced Defendants to enter into the Settlement Agreement; namely, the Settlement Agreement's Release and the specific negotiated release language, excluding any derivative claim but including all other claims by members of the Settlement Class not opting out.

Notwithstanding the parties' months-long negotiation of the release language

and exclusions, and without any basis, Objectors claim that the release language was agreed to by the parties in "error" and that it was not intended by the parties as written.

## II.   The Delaware Action

On November 10, 2022, two of the Objectors, Shirley and Spears, filed a class action suit in the Delaware Court of Chancery. *Shirley v. Kabot*, No. 2022-1023-PAF (Del. Ch.). On March 16, 2023, another Objector, Lora, filed a class action suit in the same court. *Lora v. Kabot*, No. 2023-0322-PAF (Del. Ch.). On March 17, 2023, a third Objector, Burk, filed a class action suit in the same court. *Burk v. Kabot*, No. 2023-0334-PAF (Del. Ch.). The Court of Chancery consolidated these cases on May 31, 2023. ECF No. 196-5 (*Lora v. Kabot*, No. 2023-0322-PAF (Del. Ch.)) (filed in this action as an exhibit to the Objection). The Delaware Action arises from the same core common nucleus of operative facts as this matter and, at least in part, may ultimately seek to recover the same damages asserted in this action. Objectors' counsel is, likewise, expected to seek a duplicative fee award.

A comparison of the Amended Complaint in this action and the operative complaint in the Delaware Action demonstrates the clear factual overlap and potential for duplicative damages. Plaintiffs in the Delaware Action brought breach of fiduciary duty, aiding and abetting breach of duty, and unjust enrichment claims arising out of Stable Road Acquisition Corp. ("SRAC")'s merger with Momentus. ECF No. 196-5 (Del. Action Operative Complaint) at 1–2. Both complaints describe the founding of SRAC. *Compare* ECF No. 94 (Am. Compl.) ¶¶ 35–48 *with* ECF No. 196-5 ¶ 4. Both complaints describe SRAC's November 2019 IPO. *Compare* ECF No. 94 ¶ 36 *with* ECF No. 196-5 ¶ 5. Both complaints describe SRAC's inability to identify a suitable de-SPAC merger target in the cannabis space. *Compare* ECF No. 94 ¶¶ 59–60 *with* ECF No. 196-5 ¶¶ 8–9. Both complaints describe SRAC's pivot to acquiring Momentus. *Compare* ECF No. 94 ¶¶ 58–61 *with* ECF No. 196-5 ¶ 10. Both complaints describe the SEC's investigation of the Momentus transaction. *Compare* ECF No. 94 ¶¶ 174–79 *with* ECF No. 196-5 ¶¶ 15–16, 22–24. Both complaints

describe the completion of the Momentus merger. *Compare* ECF No. 94 ¶¶ 60–61 *with* ECF No. 196-5 ¶¶ 27–29. Both complaints allege that defendants' SEC filings and public statements withheld information and made misleading statements to shareholders concerning due diligence, Momentus' technology, and Momentus' projections. *Compare* ECF No. 94 ¶¶ 114–130 *with* ECF No. 196-5 ¶¶ 96–162. Both complaints allege that the SEC found that defendants had misled shareholders. And both complaints seek to recover for the injury caused to shareholders (*e.g.*, a decline in share price) when the truth was allegedly revealed. Indeed, in the Delaware Action, Objectors extensively rely on this Court's order addressing Defendants' motion to dismiss.

### III.    The Objection

On September 26, 2023, prior to Lead Plaintiffs filing their October 2, 2023 Motion for Preliminary Approval of Class Action Settlement, Objectors' counsel sent a letter to counsel for the parties in this action, where they raised their concerns that the Settlement Agreement did not release the claims in the Delaware Action.  ECF No. 196-6.  Objectors did not receive the answer they desired – on September 29, Plaintiffs wrote back that their concerns were "unfounded."   ECF No. 196-7.   Objectors followed with a second letter on October 5, after the filing of the Motion for Preliminary Approval of Class Action Settlement.  ECF No. 196-8.  Neither Plaintiffs nor Defendants responded to Objectors.

On March 8, 2024, after this back-and-forth, the Objectors filed the Objection on the grounds that the Settlement Agreement's definition of "Released Plaintiff's Claims" is "vague, overly broad, and unfair."  ECF No. 196 at 7.  The Objectors make five arguments in support of this broader point: [1] the Delaware Action's claims are supposedly worth more than the $8.5 million settlement the parties agreed to here (*id.* at 6–8); [2] Plaintiffs in this action supposedly did not intend to include the Delaware Action claims within the Settlement Agreement's release (*id.* at 8); [3] Plaintiffs allegedly took steps to amend the Settlement Agreement upon being told of Objectors'

issues with the Settlement Agreement (*id.* at 8–9); [4] the Settlement Agreement's release is "untenably vague and overly broad" (*id.* at 9–10); and [5] the Settlement Agreement's release "would insulate a broad swath of individuals and entities who are potentially subject to liability." *Id.* at 10–11. These arguments are entirely unsupported by evidence and fail to meet Objectors' burden to show that the settlement is objectively unfair, unreasonable, and inadequate.

In their Objection, Objectors focus on the Settlement Agreement's definition of "Released Plaintiff's Claims":

> [A]ll claims and causes of action of every nature and description, whether known claims or Unknown Claims (as defined below), whether arising under federal, state, common or foreign law, that Lead Plaintiff or any other member of the Settlement Class: (i) asserted in the operative Complaint, or (ii) could have been asserted in any forum that arise out of, or relate to, or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the operative Complaint, and that in any way arise out of, relate to, or are based upon, directly or indirectly, the purchase, acquisition, ownership, disposition, holding, transfer, or sale of SRAC Securities during the Settlement Class Period. Released Plaintiff's Claims do not include: (i) any claims relating to the enforcement of the Settlement; (ii) any derivative claims asserted in the following actions: (a) *Brian Lindsey v. Chris Hadfield* (C.D. Cal. Case No. 2:22-cv-04212) (*dismissed*); (b) *James Burk v. Momentus Inc.* (Del. Ch. Case No. 2022-0519) (*dismissal pending*); (c) *The Larian Living Trust v. Momentus Inc.* (New Castle Cty. Sup. Ct. Case No. N22C-07-133); (d) *The Larian Living Trust v. Momentus Inc.* (New Castle Cty. Sup. Ct. Case No. N22C-07117); (e) *Shirley et al. v. Kabot et al.* (Del. Ch. Case No. 2022-1023); (f) *Hanna v. Kabot et al.* (N.D. Cal. Case No. 5:23-cv-00374); (g) *Alexander Lora et al. v. Kabot et al.* (Del. Ch. Case No. 2023-0334); or (i) *Brian Lindsey v. Quiroga, et al.* (Del. Ch. Case No. 2023-0674); and (iii) any claims of any person or entity who or which submits a request for exclusion that is accepted by the Court.

DEFENDANTS' RESPONSE IN OPPOSITION TO PUTATIVE SETTLEMENT CLASS MEMBERS' OBJECTION TO FINAL APPROVAL OF PROPOSED SETTLEMENT

ECF No. 178-1 at 15–16. The Objectors also argue about the Settlement Agreement's definition of "Defendants' Releasees":

> Defendants and their current and former officers, directors, agents, parents, affiliates, subsidiaries, successors, predecessors, assigns, assignees, insurers, reinsurers, employees, and attorneys, in their capacity as such. For the avoidance of doubt, Defendants' Releasees include Mikhail Kokorich, Edward Freedman, Ann Kono, Marc Lehmann, and John Rood in their capacities as officers and/or directors of the Corporate Defendants.

*Id.* at 9. As discussed, these provisions of the parties' Settlement Agreement were thoroughly negotiated, specifically and intentionally drafted, and contain no errors.

## ARGUMENT

### I. The Proposed Settlement is Fair and Reasonable

#### A. Standard of Review and the Objectors' Burden

The Objection ignores well-established settlement approval principles and fails to meet the Objectors' burden to demonstrate that the arm's-length Settlement Agreement is unfair and unreasonable to the Settlement Class. The Ninth Circuit embraces a "strong judicial policy that favors settlements" of class actions. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (quoting *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). The Court's intrusion on a consensus settlement agreement, such as the one agreed to by the parties here, "must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable, and adequate to all concerned." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quotation omitted).

In determining whether the final approval of a proposed settlement is fair, adequate, and reasonable, courts must evaluate the agreement as a whole and should consider, among other things:

DEFENDANTS' RESPONSE IN OPPOSITION TO PUTATIVE SETTLEMENT CLASS MEMBERS' OBJECTION TO FINAL APPROVAL OF PROPOSED SETTLEMENT

> [T]he strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (quotation omitted).  The parties already laid out these arguments in Lead Plaintiff's Unopposed Motion for Preliminary Approval of Class Action Settlement (*see* ECF No. 177), and the Court already preliminarily approved these arguments.  *See* ECF No. 181.

In the Ninth Circuit, it is the objector's burden to prove their claims challenging the settlement.  *U.S. v. Or.*, 913 F.2d 576, 581 (9th Cir. 1990) (citation omitted); *see also Noll v. eBay, Inc.*, 309 F.R.D. 593, 602 (N.D. Cal. 2015) (citation omitted) ("An objector to a proposed settlement agreement bears the burden of proving any assertions they raise challenging the reasonableness of a class action settlement.").  The Ninth Circuit has been clear: "once the court is satisfied that the decree was the product of good faith, arms-length negotiations, a negotiated decree is presumptively valid and the objecting party has a ***heavy burden*** of demonstrating that the decree is unreasonable." *Or.*, 913 F.2d at 581 (internal quotation omitted) (emphasis added).

But here, the Objectors point to ***no evidence*** that would establish that the Settlement Agreement and Release are not fair, reasonable, and adequate to all members of the Settlement Class.  Significantly, the Objectors are the only members of the class who have raised any objections—four shareholders out of a class of many thousands. *See Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (citations omitted) ("the absence of a large number of objections to a proposed class settlement raises a strong presumption that the terms of a proposed class settlement are favorable to the class members").

Further, there is no genuine dispute here – and it is not contested by Objectors

DEFENDANTS' RESPONSE IN OPPOSITION TO PUTATIVE SETTLEMENT CLASS MEMBERS' OBJECTION TO FINAL APPROVAL OF PROPOSED SETTLEMENT

– that the settlement is the result of arm's-length negotiations, was arrived at through a procedurally fair process, and provides for a Plan of Allocation that includes all Settlement Class members. *See* ECF No. 177.  The parties' mediator, Jed Melnick of JAMS, is an experienced and well-respected neutral mediator who made a recommendation for settlement for $8.5 million, which was agreed to by the parties. *Id.* at 11; Goodman Decl. ¶¶ 2–5.  This further supports the argument that the settlement here was the result of genuine, fair, and non-collusive negotiation.  *See Galvan v. Superior Tank Co.*, 2016 WL 11502113, at *4 (C.D. Cal. Dec. 19, 2016) (quoting *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

### B.    The Scope of "Released Plaintiffs' Claims" is Fair, Reasonable, and Routinely Court-Approved

The scope of claims released in the Settlement Agreement is fair and reasonable. The Settlement Agreement releases claims, known or unknown, arising under any law or otherwise, that: (1) were asserted in the action; (2) could have been brought in the action; or (3) were or could have been asserted in any forum and were based upon or arising out of the same underlying facts and allegations.  ECF No. 178-1 at 15–16.

This is standard language in securities class action cases, and, indeed, courts in the Ninth Circuit routinely approve settlement agreements with similar or identical language.  For example, in *Zhou*, a court in this District in a class action securities case mere weeks ago permanently approved a settlement agreement with release language very similar to that in the Settlement Agreement here:

> Releasing "any and all claims, rights, duties, controversies, obligations, demands, actions, debts, sums of money, suits, contracts, agreements, promises, damages, losses, judgments, liabilities, allegations, arguments, and causes of action of every nature and description . . . that Lead Plaintiffs or any other member(s) of the Settlement Class *asserted or could have asserted* now or in the future in any forum *that both (i)*

9

> ***arise out of, are based upon, or are related in any way*** to the allegations, transactions, facts, events, matters, occurrences, disclosures, statements, representations, acts, or omissions that were referred to or alleged, or that could have been referred to or alleged, in the Action, and (ii) ***relate in any way*** to the purchase or acquisition of Faraday or PSAC common stock by Settlement Class Members during the Settlement Class Period."

*Zhou*, 2024 WL 1245341, at *8 (C.D. Cal. Mar. 18, 2024) (emphasis in original).

*Zhou* also overruled a nearly identical objection to the objection here, based on a nearly identical situation. As here, *Zhou* was a securities class action based on purported misleading statements in, *inter alia*, SEC filings leading up to a de-SPAC merger. *Id.* at *1. Also like here, the *Zhou* objector was a stockholder who filed a Delaware stockholder class action alleging breach of fiduciary duty and aiding and abetting breach of fiduciary duty based on the same de-SPAC transaction and purported misleading statements. *Id.* at *2. The *Zhou* objector argued that "while the claims in [*Zhao*] focus on violations of … the Exchange Act, the Delaware Action allegedly seeks *different damages* from *different defendants*, pursuant to *different claims*, based on *different facts.*" *Id.* at *7 (emphasis original). Nevertheless, the court overruled the objection because the "Ninth Circuit allows federal courts to release" claims based on the same "factual predicate as that underlying the claims in the settled class action." *Id.* at *8.

In doing so, the court found that the "proposed release language," which is nearly identical to the release here, "[was] appropriate." *Id.* Many other courts within the Ninth Circuit have done the same. *See, e.g.*, *Silveira v. M&T Bank*, 2021 WL 4776065, at *2 (C.D. Cal. Oct. 12, 2021) (approving release of claims "arising out of, based upon or related in any way to the" underlying facts); *In re Wells Fargo & Co. S'holder Derivative Litig.*, 445 F. Supp. 3d 508, 515–16 (N.D. Cal. 2020) (approving release of "[a]ny and all manner of claims . . . brought or could that could be brought derivatively or otherwise . . . [and that] are based upon, arise out of, relate in any way

to, or involve, directly or indirectly" any of the underlying facts); *Flynn v. Sientra, Inc.*, 2017 WL 11139918, at \*3 (C.D. Cal. Jan. 23, 2017) (approving release of claims "arising out of the purchase or sale of Sientra Common Stock during the Class Period and are based on or relate in any way, directly or indirectly, to the allegations, facts, events, transactions, acts, occurrences, statements, representations, misrepresentations, or omissions which were or could have been alleged in the Actions"); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 327 (N.D. Cal. 2018) (overruling objections and approving release of "any claim . . . related to or arising from any of the facts alleged in any of the Actions"); *In re Wireless Facilities, Inc. Secs. Litig. II*, 253 F.R.D. 607, 621–22 (S.D. Cal. Sept. 3, 2008) (releasing "all claims or causes of action . . . asserted or that might have been asserted against the Defendants and Released Parties based upon, arising out of, or related to both: (i) any of the facts, transactions, events, occurrences, disclosures, statements, acts, omissions or failures to act which were or could have or might have been alleged in or embraced or otherwise referred to or encompassed by the Action; and (ii) which arise out of the purchase or other acquisition of Wireless Securities during the Settlement Class Period").

In several of these cases, the lead plaintiffs were represented by Bernstein Litowitz Berger & Grossman LLP ("BLBG"), one of the firms representing the Objectors here. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*3 (N.D. Cal. Dec. 18, 2018), *aff'd Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) (approving release of claims "that arise out of, relate to, or are based upon any of the allegations, circumstances, events, transactions, facts, matters, occurrences, statements, representations or omissions, set forth, or referred to in the Complaint," with limited carveout for derivative and ERISA claims); *In re Splunk Inc. Sec. Litig.*, 2024 WL 923777, at \*3 (N.D. Cal. Mar. 4, 2024) (approving release of claims that "could have been asserted in the Action or any other forum that arise out of, are based upon, or relate to any of the allegations, transactions, facts, matters or occurrences,

DEFENDANTS' RESPONSE IN OPPOSITION TO PUTATIVE SETTLEMENT CLASS MEMBERS' OBJECTION TO FINAL APPROVAL OF PROPOSED SETTLEMENT

representations, or omissions involved . . . in the Action, or which could have been alleged in the Action," with limited carveout for derivative claims); *In re Luckin Coffee Inc. Sec. Litig.*, 2021 WL 11114633, at *14 (S.D.N.Y. Oct. 26, 2021) (releasing claims that "could have [been] asserted in any forum that arise out of, relate to, or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint and relate to the purchase or acquisition" of stock).[1]

Nevertheless, the Objectors make a series of unsupported arguments about the wording of this provision of the Settlement Agreement—likely in an attempt to escape the fact that this release language is standard in the Ninth Circuit in securities class actions.

*First*, the Objectors argue that the claims in the Delaware Action are worth far more than the claims in this action. But of course, if a plaintiff believes his or her claims are worth more than a bargained-for class action settlement, it is that plaintiff's choice whether to opt out or participate in the settlement. Making the bare assertion that one's claims are more valuable than a settlement has never been recognized as a basis to rewrite the parties' bargained-for release, and indeed the Objectors cite no

---

[1] The inverse is true as well: Delaware stockholder litigation, including cases led by BLBG, have released all claims arising from a de-SPAC transaction, including federal securities claims. *See In re Multiplan Corp. Stockholders Litigation*, 2023 WL 2329706, at *4-5 (Del.Ch. Mar. 01, 2023) (approving release of "any and all actions [or] causes of action … including, but not limited to, federal and state securities laws … that (1) in full or in part, concern, relate to, arise out of, or are any way connected to the claims, allegations, transactions, facts, circumstances, events, acts, disclosures, statements, representations, omissions, or failures to act alleged, set forth, referred to, or involved in the Action, and (2) arise out of, are based upon, relate to, or concern the rights of, duties owed to, and/or ownership of [SPAC's] common stock or warrants during the Class Period, including, but not limited to, any claims related to (i) the Business Combination, (ii) the Proxy, (iii) any other disclosures relating to or concerning the Business Combination or the Company, or (iv) the control or participation of any of Defendants' Released Parties with respect to any of the foregoing.").

DEFENDANTS' RESPONSE IN OPPOSITION TO PUTATIVE SETTLEMENT CLASS MEMBERS' OBJECTION TO FINAL APPROVAL OF PROPOSED SETTLEMENT

authority in support of their position. Instead, their arguments rely on pure speculation about the Objectors' belief in the strength of their claims (*see* ECF No. 196 at 6–7), without ever attempting to quantify their claims or justify their clairvoyant belief that they are certain to recover those damages.

Regardless, this argument ignores the basic principle that in the Ninth Circuit, "a federal court may release not only those claims alleged in the complaint, but also a claim 'based on the same factual predicate as that underlying the claims in the settled class action.'" *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287–89 (9th Cir. 1992)); *see also Anderson v. Nextel Retail Stores, LLC*, 2010 WL 8591002, at *6 (C.D. Cal. Apr. 12, 2010) (citations omitted) ("the released claims need not be exactly factually and legally identical to the allegations in the complaint; rather, they need only share a common factual predicate"). Claims based on the same "factual predicate" are those that "depend[] on the same set of facts as the claims that gave rise to the settlement." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (citations omitted).

Indeed, courts in this Circuit routinely approve releases that include claims and allegations that are not identical to those alleged in the settling action, regardless of their perceived magnitude. *See, e.g.*, *Reyn's Pasta Bella*, 442 F.3d at 749 (affirming dismissal of class action against credit card companies based on same price-fixing predicate and underlying injury as claims settled in earlier class action, though the later suit "posit[ed] a different theory of anti-competitive conduct"); *Howard v. Am. Online, Inc.*, 208 F.3d 741, 747 (9th Cir. 2000) (settlement of class action raising state-law unfair billing practices claims released RICO claims based on the same practices); *Anderson*, 2010 WL 8591002, at *6 (releasing all wage claims related to deductions from or failure to make commission payments, even where the complaints did not use the word "commission").

Notably, Objectors cite no cases to support their flimsy argument beyond

merely complaining that their supposedly high-value and seemingly guaranteed-to-win Delaware claims may be released. Nor could they; the law is clear that it is the similarity of the factual predicate of the claims that matters, rather than some amorphous guesswork about the value of various claims and this Court's determination of who is more likely to win *some other case in some other court*. Objectors do not argue, and it is thus undisputed here, that the factual predicate of this matter and the Delaware Action is the same – both cover the same factual allegations, consisting of the same transaction (the founding of SRAC and its merger with Momentus), over the same time period, causing the same injuries (devaluing of SRAC's stock). *See, e.g.*, *Reyn's Pasta Bella*, 442 F.3d at 749 (releasing claims based on the same price-fixing predicate [price-fixing exchange rates] and identical underlying injuries); *Cancilla v. Ecolab, Inc.*, 2014 WL 2943237, at *7 (N.D. Cal. June 30, 2014) (claims were the same where the underlying injuries were identical).

*Second*, the Objectors argue that the Plaintiffs in this action did not intend to include the Delaware Action's claims in the Settlement Agreement's release. Supposedly once alerted to the issue, the parties took steps to remedy this issue, yet still failed to exclude the Delaware claims. ECF No. 196 at 8–9. Objectors offer no evidence to support this theory. Objectors' argument relies on a series of *fictions* about what actually occurred here. Instead, as should be unsurprising considering the sophistication of the parties, their counsel, and the mediator, every word of the "Released Plaintiffs' Claims" section of the Settlement Agreement was meticulously negotiated. Goodman Decl. ¶ 6. There is simply no "scrivener's error" (ECF No. 196 at 3), "inartful drafting" (*id.* at 4), or any other way Objectors wish to phrase it. Goodman Decl. ¶ 6. Objectors may not rely on fiction to convert the carefully-negotiated Settlement Agreement's release into something that is unfair or unreasonable when it is actually common, fair, and reasonable.

*Third*, Objectors' final argument is that the Settlement Agreement's release references "derivative claims" but the claims in the Delaware action are not derivative

DEFENDANTS' RESPONSE IN OPPOSITION TO PUTATIVE SETTLEMENT CLASS MEMBERS' OBJECTION TO FINAL APPROVAL OF PROPOSED SETTLEMENT

claims, calling this wording "sloppy language."[2]  ECF No. 196 at 9–10.  But the wording was deliberate and precise, not sloppy.  This argument fails for the same reason as all of Objectors' other arguments about supposed drafting errors – because there were none.  Goodman Decl. ¶ 6.  Moreover, the release bars all claims based on the same factual predicate, regardless of the legal theory at issue, derivative or otherwise.  *See Cancilla*, 2014 WL 2943237, at \*7 (citing *Reyn's Pasta Bella*, 442 F.3d at 749) ("courts will bar claims brought on different legal theories insofar as the underlying injuries are identical"); *see also Williams v. Boeing Co.*, 517 F.3d 1120, 1134 (9th Cir. 2008) (a broad release settlement is enforceable against "claims relying upon a legal theory different from that relied upon in the class action complaint, but depending on the same set of facts").

In sum, Objectors' arguments regarding the scope of "Released Plaintiffs' Claims" are either irrelevant or rely on a fiction in order to escape the fact that courts in this Circuit routinely approve release language that is the very same or similar to the release language in the parties' Settlement Agreement in this case.  Objectors clearly *wish* their Delaware claims were excluded as part of the parties' negotiations, but they were not, and Objectors' factually- and legally-bereft arguments in the Objection do not make it so.

### C.    The Scope of "Defendants' Releasees" is Fair, Reasonable, and Routinely Court-Approved

The definition of released defendants is also fair and reasonable.  The Objectors argue that the Settlement Agreement would insulate people and entities who are

---

[2] Objectors note, obliquely, that an overbroad and unclear release of claims could present issues for absent class members, since they do not know the extent of the claims they were releasing.  ECF No. 196 at 10 n.24 (quoting *Sanchez v. Frito-Lay, Inc.*, 2019 WL 4828775, at \*11 (E.D. Cal. Sept. 30, 2019)).  This is true but entirely inapplicable here, since, as explained herein, the Settlement Agreement's release is not overbroad nor unclear, and Objectors' argument relies on their fiction that the release was sloppily drafted.

potentially subject to liability in the Delaware Action, and that this is "manifestly unfair, unreasonable, and inadequate." ECF No. 196 at 10–11. Unsurprisingly, Objectors offer no law or specifics whatsoever in support of this argument – nor could they, since they misread Ninth Circuit law. It is well-established that a class settlement may release "factually related claims against parties not named as defendants." *Reyn's Pasta Bella*, 442 F.3d at 748; *see also, e.g.*, *Negrete v. ConAgra Foods, Inc.*, 2021 WL 4202519, at *8 n.10 (C.D. Cal. June 21, 2021) (including third-party companies in the definition of released parties did not undermine the fairness of the settlement). The Court should follow the Ninth Circuit's instruction and find that the Settlement Agreement's definition of "Defendants' Releasees" is fair and reasonable.

### D. The Paucity of Objections Reflects the Fairness and Adequacy of the Settlement

The miniscule number of objections (one), objectors (four), and objecting shares – out of the thousands of total shareholders representing millions of shares – strongly supports the fairness and adequacy of the Settlement and its approval by this Court. This is because "the absence of a large number of objections to a proposed class action settlement ***raises a strong presumption*** that the terms of a proposed settlement are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529 (emphasis added). Courts routinely approve proposed settlements where there are similarly low numbers of objections, and the Court should do so here. *See, e.g.*, *Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *11–12 (C.D. Cal. July 24, 2023) (only three objections "indicate very strong overall support for the Settlement and weigh in favor of granting final approval"); *Kacsuta v. Lenovo (U.S.) Inc.*, 2014 WL 12585787, at *5 (approving class action settlement where there were only two objections out of 45,000 notices). Here, the Objectors' lone Objection should not drown out the interest of the thousands of Settlement Class members in a settlement that will provide a substantial monetary benefit to them.

Ultimately, a shareholder's dissatisfaction with the terms of a settlement does

DEFENDANTS' RESPONSE IN OPPOSITION TO PUTATIVE SETTLEMENT CLASS MEMBERS' OBJECTION TO FINAL APPROVAL OF PROPOSED SETTLEMENT

not establish that the settlement is unfair or unreasonable. If the Objectors strongly believe that the consideration offered in this Settlement is insufficient to compensate them, they could have opted out, yet chose not to do so. "Federal courts routinely hold that the opt-out remedy is sufficient to protect class members who are unhappy with the negotiated class action settlement terms." *Eisen v. Porsche Cars N. Am., Inc.*, 2014 WL 439006, at *7 (C.D. Cal. Jan. 30, 2014) (citation omitted); *see also Milligan v. Toyota Motor Sales, U.S.A., Inc.*, 2012 WL 10277179, at *7 (N.D. Cal. Jan. 6, 2012) (overruling objections to a class action settlement, noting that the objectors "could have simply opted out").

The Objectors presumably declined to opt out because they desired both to pursue their Delaware claims while also "participat[ing] in the class [and] share in the fruits of the class's settlement negotiations." *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 222 (5th Cir. 1981). In other words, they want to have their cake and eat it too. *See id.* ("the objectors felt entitled to the bird in the hand while pursuing the flock in the bush"). But this Court does not have to permit Objectors' self-serving actions. They had their opportunity to opt out, they did not, and that is all the relief they are entitled to in this Court unless they make meritorious arguments, which they do not.

## E.    The Objectors' Proposed Language Would Deprive Defendants of Bargained-For Global Peace and Expose Defendants to Potential Double Recovery

Finally, courts broadly recognize the global peace imperative of defendants in approving settlement agreements. *See, e.g.*, *Fraser v. Asus Comput. Int'l*, 2012 WL 6680142, at *4 (N.D. Cal. Dec. 21, 2012) (recognizing defendant's "legitimate business interest in 'buying peace' and moving on to its next challenge"); *In re Celera Corp. S'holder Litig.*, 59 A.3d 418, 433 (Del. 2012) (citations omitted) ("Settlement agreements 'almost invariably' . . . release all liability claims associated with the challenged transaction 'to the broadest extent allowable under law. Such broad release provisions are intended to accord the defendants 'global peace.'"); *In re Initial Pub.*

DEFENDANTS' RESPONSE IN OPPOSITION TO PUTATIVE SETTLEMENT CLASS MEMBERS' OBJECTION TO FINAL APPROVAL OF PROPOSED SETTLEMENT

*Offering Sec. Litig.*, 226 F.R.D. 186, 190 (S.D.N.Y. 2005) (quotation omitted) ("broad class action settlements are common, since defendants and their cohorts would otherwise face nearly limitless liability from related lawsuits in jurisdictions throughout the country").  However, if the Court were to permit the Objection, it would assuredly ***deprive*** Defendants of global peace and eviscerate the value to Defendants of the $8.5 million in settlement consideration.

This Court has the authority to and should consider Defendants' interest in protecting itself against the threat of litigation and risk of double recovery in evaluating the fairness of the Settlement Agreement.  *See, e.g.*, *Montoya v. PNC Bank, N.A.*, 2016 WL 1529902, at *26 (S.D. Fla. Apr. 13, 2016) ("There is nothing unusual or unfair about Defendant's interest in finality and repose, nor in its desire to be released from Class Members' claims, and not be threatened with the prospect of potential double recoveries."); *Faught v. Am. Home Shield Corp.*, 2010 WL 10959223, at *15 (N.D. Ala. Apr. 27, 2010) (same).  If the Court were to permit the Objection, it would open the possibility of double recovery for the members of the Settlement Class, since they would be compensated here and potentially in Delaware for the same alleged wrongdoing and same alleged injuries.  It is indisputable that permitting the Objection presents a risk to Defendants of claims by the same plaintiffs for the same injury for which the Settlement Agreement would compensate them.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Objectors' Objection in its entirety.

DEFENDANTS' RESPONSE IN OPPOSITION TO PUTATIVE SETTLEMENT CLASS MEMBERS' OBJECTION TO FINAL APPROVAL OF PROPOSED SETTLEMENT

Dated: April 15, 2024                    Respectfully submitted,

**BAKER & McKENZIE LLP**

By:  */s/ Aaron T. Goodman*
        Aaron T. Goodman
        Perrie M. Weiner
*Attorneys for Defendant*
*Momentus Inc.*

**KIRKLAND & ELLIS LLP**

By:  */s/ Austin Norris*
        Mark Holscher
        Austin Norris
*Attorneys for Defendants Brian Kabot,*
*Juan Manuel Quiroga, James Norris,*
*James Hofmockel, and SRC-NI Holdings,*
*LLC*

**WINSTON & STRAWN LLP**

By:  */s/ Jeffrey L. Steinfeld*
        Jeffrey L. Steinfeld
*Attorneys for Defendant Dawn Harms*

**STONER CARLSON LLP**

By:  */s/ William E. Stoner*
        William E. Stoner
*Attorneys for Defendant Fred Kennedy*

DEFENDANTS' RESPONSE IN OPPOSITION TO PUTATIVE SETTLEMENT CLASS MEMBERS' OBJECTION TO FINAL APPROVAL OF PROPOSED SETTLEMENT

**ATTESTATION OF CONCURRENCE IN FILING**

In accordance with L.R. 5-4.3.4, I hereby attest that I have obtained the concurrence of all other signatories in the filing of this document.


Dated: April 15, 2024                    By:   */s/ Aaron T. Goodman*
                                               Aaron T. Goodman

DEFENDANTS' RESPONSE IN OPPOSITION TO PUTATIVE SETTLEMENT CLASS MEMBERS' OBJECTION TO FINAL APPROVAL OF PROPOSED SETTLEMENT