Robert V. Prongay (SBN 270796)
 rprongay@glancylaw.com
Casey E. Sadler (SBN 274241)
 csadler@glancylaw.com
Garth Spencer (SBN 335424)
 gspencer@glancylaw.com
GLANCY PRONGAY & MURRAY LLP
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Hartmut Haenisch*
[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE STABLE ROAD ACQUISITION CORP. SECURITIES LITIGATION | Case No. 2:21-CV-5744-JFW(SHKx) |
| | Honorable John F. Walter |
| | **LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR CLASS DISTRIBUTION ORDER** |
| | Date:    March 31, 2025 |
| | Time:    1:30 p.m. |
| | Location: W. 1st Street, Courtroom 7A |

## I. PRELIMINARY STATEMENT

Court-appointed lead plaintiff Hartmut Haenisch ("Lead Plaintiff") on behalf of himself and the Settlement Class, respectfully submits this memorandum in support of his Unopposed Motion for Class Distribution Order (the "Motion").[1] The proposed plan for distribution of the Net Settlement Fund is set forth in the accompanying Declaration of Margery Craig Concerning the Results of the Claims Administration Process ("Craig Decl." or "Craig Declaration"), submitted on behalf of the Court-approved Claims Administrator, Strategic Claims Services ("SCS" or the "Claims Administrator"). *See* Craig Decl. ¶¶21(a)-(e).

## II. BACKGROUND

On August 18, 2023, the Parties entered into the Stipulation, the terms of which established a $8,500,000 Settlement Fund on behalf of the Settlement Class, consisting of all persons and entities that purchased or otherwise acquired SRAC Securities between October 7, 2020 and July 13, 2021, inclusive, and were damaged thereby.[2] On September 20, 2023, the Court entered its Order Preliminarily

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement (ECF No. 178-1; the "Stipulation"), or the Craig Declaration.

[2] Excluded from the Settlement Class are: (i) Defendants; (ii) any person who served as an executive officer and/or director of the Corporate Defendants during the Settlement Class Period (including Edward Freedman, Ann Kono, and Marc Lehmann), and members of their Immediate Family; (iii) present and former parents, subsidiaries, assigns, successors, affiliates, and predecessors of Corporate Defendants; (iv) any entity in which Defendants have or had a controlling interest during the Settlement Class Period; (v) any trust of which any Individual Defendant is the settlor or that is for the benefit of any Individual Defendant and/or member(s) of their Immediate Family; (vi) John Rood, and his Immediate Family; and (vii) the legal representatives, heirs, successors, and assigns of any person or entity excluded under provisions (i) through (vi) hereof. Also excluded from the Settlement Class are any persons and entities who or that validly exclude themselves by submitting a request for exclusion that was accepted by the Court. *See* ECF No. 210 (judgment approving settlement) at Exhibit 1 (list of exclusions pursuant to request).

Approving Settlement and Providing for Notice ("Preliminary Approval Order"), and on November 22, 2023, it issued its Order Granting Joint Stipulation to Reinstate and Continue Deadlines Set in the Preliminary Approval Order (ECF Nos. 181 and 195; collectively, the "Preliminary Approval Orders").

Pursuant to the Preliminary Approval Orders, SCS: (i) either mailed a copy of the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice"), and the Proof of Claim and Release Form ("Claim Form"; and together with the Notice, the "Notice Packet"), or emailed a link to the Notice Packet to 81,066 potential Settlement Class Members; (ii) published the Summary Notice in *Investor's Business Daily* and over *PR Newswire* (a national newswire service); (iii) established a case-specific website for the Settlement (www.StableRoadSecuritiesSettlement.com; the "Settlement Website") dedicated to this Settlement; and (iv) set up a toll-free helpline. *See* Craig Decl., ¶¶5-6; *see also* ECF No. 202-1, ¶11 (regarding publication of the Summary Notice). The Settlement Website and helpline enabled Settlement Class Members to obtain information about the Settlement, including deadlines for requesting exclusion, objecting, and filing Claims, as well as provided access to important documents relevant to the Settlement, including the Stipulation, Notice, and Claim Form. *See generally* Settlement Website.

On April 23, 2024, the Court entered its Order Approving Plan of Allocation of Net Settlement Fund. ECF No. 212. On that same day, the Court entered the Judgment Approving Class Action Settlement, which, among other things, granted final approval of the Settlement. ECF No. 210.

Lead Plaintiff now respectfully requests that the Court authorize the distribution of the Net Settlement Fund (after payment of the Claims Administrator's expenses as discussed below, and payment of, or reserve for, taxes,

tax preparation fees and escrow fees) to Authorized Claimants. *See* Stipulation, ¶26 ("Lead Counsel will apply to the Court, on notice to Defendants' Counsel, for a Class Distribution Order: (a) approving the Claims Administrator's administrative determinations concerning the acceptance and rejection of the Claims submitted; (b) approving payment of any administration fees and expenses associated with the administration of the Settlement from the Escrow Account; and (c) if the Effective Date has occurred, directing payment of the Net Settlement Fund to Authorized Claimants from the Escrow Account.").

## III.   CLAIMS ADMINISTRATION

Pursuant to the Preliminary Approval Orders and as set forth in the Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms by mail or online, postmarked by, or received, no later than April 5, 2024. *See* ECF No. 202-1, Ex. A (Notice) at pp. 2-3. The Claims Administrator received and reviewed all submitted Claims that were received by September 12, 2024, and, to the extent that a Claim was deficient, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to possible ways to cure the deficiency. *See* Craig Decl., ¶¶8-15, 18-19.

Of the 13,083 Claims received by the Claims Administrator, 808 were paper Claims or Claims submitted through the Settlement Website. *Id.*, ¶13. The remaining 12,275  Claims were filed electronically ("Electronic Claims"). *Id.* Electronic Claims are typically banks, brokers, nominees, and other third-party filers that file Claims on behalf of numerous Claimants ("E-Claim Filers"). *Id.* at n.5. Because E-Claim Filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides E-Claim Filers with the opportunity to submit a master claim form and submit an electronic file containing all the transactions of the Claimants on whose behalf the E-Claim Filer is submitting a Claim—rather than providing reams of paper requiring manual data entry. *Id.* This process is designed to expedite the claims process.

If a Claim was deficient or defective, the Claims Administrator sent a Deficiency Notice to the Claimant, a sample of which is attached as Exhibit A to the Craig Declaration. *Id.*, ¶¶12-13, Ex. A. The Deficiency Notice advised the Claimant that he, she, or it had twenty (20) days from the date of the Deficiency Notice to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection. *Id.*, ¶12. Of the 808 paper and online Claims, the Claims Administrator sent Deficiency Notices for 106 Claims (or approximately 13.12%). *Id.*, ¶13. Four (4) of the 12,275 Electronic Claims (or approximately 0.033%) were incomplete or had one or more defects or conditions of ineligibility. The four deficient Electronic Claims were filed by two unique nominees. SCS sent a Deficiency Notice to the filers informing them of the Electronic Claims that SCS determined to be defective. *Id.*

The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible. Ultimately, as detailed in the Craig Declaration, after the deficiency process was complete, the Claims Administrator determined that 7,631 Claims are acceptable and should receive a distribution. This number includes 7,582 timely and valid claims, and 49 Late But Otherwise Valid Claims (addressed in Section IV below). *See* Craig Decl., ¶19(a), n.7 & Exs. C-1, C-2.

The Claims Administrator also determined that 55 Claims were ineligible due to inadequate documentation (*see id.*, at ¶19(b) & Ex. D), and 5,397 Claims are not eligible and should be rejected for the following reasons: (i) 5,024 Claims had no Recognized Loss under the Plan of Allocation; (ii) 176 Claims involved SRAC Securities that were purchased outside the Settlement Class Period; (iii) 153 Claims involved SRAC Securities that were not purchased or otherwise acquired, but were received or granted by gift, inheritance, or operation of law; (iv) 31 Claims involved SRAC Securities that were sold short; (v) nine Claims were duplicates; and (vi) four Claims were filed for securities other than SRAC Securities. *Id.*, ¶¶19(c) & Ex. E.

In sum, of the 13,083 Claims submitted to SCS, 7,631 Claims are being recommended for acceptance, and 5,452 are ineligible and being recommended for rejection.

## IV.   LATE BUT OTHERWISE VALID CLAIMS

The Claims Administrator continued to receive Claims after the April 5, 2024, claims filing deadline. *Id.* at n.2 & n.7.  There must, however, be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place.  *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citation omitted); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001).  Acceptance of additional Claims received during the finalization of the administration process and the preparation of this Motion would necessarily require a delay in the distribution.  Accordingly, the Claims Administrator imposed a cut-off date of September 12, 2024.  Craig Decl., ¶21(e).

Of the 7,631 properly documented valid Claims, 49 were received or postmarked after the April 5, 2024 deadline, but before the Claim's Administrator's imposed cut-off date of September 12, 2024 ("Late But Otherwise Valid Claims").  Craig Decl., ¶19(a), n.7 & Ex. C-2.  These 49 Late But Otherwise Valid Claims have been recommended for payment.  *Id.* at ¶19(a) & n.7.  Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit Proofs of Claim, but while the Claims were still being processed.  *See In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *In re Toyota Motor Corp. Sec. Litig.*, 2014 WL 12586787, at *1 (C.D. Cal. Aug. 4, 2014) (accepting "Late but Otherwise Eligible Claims"); *see also In re "Agent Orange" Prod. Liab.*

*Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"). Accordingly, it is respectfully requested that this Court approve Lead Counsel's recommendation and permit the Claims Administrator to include the Late But Otherwise Valid Claims in the Distribution Plan. *See* Craig Decl., 19(a) & Ex. C-2.

Additionally, it is respectfully requested that the Court enter an Order directing that no new Proofs of Claim may be accepted after September 12, 2024, and no further adjustments to submitted Proofs of Claim may be made for any reason after December 25, 2024. *See* Craig Decl., ¶21(e). "Drawing a line is essential to achieve certainty and finality in such a large class action." *Hartman v. Powell*, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F.2d at 1127).

## V.    DISTRIBUTION OF NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more (the "Initial Distribution"). *See* Craig Decl., ¶21(a)(i)-(vi). Based on the substantial experience of the Claims Administrator and Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed, deposited, or negotiated promptly. To encourage Authorized Claimants to promptly cash, deposit, or negotiate their distributions and to avoid or reduce future expenses relating to unpaid distributions, the Claims Administrator and Lead Counsel propose that all the distribution checks bear a notation "CASH

PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." *Id*., ¶21(a)(v).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. However, if after nine (9) months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a second distribution (the "Second Distribution") if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so. *Id*., ¶21(b). During the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of Notice and Administration Expenses (including the estimated costs of such Second Distribution), Taxes, and any escrow fees, will be redistributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution. *Id*. Following the Second Distribution, additional redistributions will occur following the same process of the Second Distribution until no funds remain in the Net Settlement Fund or until Lead Counsel, in consultation with the Claims Administrator, determines that additional distributions are no longer economically feasible. *Id*., ¶21(c).

Finally, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, the remaining balance shall be contributed to the Public Justice Foundation, a non-sectarian, not-for-profit organization dedicated to, among other things, investor education and advocacy. Craig Decl., ¶21(d); *see also* Declaration of Sharon M. McGowan of the Public Justice Foundation, ¶¶2-10 & ¶¶11-12 (listing securities cases in which the Public Justice Foundation received court approval as the *cy pres* beneficiary).

## VI.   RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it

is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement.

Accordingly, Lead Plaintiff respectfully requests that the Court: (a) release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of that involvement; and (b) bar all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, Plaintiff's Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to them pursuant to the terms of the Class Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Judgment, and the Class Distribution Order.

Courts have repeatedly approved similar provisions in connection with the distribution of settlement proceeds. *See, e.g., Wilson v. LSB Indus., Inc.*, 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020) ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class

Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order."); *see also In re Nuvelo, Inc. Sec. Litig.*, 2012 WL 12920613, at *2 (N.D. Cal. July 16, 2012); *Toyota*, 2014 WL 12586787, at *3; *In re Medicis Pharm. Corp. Sec. Litig.*, 2013 WL 12149720, at *2 (D. Ariz. Mar. 8, 2013).

## VII. THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION RELATED FEES AND EXPENSES

The cost of the administration of the Settlement incurred and paid through January 31, 2025, totals $224,246.93. Craig Decl., ¶23. The estimate to conduct the Initial Distribution and any tax work, which will be reserved prior to the Initial Distribution, is $19,600. *Id.* Therefore, Lead Counsel respectfully requests that the Court authorize payment to the Claims Administrator from the Settlement Fund of $19,600.[3]

## VIII. RECORDS RETENTION AND DESTRUCTION

Lead Plaintiff respectfully requests that the Court order that: (a) in no less than one (1) year after the Second Distribution of the Net Settlement Fund, if that occurs, or, if there is no Second Distribution, one year after the Initial Distribution, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (b) in no less than one (1) year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claims and all supporting documentation. *Id.*, ¶22.

## IX. CONCLUSION

For the above reasons, Lead Plaintiff respectfully requests that the Motion be granted.

---

[3] If the anticipated fees and expenses to conduct the Initial Distribution are greater than the actual cost to conduct the distribution, the excess will be returned to the Settlement Fund. Craig Decl., ¶23.

Dated: February 18, 2025          **GLANCY PRONGAY & MURRAY LLP**

By: *s/ Casey E. Sadler*
Robert V. Prongay (SBN 270796)
  *rprongay@glancylaw.com*
Casey E. Sadler (SBN 274241)
  *csadler@glancylaw.com*
Garth Spencer (SBN 335424)
  *gspencer@glancylaw.com*
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Lead Plaintiff Hartmut Haenisch and the Settlement Class*

**THE LAW OFFICES OF FRANK R. CRUZ**
Frank R. Cruz
1999 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 914-5007
Email: fcruz@frankcruzlaw.com

*Additional Counsel*

## PROOF OF SERVICE BY ELECTRONIC POSTING

I, the undersigned, say:

I am not a party to the above case and am over eighteen years old. On February 18, 2025, I served true and correct copies of the foregoing document, by posting the document electronically to the ECF website of the United States District Court for the Central District of California, for receipt electronically by the parties listed on the Court's Service List.

I affirm under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on February 18, 2025, at Los Angeles, California.

*/s/ Casey E. Sadler*
Casey E. Sadler