# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE STABLE ROAD ACQUISITION CORP. SECURITIES LITIGATION | Case No. 2:21-CV-5744-JFW(SHKx)<br><br>Honorable John F. Walter<br><br>**STATEMENT OF DECISION RE THE MOTION FOR CLASS DISTRIBUTION ORDER [DKT NO. 216]** |

**ORDER GRANTING MOTION FOR CLASS DISTRIBUTIION ORDER [filed 02/18/2025; Docket No. 216]**

On February 18, 2025, Court-appointed lead plaintiff Hartmut Haenisch ("Lead Plaintiff") filed an unopposed Motion for Class Distribution Order (the "Motion").[1] The Motion requests, *inter alia*, that the Court authorize the distribution of the Net Settlement Fund (after payment of the Claims Administrator's expenses as discussed below, and payment of, or reserve for, taxes, tax preparation fees and escrow fees) to Authorized Claimants.  Defendants did not oppose the Motion, and no Settlement Class Member has filed an opposition.   After considering the moving papers and the arguments therein, the Court grants the Motion.

**I.      Factual and Procedural Background**

On August 18, 2023, the Parties entered into the Stipulation, the terms of which established an $8,500,000 Settlement Fund for the benefit of the proposed Settlement Class.[2]  On September 20, 2023, the Court entered its Order Preliminarily Approving Settlement and Providing for Notice ("Preliminary Approval Order"), and on November 22, 2023, it issued its Order Granting Joint Stipulation to Reinstate and Continue Deadlines Set in the Preliminary Approval Order (Dkt. Nos. 181 and 195; collectively, the "Preliminary Approval Orders").   Among other things, the Preliminary Approval Orders approved Lead Plaintiff's selection of Strategic Claims Services ("SCS") to serve as the Claims Administrator for the Settlement.  Dkt. No. 181, ¶7.

---

[1] Unless otherwise defined herein, all capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement (Dkt No. 178-1; the "Stipulation"), or the Declaration or Margery Craig Concerning the Results of the Claims administration Process (Dkt. No. 217-1; the "Craig Declaration).

[2] Subject to certain exclusions, the Settlement Class ultimately certified by the Court consists of all persons and entities that purchased or otherwise acquired SRAC Securities between October 7, 2020 and July 13, 2021, inclusive, and were damaged thereby.  Dkt. No. 210, ¶3.

1

Pursuant to the Preliminary Approval Orders, SCS: (i) either mailed a copy of the Notice of (I) Pendency of Class Action, Certification of Settlement Class, and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice"), and the Proof of Claim and Release Form ("Claim Form"; and together with the Notice, the "Notice Packet"), or emailed a link to the Notice Packet, to 81,066 potential Settlement Class Members; (ii) published the Summary Notice in *Investor's Business Daily* and over *PR Newswire* (a national newswire service); (iii) established a case-specific website for the Settlement (www.StableRoadSecuritiesSettlement.com; the "Settlement Website"); and (iv) set up a toll-free helpline. *See* Craig Decl., ¶¶5-6; *see also* Dkt. No. 202-1, ¶11 (regarding publication of the Summary Notice). The Settlement Website and helpline enabled Settlement Class Members to obtain information about the Settlement, including deadlines for requesting exclusion, objecting, and filing Claims, and the Settlement Website provided access to important documents relevant to the Settlement, including the Stipulation, Notice, and Claim Form. *See generally* Settlement Website. Settlement Class Members could also file Claims on the Settlement Website.

On April 23, 2024, the Court entered its Order Approving Plan of Allocation of Net Settlement Fund. Dkt. No. 212. On that same day, the Court entered the Judgment Approving Class Action Settlement, which, among other things, granted final approval of the Settlement. Dkt. No. 210.

Pursuant to the Preliminary Approval Orders and as set forth in the Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms, and supporting documentation, by mail or online, postmarked by, or received, no later than April 5, 2024. *See* Dkt. No. 202-1, Ex. A (Notice) at pp. 2-3. The Claims Administrator received and reviewed all submitted Claims that were received by September 12, 2024, and, to the extent that a Claim was deficient, the

2

Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to possible ways to cure the deficiency. *See* Craig Decl., ¶¶8-15, 18-19.

Of the 13,083 Claims received by the Claims Administrator, 808 were paper Claims or Claims submitted through the Settlement Website. *Id.*, ¶13. The remaining 12,275 Claims were filed electronically ("Electronic Claims"). *Id.* Electronic Claims are typically banks, brokers, nominees, and other third-party filers that file Claims on behalf of numerous Claimants ("E-Claim Filers"). *Id.* at n.5. Because E-Claim Filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides E-Claim Filers with the opportunity to submit a master claim form and submit an electronic file containing all the transactions of the Claimants on whose behalf the E-Claim Filer is submitting a Claim—rather than providing reams of paper requiring manual data entry. *Id.* This process is designed to expedite the claims process.

According to the Claims Administrator, if a Claim was deficient or defective, the Claims Administrator sent a Deficiency Notice to the Claimant, a sample of which is attached as Exhibit A to the Craig Declaration. *Id.*, ¶¶12-13, Ex. A. The Deficiency Notice advised the Claimant that he, she, or it had twenty (20) days from the date of the Deficiency Notice to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection. *Id.*, ¶12. Of the 808 paper and online Claims, the Claims Administrator sent Deficiency Notices for 106 Claims (or approximately 13.12%). *Id.*, ¶13. Four (4) of the 12,275 Electronic Claims (or approximately 0.033%) were incomplete or had one or more defects or conditions of ineligibility. The four deficient Electronic Claims were filed by two unique nominees. SCS sent a Deficiency Notice to the filers informing them of the Electronic Claims that SCS determined to be defective. *Id.*

Ultimately, as detailed in the Craig Declaration, after the deficiency process was complete, the Claims Administrator determined that 7,631 Claims are acceptable and should receive a distribution. This number includes 7,582 timely and valid

claims, and 49 Late But Otherwise Valid Claims (addressed in Section IV below). *See* Craig Decl., ¶19(a), n.7 & Exs. C-1, C-2.

The Claims Administrator also determined that 55 Claims were ineligible due to inadequate documentation (*see id.*, at ¶19(b) & Ex. D), and 5,397 Claims are not eligible and should be rejected for the following reasons: (i) 5,024 Claims had no Recognized Loss under the Plan of Allocation; (ii) 176 Claims involved SRAC Securities that were purchased outside the Settlement Class Period; (iii) 153 Claims involved SRAC Securities that were not purchased or otherwise acquired, but were received or granted by gift, inheritance, or operation of law; (iv) 31 Claims involved SRAC Securities that were sold short; (v) nine Claims were duplicates; and (vi) four Claims were filed for securities other than SRAC Securities. *Id.*, ¶¶19(c) & Ex. E.

In sum, according to Lead Plaintiff and the Claims Administrator, of the 13,083 Claims submitted to SCS, 7,631 Claims are being recommended for acceptance, and 5,452 are ineligible and being recommended for rejection.

## II. LATE BUT OTHERWISE VALID CLAIMS ARE ALLOWED TO RECOVER FROM THE SETTLEMENT FUND

The Claims Administrator continued to receive Claims after the April 5, 2024, claims filing deadline. *Id.* at n.2 & n.7. There must, however, be a final cut-off date after which no more Claims may be accepted so that a proportional distribution of the Net Settlement Fund may take place. *See In re Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.'") (citation omitted); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 329 (3d Cir. 2001). Acceptance of additional Claims received during the finalization of the administration process and the preparation of the Motion would necessarily require a delay in the distribution. Accordingly, the Claims Administrator imposed a cut-off date of September 12, 2024. Craig Decl., ¶21(e).

Of the 7,631 properly documented valid Claims, 49 were received or postmarked after the April 5, 2024, deadline, but before the Claim's Administrator's imposed cut-off date of September 12, 2024 ("Late But Otherwise Valid Claims"). Craig Decl., ¶19(a), n.7 & Ex. C-2.  Lead Plaintiff and the Claims Administrator recommended that the Court approve the 49 Late But Otherwise Valid Claims for payment.  *Id.* at ¶19(a) & n.7.  Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit Proofs of Claim, but while the Claims were still being processed.  The Court agrees.  *See In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *In re Toyota Motor Corp. Sec. Litig.*, 2014 WL 12586787, at *1 (C.D. Cal. Aug. 4, 2014) (accepting "Late but Otherwise Eligible Claims"); *Sudunagunta v. Nantkwest, Inc.*, 2019 WL 13060483, at *2-3 (C.D. Cal. Dec. 9, 2019) (same); *see also In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small.  No significant administrative costs need be incurred to allow the late claims and opt-out claims").

Accordingly, the Court approves Lead Counsel's recommendation and permits the Claims Administrator to include the Late But Otherwise Valid Claims in the Distribution Plan.  *See* Craig Decl., 19(a) & Ex. C-2.

Additionally, Lead Plaintiff and Claims Administrator requested that the Court enter an Order directing that no new Proofs of Claim may be accepted after September 12, 2024, and no further adjustments to submitted Proofs of Claim may be made for any reason after December 25, 2024.  *See* Craig Decl., ¶21(e).  The Court grants this request because "[d]rawing a line is essential to achieve certainty and finality in such a large class action."  *Hartman v. Powell*, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15,

2001); *see also In re Citigroup Inc. Sec. Litig.*, 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F.2d at 1127).

## III.    THE CLAIMS ADMINISTRATOR SHALL DISTRIBUTE THE NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculate to $10.00 or more (the "Initial Distribution"). *See* Craig Decl., ¶21(a)(i)-(vi). Based on the substantial experience of the Claims Administrator and Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed, deposited, or negotiated promptly. To encourage Authorized Claimants to promptly cash, deposit, or negotiate their distributions and to avoid or reduce future expenses relating to unpaid distributions, the Claims Administrator and Lead Counsel propose that all the distribution checks bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." *Id.*, ¶21(a)(v). This request is granted.

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. However, if after nine (9) months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a second distribution (the "Second Distribution") if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so. *Id.*, ¶21(b). During the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of Notice and Administration Expenses (including the estimated costs of such Second Distribution), Taxes, and any escrow fees, will be redistributed to all Authorized Claimants in the Initial Distribution who cashed their

6

distribution checks and would receive at least $10.00 from the Second Distribution. *Id*. After the Second Distribution, additional redistributions will occur following the same process of the Second Distribution until no funds remain in the Net Settlement Fund or until Lead Counsel, in consultation with the Claims Administrator, determines that additional distributions are no longer economically feasible. *Id*., ¶21(c).

Finally, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, the remaining balance shall be contributed to the Public Justice Foundation, a non-sectarian, not-for-profit organization dedicated to, among other things, investor education and advocacy. *See Nacif v. Athira Pharma, Inc.*, 2024 WL 4654238, at *9 (W.D. Wash. Nov. 1, 2024) (designating the Public Justice Foundation as the *cy pres* recipient in a securities class action).

**IV.    THE COURT APPROVES THE RELEASE OF CLAIMS**

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Courts have repeatedly approved similar provisions in connection with the distribution of settlement proceeds. *See*, *e.g., Wilson v. LSB Indus., Inc*., 2020 WL 5628039, at *2 (S.D.N.Y. Sept. 21, 2020) ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not

they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order."); *see also In re Nuvelo, Inc. Sec. Litig.*, 2012 WL 12920613, at *2 (N.D. Cal. July 16, 2012); *Toyota*, 2014 WL 12586787, at *3; *In re Medicis Pharm. Corp. Sec. Litig.*, 2013 WL 12149720, at *2 (D. Ariz. Mar. 8, 2013).

Accordingly, (a) all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of that involvement; and (b) all Settlement Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, are barred from making any further claims against the Net Settlement Fund, Lead Plaintiff, Lead Counsel, Plaintiff's Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiff or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to them pursuant to the terms of the Class Distribution Order, provided, however, that such released persons acted in accordance with the Stipulation, the Judgment, and the Class Distribution Order. *See Wilson*, 2020 WL 5628039, at *2; *Toyota*, 2014 WL 12586787, at *3.

## V.  THE COURT APPROVES PAYMENT OF ADMINISTRATION RELATED FEES AND EXPENSES

The cost of the administration of the Settlement incurred and paid through January 31, 2025, totals $224,246.93.  Craig Decl., ¶23.  The estimate to conduct the Initial Distribution and any tax work, which will be reserved prior to the Initial Distribution, is $19,600.  *Id*.  Therefore, the Court authorizes payment to the Claims

Administrator from the Settlement Fund of $19,600.[3]

## VI. THE COURT APPROVES LEAD PLAINTIFF'S RECORDS RETENTION AND DESTRUCTION

Lead Plaintiff requests that the Court order that: (a) in no less than one (1) year after the Second Distribution of the Net Settlement Fund, if that occurs, or, if there is no Second Distribution, one year after the Initial Distribution, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (b) in no less than one (1) year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claims and all supporting documentation. *Id.*, ¶22. The Court grants this request.

## VII. CONCLUSION

For the foregoing reasons, Lead Plaintiff's Motion is GRANTED.

Dated: March 24, 2025

_____
The Honorable John F. Walter
United States District Judge

---

[3] If the anticipated fees and expenses to conduct the Initial Distribution are greater than the actual cost to conduct the distribution, the excess will be returned to the Settlement Fund.

9